Joseph Alfonso Duran
V95938
Salinas Valley State Prison
P.O. Box 1050
Soledad, Ca 93960

FILED
2008 MAR -6 PM 4:34
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
RM
_____ DEPUTY

United States District Court
Southern District Of California

08 CV 0430 WQH RBB

State Court No: SCS181667
Court of Appeal No: D047059

Joseph Alfonso Duran,
                Petitioner

v.

M.S. Evans, Warden,
                Respondent

and

The Attorney General of the State of California,
                Additional Respondent.

Petition For Writ Of Habeas Corpus
Memorandum Of Points and Authorities In Support Thereof

## STATEMENT OF THE CASE

By an amended information filed January 13, 2005, it was alleged that on January 11, 2004, appellant took a vehicle from Jose Garcia by force and fear with intent to permanently deprive, in violation of Penal Code section 215, subdivision (a) (Count 1); that on the same date appellant took personal property from the same victim by force or fear, in violation of Penal Code section 211 (Count 2); that on January 12, 2004, appellant unlawfully drove and took a vehicle belonging to Jose Garcia, in violation of Vehicle Code section 10851, subdivision (a) (Count 3); and on the same date appellant unlawfully received a stolen vehicle, in violation of Penal Code section 496(d) (Count 4). It was also alleged appellant had suffered two prior convictions, and those convictions brought appellant within the provisions of Penal Code sections 667.5, subdivision (b) and 668 (prison priors); Penal Code section 667.5, subdivision (a) (violent felony prison priors); Penal Code sections 667, subdivisions (a)(1), 668 and

C

1

1192.7, subdivision (c) (serious felony priors); and that appellant had suffered two prior convictions within the meaning of the Three Strikes Law. (CT 14-18.)

Following trial, a jury found appellant guilty of the charges in counts 1, 2 and 3. (CT 212-214.) The jury acquitted appellant of the charges in count 4. (CT 215.) Appellant admitted the prior conviction allegations. (RT 703-704.)

On August 16, 2005, the trial court sentenced appellant to serve 40 years to life in state prison; the court imposed 25 to life for the third strike sentence on count 1, plus two five-year serious prior enhancements pursuant to Penal Code section 667, subdivision (a)(1), one three-year prison prior enhancement pursuant to penal code section 667.5, subdivision (a), and two one-year prior prison term enhancements pursuant to Penal Code section 667.5, subdivision (b). (CT 317-318; RT 741-743.) Notice of appeal was filed August 17, 2005. (CT 312.)

## STATEMENT OF FACTS

Jose Fernando Garcia Barba, Jr. (Mr. Garcia) was a car salesman at McCune on January 11, 2004, when appellant came onto the used car lot around 11:20 in the morning. (RT 451.) Garcia contacted appellant, greeted him, and shook hands. (RT 452.) Appellant was wearing a blue thermal shirt, a tan dress coat, jeans, tennis shoes, and sunglasses. (RT 453.) Appellant had just mentioned he had just gotten a cast off his right hand. (RT 454.)

Appellant wanted to drive-test a jeep. Garcia did not ask Duran for identification before the test drive. (RT 457.) Appellant drove the vehicle off the lot and onto the street, with Garcia in the passenger seat. (RT 458.)

After they had driven only a short distance, Garcia noticed a balloon was tied onto the jeep, so he asked appellant to pull over so he could remove it. (RT 459.) Before Garcia could exit the vehicle, appellant told him to get out, and lifted his shirt to display what appeared to be the handle of a gun. (RT 461.) Garcia got out of the jeep and ran back to the dealership. (RT 462.) Appellant drove off quickly,

2

leaving skid marks. (RT 463.) The next day, appellant was stopped while driving the stolen jeep. (RT 530, 532, 536.)

Defense Evidence

Appellant testified on his own behalf. On January 11, he was at his home in his apartment at the Lakeside Hotel, doing laundry. (RT 589.) He was upstairs doing chores prior to an NA/AA meeting which was held downstairs at noon. (RT 596-597.) His friend was helping him do laundry because his arm was injured.[1] (RT 597.) Appellant sat in on a meeting and then he and his friend went out to eat. (RT 597.) People at that hotel come and go; appellant cannot remember the names of the people he saw that day. (RT 597.) There were twenty to twenty-five people at the NA/AA meeting. (RT 597.) He has contacted people who remember seeing him there, but these are people trying to straighten their lives out, and they don't want to be involved. (RT 598.)

On January 12, appellant had some errands to run, but his car was out of gas. (RT 590.) His neighbor's across the street allowed him to use their vehicle. (RT 590.) When he was loaned the vehicle, he checked the ignition to see that it had not been tampered with, and saw that the key worked the doors. (RT 596.) Thus, he believed it not to be stolen. (RT 596.) The neighbor's name is John Staros — he does not know the exact address, but the neighbor's lived across the street.[2] (RT 591.)

Appellant drove to Wal-Mart, where he was arrested. (RT 590.) He only had the jeep for about forty minutes. (RT 598.) Appellant stated that if he had been the carjacker, he would have not stopped, not have yielded to the officer who pulled him over. (RT 590.) He has never owned a tan jacket or a blue shirt of the type worn by the carjacker. (RT 598-599.)

---

3

[1] Appellant has since had surgery on his arm. (RT 589.)
[2] Appellant had refused to give the neighbor's name when he was arrested. (RT 592.)

Appellant's rent at the Lakeside Hotel was $424 per month. (RT 599.) He paid $106 each week because he got paid weekly. (RT 599-600.) As of January 11, appellant had paid one week of December's rent, and the remaining three weeks were still owed. (RT 600.) At the time he was arrested he was in possession of $1,600 in cash, and a paycheck from American Advertising Specialties for $644.65, this being the pay for a week. (RT 601-602.) After he was arrested, all of his clothing and other personal items from his hotel room were removed without his authorization, presumably by another resident of the hotel. (RT 603.)

## ARGUMENT

### I

THE PROSECUTION FAILED TO DISCLOSE AND WITHHELD MATERIAL EXCULPATORY INFORMATION UNTIL THE LAST DAY OF TRIAL, DESPITE A SPECIFIC REQUEST FOR DISCOVERY WELL IN ADVANCE OF TRIAL, VIOLATING APPELLANT'S CONSTITUTIONAL AND STATUTORY RIGHT TO SPECIFICALLY REQUESTED, TIMELY RECEIPT OF THE INFORMATION.

A. Background

Appellant represented himself at trial. A defense request for discovery was filed and served on the prosecution on or about November 24, 2004. A request for BRADY/WHEELER information pursuant to P.C. 1054 was made on the prosecution on or about 12/10/2004. At no time did the prosecution provide this report or the names of these eyewitnesses. (CT 21-30.) On or about January 24, 2005, appellant brought to the court's attention that the prosecution appeared to be withholding evidence. There was a review of the reports that had been provided by the prosecution, and Exhibit "A", was not part of the that I had, nor was I made aware of the information regarding these witnesses at that time. (RT 377-378; CT 259-260.) On the contrary, the prosecution purported that the only evidence generated by Officer Cordero was limited to the photo line-up shown, allegedly only to the victim Garcia. (RT 378; CT 254-255.)

4

On the morning of February 3, 2005, trial resumed at 9:00 a.m. outside the presence of the jury for a discussion of jury instructions. (CT 352; RT 501-505.) Just prior to the day's proceedings, the prosecutor had given appellant a three page detective follow-up report which had not previously been provided in discovery. (CT 256-257.) Included in the report was information about two employee's of the auto dealership, Raquel Martinez-Robinson and Oscar Ochoa.

Both of these individuals had seen the carjacker, and both had been shown a photo line-up containing a photo of appellant. After a hurried perusal of the detective report, appellant asked to have it excluded from evidence, believing the two eyewitnesses **had** identified him in the photo line-up's. (RT 505-509; CT 257.)

The discussions of this matter and the jury instructions ended at 9:15, and at 9:15 appellant resumed his cross-examination of Jose Garcia, the salesman who had identified him as the carjacker. (CT 352.)

The evidentiary portion of the trial concluded, counsel argued, and the jury was partially instructed that same day. (CT 352-354.) Immediately after trial, when he had an opportunity to examine the report more closely, appellant realized it's true import; neither Ochoa nor Robinson had identified appellant as the carjacker despite the fact that appellant's photo was in the photo line-up they viewed. (CT 256-257, 265-266.) Appellant's appointed investigator interviewed the two eyewitnesses, and those interviews led to a third eyewitness, salesman Jose Morales (CT 257, 262-264.) Like the two other witnesses, Morales had seen the carjacker & believed he could identify the culprit. Morales was never identified by police. (RT 263-264.) It should be noted that at no time did **any** of these witnesses claim they could identify appellant if seen in a physical line-up, as opposed to the carjacker, if seen in a physical line-up. (CT 263-264.)

Now represented by counsel, appellant brought a new trial motion based in part on the prosecution's dereliction of its duties under the discovery statutes, and under BRADY V. MARYLAND (1963) 373 U.S. 83. The trial court never explicitly ruled on the BRADY claim. (RT 728-731.)

The court denied the new trial motion, reasoning that the information contained in the detective report would

5

not lead to a different result. (RT 731.)

B. The Law.

1. Fourteenth Amendment.

The due process clause of the Fourteenth Amendment requires the prosecutor disclose to the defense exculpatory evidence. (BRADY V. MARYLAND (1963) 373 U.S. 83.)

Although prosecutor has no duty to provide defense counsel with unlimited discovery of everything known by him, if subject matter of defense counsel's request for evidence is material, or indeed if substantial basis for claiming materiality exists, it is reasonable to require prosecutor to respond either by furnishing information or by submitting problem to trial judge; and when prosecutor receives specific and relevant request, failure to make any response is seldom, if ever, excusable.

The duty to disclose exists even in the absence of a request by the accused, and encompasses impeachment as well as exculpatory evidence. (United States v. Bagley (1985) 473 U.S. 667, 676; UNITED STATES V. AGURS (1976) 427 U.S. 97, 107.) In order to comply with these requirements, the prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case. (KYLES V. WHITLEY (1995) 514 U.S. 419, 438.)

In order to show a BRADY violation, the accused must demonstrate that the evidence was favorable to him; that the evidence was suppressed by the state, either willfully or inadvertently; and that he has been prejudiced. (PEOPLE V. SALAZAR (2005) 35 Cal. 4th 1031, 1043.) Prejudice is evaluated by examining the materiality of the information, but the materiality and prejudice inquiries are essentially conflated.

The suppressed information is material if there is a reasonable probability of a different result if the information had not been suppressed, or, stated another way, if the omitted evidence creates a reasonable doubt not otherwise exist, constitutional error has been committed. (KYLES V. WHITLEY, supra, 514 U.S. at p. 434; In Re BROWN

(1998) 17 Cal. 4th 873, 886.); U.S. v. AGURS (1976) 427 U.S. 97, 2402.) If the information is found to be material under this test, there is no need for further harmless-error review. (KYLES v. WHITLEY, supra, 514 U.S. at p. 435; In Re BROWN, supra, 17 Cal. 4th at p. 887.)

    2. Penal Code Section 1054, et seq...

Penal Code section 1054.1 provides that the prosecutor must provide/disclose to the defense "any exculpatory evidence" in the possession of the prosecuting attorney or investigating agencies. (Pen. Code sec. 1054.1, subd. (e).)

This information must be disclosed at least 30 days prior to the trial, if then possessed by the prosecuting agency. (Pen. Code sec. 1054.7.)

The purpose of the statutory discovery provisions includes the "ascertainment of truth in trials by requiring timely pretrial discovery," and saving court time in trial by avoiding the necessity for interruptions and postponements. (Pen. Code sec. 1054.) The ascertainment of truth is promoted by allowing parties to obtain information in order to prepare their cases and reduce the chance of surprise at trial. (WOODS v. SUPERIOR COURT (1994) 25 Cal. App. 4th 178, 184.)

    C.   THE INFORMATION IN THE DETECTIVE REPORT WAS FAVORABLE TO APPELLANT.

The critical information in the police report was that two eyewitnesses who saw the carjacker at the dealership, and were able to give descriptions, failed to pick appellant's picture out of the photo line-up. This information is favorable to appellant, in that it tends to cast doubt on the identification of appellant by Garcia. Appellant's defense would certainly be advanced by information that of three eyewitnesses who saw the carjacker, two did not identify appellant as the culprit. Also, those two witnesses led to a fourth eyewitness, Jose Morales, who also was able to give a description.

7

D. THE INFORMATION CONCERNING WITNESSES ROBINSON AND OCHOA WAS SUPPRESSED BY THE PROSECUTION.

The detective report at issue was based on interviews with witnesses conducted in January, 2004, although evidently the report was not written until September of that year. (CT 270-271.) Even so, the report was written well before the trial in early 2005. The prosecutor stated he received the report the same day he gave it to appellant, February 3, 2005. (RT 717.) Although the detective who wrote the report told appellant's investigator that the report would have been turned over shortly after the date of the report documented at the bottom of the report, which is 9/29/2004. (CT 286; RT 720-721.)

A defendant's due process rights are abridged when favorable evidence is withheld, regardless of whether the suppression is intentional or inadvertent. (BRADY V. MARYLAND, supra, 373 U.S. at p. 87.)

A requirement of timely disclosure is implicit in the due process right to exculpatory information; otherwise, the right would be hallow indeed. This principle is made explicit in the statutory provisions, which require disclosure 30 days in advance of trial, in order to prevent surprise at trial. (WOODS V. SUPERIOR COURT, supra, 25 Cal. App. 4th at p. 184; Pen. Code sec. 1054.7.)

In this case, just prior to the morning's proceedings, during which appellant was to deal with jury instructions and continue cross-examination of the primary eyewitness against him, appellant was handed a three-page report. The information concerning the two witnesses was on the second page of the report; the first page appeared to be a duplication of the information already provided in discovery in the form of a report by another police officer. (RT 724.) It is unreasonable to expect appellant or any attorney could effectively examine, digest, and effectively act on the contents of the report at the last minute on what was effectively the last day of trial. Disclosure of information concerning two exculpatory eyewitnesses at this late

8

stage of the proceedings was untimely and unfair. (See PEOPLE V. ROBINSON (1995) 31 Cal. App. 4th 494, 501-502 [disclosure of previously-unknown eyewitness on a Friday near the end of trial (the case went to the jury the following Tuesday) was "too late"].)

E. THE SUPPRESED INFORMATION WAS MATERIAL.

In his testimony, appellant explained that on the day of the carjacking he was at his home, had attended an NA/AA meeting there, and had lunched with a friend. (RT 589, 596-597.) He had also explained that he had borrowed also explained that he had borrowed the jeep from a neighbor to run errands because his car was out of gas. (RT 590-591.)

Thus, although appellant was apprehended in possession of the vehicle, his testimony raised a question as to whether he was the carjacker. Of course, the jury was bound to consider the charges independently of each other. The identification of appellant by Garcia was critical evidence against him as to the robbery and carjacking charges. Any information casting doubt on that identification would undermine the prosecution and aid the defense. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.

The import of the information contained in the detective report was that of three eyewitnesses who had seen the carjacker at the dealership, two had failed to pick appellant's picture out of a photo line-up.

In particular, Ms. Robinson told police she had told police she had conversed with the carjacker, spending as much as ten minutes with him. (CT 271.)

Furthermore, the information in the detective report led to the discovery of potential eyewitness Jose Morales, another employee of the dealership. He, too, had seen the carjacker, but was never interviewed by police. (CT 263-264 [statements made by Morales after trial to the defense investigator].)

9

Had this information been timely received by the defense, it could have been developed more fully as is evident in the discovery of eyewitness Jose Morales. In addition, appellant could also have elicited from detective Cordero (who testified concerning the photo line-up presented to Garcia) the information that two other eyewitnesses at the dealership had failed to identify him. (RT 518-527) [testimony of Detective Cordero concerning Garcia].) This information would have cast doubt on the identification by Garcia.

Other than the identification by Garcia, there was no evidence directly linking appellant to the carjacking, as opposed to the later possession of the stolen vehicle. No clothes were found in his possession matching the clothing worn by the carjacker. No weapon was found in appellant's possession. The sunglasses found in appellant's possession when he was arrested were not the same as the glasses Garcia said had been worn by the carjacker. (RT 515-516.)

Direct eyewitness evidence calling into question the accuracy of Garcia's identification of appellant raises a reasonable probability of a different result on the carjacking and robbery charges. And, if the carjacking and robbery charges are not sustained, the conviction of a violation of Vehicle Code section 10851 is called into question because there is no reason to disbelieve appellant's explanation he borrowed the vehicle without knowledge it was stolen. The charges are inextricably linked. The entire judgement should be reversed.

///
///
///

## II.

## THE TRIAL COURT ABUSED IT'S DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR A NEW TRIAL.

### A. The BRADY Claim.

One basis of appellant's motion for a new trial was that his due process rights were violated when the government failed to timely provide to him specifically requested report containing the names of two previously-unknown eyewitnesses who had spent time with in close physical contact, and seen the carjacker. (CT 234-240.) In ruling on the new trial motion, the trial court did not explicitly address this claim. (RT 728-731.) The trial court denied the new trial motion, brought on the basis of both the discovery violation and newly discovered evidence (discussed hereinbelow), reasoning that the information contained in the detective report would not lead to a different result. (RT 731.)

It appears the trial court applied the wrong legal standard in ruling on the BRADY portion of the motion. The trial court first enunciated a general standard: "On a motion for new trial, the trial court must review the evidence independently, considering the proper weight to be afforded to the evidence, and then decide whether there is sufficient credible evidence to support the verdict." (RT 728.) The court cited PEOPLE V. DAVIS (1995) 10 Cal. 4th 463, 524 for this standard. However, DAVIS was a case involving a motion for a new trial based on insufficiency of the evidence, not a BRADY violation. (Id. at p. 523.)

The trial court explained the standard it applied by enunciating the standard applicable to

11

claims of newly-discovered evidence. (RT 728-729.) At no point in its ruling did the trial court refer to or apply the correct standard to a ruling on a BRADY claim.

The correct standard by which a BRADY claim is to be evaluated was explained at length in In re BROWN, supra, 17 Cal. 4th at pp. 886-887. In particular, it is noteworthy that "'a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal....'" (Id. at p. 886, quoting KYLES V. WHITELY, supra, 514 U.S. at p. 434.) And, the test "'is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence there would not have been enough left to convict.'" (In re BROWN, supra, 17 Cal. 4th at pp. 886-887, quoting KYLES V. WHITLEY, supra, 514 U.S. at pp. 434-435.) This authority stands in contrast with the way the issue was analyzed by the trial court. The court concluded: "It's not that [the two new witnesses] picked out someone different or said that he was not the same person." (RT 731.) First, this analysis is factually incorrect - when asked to pick appellant's picture out of a photo lineup, the failure of these two eyewitnesses to do so in effect said that appellant was not the carjacker. Moreover, appellant need not provide proof of innocence to prevail on a BRADY claim. Rather, appellant need only demonstrate that the undisclosed evidence undermines confidence in the verdict.

A reviewing court should find an abuse of discretion when the trial court has based its decision on an erroneous view of the law, or has failed to apply the correct law. (UNITED STATES V. SPRAGUE (9th Cir. 1998) 135 F.3d 1301, 1304; see

12

COOTER & GELL V. HARTMAX Corp. (1990) 496 U.S. 384, 405.)

Here, the trial court failed to apply the correct legal standard in denying appellant's motion for a new trial on the basis of the BRADY violation. The trial court's order denying a new trial on that ground should be reversed.

### B. THE CLAIM OF NEWLY DISCOVERED EVIDENCE.

To entitle a party to have a new trial based on newly discovered evidence the following must be shown: (1) the evidence, and not merely its materiality, is newly discovered; (2) the evidence is not merely cumulative; (3) the evidence is such as to render a different result probable on retrial; (4) the party could not with reasonable diligence have discovered and produced it at trial; and (5) the facts are shown by the best evidence the case permits. (PEOPLE V. WILLIAMS (1962) 57 Cal.2d 263, 270; PEOPLE V. SUTTON (1887) 73 Cal. 243, 247.)

#### 1. REASONABLE DILIGENCE.

The trial court ruled the evidence at issue here was not newly discovered because the existence of the report and the new witnesses became known before the end of trial. (RT 730.) The trial court further noted that appellant did not ask for a continuance to produce the witnesses. (RT 730.)

On the issue of due diligence, our Supreme Court has stated: "[T]he diligence of defendant in marshaling his evidence for the trial must be determined in light of the peculiar circumstances involved." (PEOPLE V. WILLIAMS, supra, 57 Cal.2d at p. 273.) In this case, the circumstances are that appellant did not receive the information concerning

the two witnesses until the morning of the last day of trial, and had only a very hurried opportunity to evaluate the information he received. Had appellant been given the information timely, he could have taken action to follow up on it, as evidenced by the fact that a little over a week after appellant received the report his investigator interviewed the newly discovered witnesses. (CT 262-264.)

"The requirement of diligence serves a public policy which demands that a litigant exhaust every reasonable effort to produce at his trial all existing evidence in his own behalf, to the end that the litigation may be concluded. That policy, however, itself serves a more fundamental purpose - the determination of guilt and innocence." (PEOPLE V. MARTINEZ (1984) 36 Cal. 3d 816, 825.) Internal citations and quotation marks omitted.)) It is unreasonable and unfair to fault appellant for lack of diligence when the government belatedly disclosed the information on the last day of trial.

2. PROBABILITY OF A DIFFERENT RESULT.

As already noted hereinabove, the trial court denied appellant's new trial motion in part on the basis that the information concerning the newly discovered witnesses would not have changed the result. This ruling is flawed in two respects:

First, as already discussed, the trial court's assessment of the new information was factually incorrect. The trial court concluded that the two new witnesses had not stated that appellant was not the carjacker. (RT 731.) But, by failing to pick appellant's picture out of the photo line-up, those witnesses did, in effect, state that appellant was not the carjacker.

14

Second, the trial court failed to take into account the impact of the new evidence on the separate charges. In the court's mind, the fact that appellant was apprehended driving the vehicle was virtually conclusive on the issue of whether he was the carjacker. (RT 731.) This conclusion is not worthy of deference. However probative appellant's possession of the vehicle was with respect to the charges involving possession of a stolen vehicle, his possession of the vehicle the day after it was carjacked did not conclusively prove he was the carjacker.

As to the carjacking and robbery, the only evidence directly linking appellant to those crimes was the identification by Garcia. No clothes were found in his possession matching the clothing worn by the carjacker. No weapon was found in appellant's possession. The sunglasses found in appellant's possession when he was arrested were not the same as the glasses worn, Garcia testified, by the carjacker. (RT 515-516.)

The information concerning the newly discovered witnesses contradicted the strongest evidence of appellant's involvement in the carjacking, which was the identification by Garcia. Those other two witnesses, who also contacted and saw the carjacker, did not identify appellant as that person. A motion for a new trial should be granted when the newly discovered evidence contradicts the strongest evidence introduced against the defendant. (PEOPLE V. WILLIAMS, supra, 57 Cal. 2d at pp. 274-275.)

15

## C. THE ORDER DENYING A NEW TRIAL SHOULD BE REVERSED.

Ruling on an motion for a new trial is within the discretion of the trial court, and the court's ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. (Id. at p. 270.) Even under this exacting standard, the trial court's ruling in this case should be reversed.

As to the BRADY claim, the trial court applied the wrong legal standard. As to the claim of newly discovered evidence, the trial court erred in its factual analysis, failing to apprehend that the failing and lack of an identification of appellant by the two new witnesses effectively contradicted the strongest evidence appellant was the person who committed the carjacking.

Although the evidence of the two new witnesses directly concerned the carjacking and robbery charges, it is also significant with regard to the third count of conviction, that of a violation of Vehicle Code section 10851. If appellant is acquitted of the carjacking, there is little basis to disbelieve his explanation at trial that he borrowed the vehicle from a neighbor and did not realize it was stolen. The charges are inextricably linked; therefore, the order denying a new trial should be reversed as to all charges.

16

## CONCLUSION

Appellant was deprived of due process of law by the failure of the prosecution to timely provide exculpatory evidence, and the trial court erred by denying the new trial motion. The judgement should be reversed.

Date:

Respectfully Submitted,

*Joseph Alfonso Duran*
JOSEPH ALFONSO DURAN

## DECLARATION

I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California. Executed at Soledad, California on _____, 2008.

*Joseph Alfonso Duran*
Joseph Alfonso Duran