1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11  JOSEPH ALFONSO DURAN,          )   Civil No. 08cv430 WQH (RBB)
                                   )
12              Petitioner,        )   **REPORT AND RECOMMENDATION**
                                   )   **GRANTING IN PART AND DENYING**
13  v.                             )   **IN PART AMENDED PETITION FOR**
                                   )   **WRIT OF HABEAS CORPUS [ECF NO.**
14  MATTHEW CATE, Secretary of the )   **15] AND ORDER DENYING**
    California Department of        )   **EVIDENTIARY HEARING [ECF NO.**
15  Corrections and Rehabilitation,)   **43]**
                                   )
16              Respondent.        )
    _____)

17

18      Petitioner Joseph Alfonso Duran, a state prisoner proceeding

19  pro se and in forma pauperis filed a Petition for Writ of Habeas

20  Corpus on March 6, 2008 [ECF No. 1] and an Amended Petition on

21  December 9, 2008 [ECF No. 15].[1]  Respondent filed an Application

22  for First Enlargement of Time to File Respondent's Answer on

23  January 22, 2009, which was granted [ECF Nos. 22-23].  Respondent

24  timely filed an Answer to Petition for Writ of Habeas Corpus on

25

26  _____

27      [1] Because the Amended Petition is not consecutively
    paginated, the Court will cite to it using the numbers assigned
28  by the electronic case filing system.

                                  1
                                                    08cv430 WQH (RBB)

March 25, 2009, along with a Memorandum of Points and Authorities and Notice of Lodgment [ECF No. 24].

Duran filed four motions for an extension of time to file his traverse, all of which were granted [ECF Nos. 26-33]. He also filed a Motion entitled, Petitioner Requesting Entire Trial Transcript and California Court of Appeal Briefs, followed shortly by another request for an extension of time to file his traverse [ECF Nos. 35-36]. The Court denied Duran's request for copies of his trial transcripts but granted him an additional sixty days to file his traverse [ECF No. 37]. Petitioner requested another thirty-day extension because he had recently been transferred to another prison on October 15, 2009, which was granted [ECF Nos. 38-39].[2] Duran filed his Traverse nunc pro tunc to November 19, 2009 [ECF No. 43].[3]

The Court has reviewed the Amended Petition, Respondent's Answer, Petitioner's Traverse, and the lodgments. For the reasons set forth below, the Court recommends Duran's Amended Petition for Writ of Habeas Corpus be **GRANTED IN PART AND DENIED IN PART**.

In his Traverse, Duran requested an evidentiary hearing. (Traverse 3-4, ECF No. 43.) As explained below, the Court **DENIES** Duran's request for an evidentiary hearing.

---

[2] Additionally, the case was transferred to Magistrate Judge William Gallo on October 21, 2009, and was transferred back to this Court on April 2, 2010.

[3] The Court will also cite the Traverse using the page numbers assigned by the electronic docketing system.

1

## I.   FACTUAL BACKGROUND

2     On January 11, 2004, Petitioner Joseph Duran went to a
3  National City car dealership where he met Jose Fernando Garcia, a
4  car salesman.  (Lodgment No. 10, Rep.'s Appeal Tr. vol. 6, 449–
5  52, Feb. 2, 2005.)  Duran told Garcia that his mother had given
6  him $15,000 to buy a car, and he wanted to test drive a Jeep.
7  (Id. at 453, 455.)

8     Duran also mentioned that he had just had a cast removed
9  from his right hand.  (Id. at 454.)  Petitioner lifted his right
10 sleeve and showed Garcia that one hand was a different color than
11 the other.  (Id.)

12    Garcia retrieved the keys to the Jeep that Duran had
13 selected.  (Id. at 458.)  They got into the car, and Duran drove
14 out of the dealership.  (Id.)  After a short distance, Garcia
15 asked Duran to pull over so he could remove a balloon that was
16 tied to the right-hand side mirror.  (Id. at 459.)  Once the Jeep
17 was stopped, Duran told Garcia, "Why don't you get the fuck out
18 of the car." (Id. at 461.)  Duran lifted his shirt and revealed
19 what Garcia believed to be a gun.  (Id.)  Garcia was frightened,
20 so he jumped out of the car and ran back to the dealership.  (Id.
21 at 462.)  Duran drove away in the vehicle.  (Id. at 463.)

22    When Garcia returned to the dealership he told his manager,
23 James Burgess, what happened and Burgess called 911.  (Id.)
24 Garcia gave the 911 operator a general description of the
25 carjacker.  (Id.)  Later, a police officer came to the dealership
26 and took a more detailed statement from Garcia.  (Id. at 463-64.)

27    On January 12, 2004, the day after the robbery, Officer
28 Michael Helms, a San Diego County Sheriff, noticed a Jeep

3                                    08cv430 WQH (RBB)

1  speeding out of a local shopping center.  (Lodgment No. 11,
2  Rep.'s Appeal Tr. vol. 7, 528-30, Feb. 3, 2005.)  The Jeep ran a
3  stop sign and made an illegal turn toward oncoming traffic.  (Id.
4  at 530.)  Officer Helms stopped the vehicle because of the
5  traffic violations.  (Id. at 531-32.)

6      Duran was the driver of the Jeep.  (Id. at 533-35.)  During
7  the traffic stop, he explained that he did not have
8  identification, but Duran gave his name and date of birth to
9  Officer Helms.  (Id.)  Shortly thereafter, the officer ran a
10  check on the vehicle's license plate and learned that it was
11  stolen the day before.  (Id. at 535-36.)  Officer Helms arrested
12  Duran and contacted National City Police to assist in the
13  investigation.  (Id. at 536, 538.)

14      National City Police Officers took several photographs of
15  Duran, including his face, hair, and where his right arm was
16  slightly deformed and discolored.  (Id. at 557-59.)  Two days
17  later, on January 14, 2004, an officer showed a photographic
18  lineup to Garcia, the car salesman.  (Lodgment No. 10, Rep's
19  Appeal Tr. vol. 6, 467.)  Garcia identified Duran from the
20  photographic lineup and also identified him during the trial.
21  (Id. at 453, 469-70.)

22              **II.  PROCEDURAL BACKGROUND**

23      On February 4, 2005, the jury convicted Duran of carjacking,
24  robbery, and the unlawful taking and driving of a vehicle.
25  (Lodgment No. 2, Clerk's Tr. vol. 2, 359-61, Feb. 4, 2005.)  The
26  jury found him not guilty of buying, receiving, concealing,
27  selling, or withholding a stolen vehicle.  (Lodgment No. 12,
28  Rep.'s Tr. Appeal vol. 8, 696-97, Feb. 4, 2005.)  Duran waived

                          4                    08cv430 WQH (RBB)

his right to a jury trial on his prior convictions.  (<u>Id.</u> at 703.)  He admitted convictions for assault with a deadly weapon on May 26, 1999, and theft of a firearm on March 1, 1991.  (<u>Id.</u> at 704.)  He also admitted two strikes and two prison priors, including one violent prison prior.  (<u>Id.</u>)  Finally, Duran admitted that both of his prior convictions were considered serious.  (<u>Id.</u>)

On August 16, 2005, the trial court sentenced Duran to twenty-five years to life in state prison for carjacking.  (Lodgment No. 13, Rep.'s Appeal Tr. vol. 9, 741-42.)  The court added two consecutive five-year terms for the two serious felonies, a consecutive three-year term for the violent prison prior, and two consecutive one-year terms for each of the prison priors.  (<u>Id.</u> at 742.)  The sentences for robbery and the unlawful taking and driving of a vehicle, counts two and three, were stayed pursuant to California Penal Code section 654.  (<u>Id.</u> at 743.)  Petitioner's total sentence was forty years to life in state prison.  (<u>Id.</u> at 742-43; <u>see also</u> Lodgment No. 2, Clerk's Tr. vol. 2, 368.)

Duran appealed his conviction to the California Court of Appeal.  (Lodgment No. 15, Appellant's Opening Br. at 1, <u>People v. Duran</u>, No. D047059 (Cal. Ct. App. Jan. 16, 2007).)  He argued that the prosecutor violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), as well as California Penal Code section 1054.1, and the trial court miscalculated his sentence.  (Lodgment No. 15, Appellant's Opening Br. at 8-24, <u>People v. Duran</u>, No. D047059.)  The California Court of Appeal affirmed Duran's conviction but remanded his case to the trial court with instructions to strike

the prison term enhancements under California Penal Code sections 667.5(a) and 667.5(b).  (Lodgment No. 18, <u>People v. Duran</u>, No. D047059, slip op. at 11 (Cal. Ct. App. Jan 16, 2007).)

Duran then filed a petition for review in the California Supreme Court and made the same arguments regarding <u>Brady</u> and California Penal Code section 1054.1 discovery violations. (Lodgment No. 19, Pet. for Review at 3, 12) <u>People v. Duran</u>, [S150297] (Cal. filed Feb. 20, 2007).)  The supreme court summarily denied his petition.  (Lodgment No. 20, <u>People v. Duran</u>, [S150297], order (Cal. Mar. 30, 2007).)

On February 26, 2008, Duran filed a petition for writ of habeas corpus in the California Supreme Court.  (Lodgment No. 21, <u>People v. Duran</u>, S161207 (Cal. filed Feb. 26, 2008) (petition for writ of habeas corpus).)  He argued:  (1) the trial court abused its discretion when it did not order a competency hearing and erred when it took a "<u>Lopez</u> waiver" without evaluating his competence and informing him of the maximum punishment; (2) he received ineffective assistance of counsel; and (3) the judge improperly admitted evidence of a gun.  (<u>Id.</u>)  The petition was summarily denied.  (Supplemental Lodgment No. 1, <u>In re Duran</u>, S161207, order (Cal. Oct. 16, 2008).)

On March 6, 2008, Duran filed a Petition for Writ of Habeas Corpus in this Court and filed an Amended Petition on December 9, 2008 [ECF No. 15].  Respondent filed an Answer on January 22, 2009 [ECF No. 22].  Duran's Traverse was filed nunc pro tunc to November 19, 2009 [ECF No. 43].

1

### III.   STANDARD OF REVIEW

2       Because Duran filed his Petition after April 24, 1996, it is

3 subject to the Antiterrorism and Effective Death Penalty Act

4 ("AEDPA") of 1996.  28 U.S.C.A. § 2244 (West 2006); <u>Woodford v.</u>

5 <u>Garceau</u>, 538 U.S. 202, 204 (2003) (citing <u>Lindh v. Murphy</u>, 521

6 U.S. 320, 326 (1997)).  AEDPA sets forth the scope of review for

7 federal habeas corpus claims:

8           The Supreme Court, a justice thereof, a circuit
            judge, or a district court shall entertain an
9           application for a writ of habeas corpus in behalf of a
            person in custody pursuant to the judgment of a State
10          court only on the ground that he is in custody in
            violation of the Constitution or laws of the United
11          States.

12 28 U.S.C.A. § 2254(a) (West 2006); <u>see also</u> <u>Reed v. Farley</u>, 512

13 U.S. 339, 347 (1994); <u>Hernandez v. Ylst</u>, 930 F.2d 714, 719 (9th

14 Cir. 1991).

15      To present a cognizable federal habeas corpus claim, a state

16 prisoner must allege his conviction was obtained "in violation of

17 the Constitution or laws or treaties of the United States."  28

18 U.S.C.A § 2254(a).  A petitioner must allege the state court

19 violated his federal constitutional rights.  <u>Hernandez</u>, 930 F.2d

20 at 719; <u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990);

21 <u>Mannhald v. Reed</u>, 847 F.2d 576, 579 (9th Cir. 1988).

22       A federal district court does "not sit as a 'super' state

23 supreme court" with general supervisory authority over the proper

24 application of state law.  <u>Smith v. McCotter</u>, 786 F.2d 697, 700

25 (5th Cir. 1986); <u>see also</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780

26 (1990) (holding that federal habeas courts must respect state

27 court's application of state law); <u>Jackson</u>, 921 F.2d at 885

28 (concluding federal courts have no authority to review a state's

7                      08cv430 WQH (RBB)

application of its law).  Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).

In 1996, Congress "worked substantial changes to the law of habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).  Amended section 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C.A § 2254(d).

The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003), stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under section 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law."  Id. at 71 (citation omitted).  In other words, a federal court is not required to review the state court decision de novo.  Id.  Rather, a federal

8

1  court can proceed directly to the reasonableness analysis under

2  section 2254(d)(1).  Id.

3      The "novelty" in section 2254(d)(1) is "the reference to

4  'Federal law, as determined by the Supreme Court of the United

5  States.'"  Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en

6  banc), rev'd on other grounds, 521 U.S. 320 (1997) (emphasis in

7  original deleted).  Section 2254(d)(1) "explicitly identifies

8  only the Supreme Court as the font of 'clearly established'

9  rules."  (Id.)  "[A] state court decision may not be overturned

10 on habeas corpus review, for example, because of a conflict with

11 Ninth Circuit-based law."  Moore, 108 F.3d at 264.  "[A] writ may

12 issue only when the state court decision is 'contrary to, or

13 involved an unreasonable application of,' an authoritative

14 decision of the Supreme Court."  Id. (citing Childress v.

15 Johnson, 103 F.3d 1221, 1224-26 (5th Cir. 1997); Devin v.

16 DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996); see Baylor v.

17 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996)).

18     Furthermore, with respect to the factual findings of the

19 trial court, AEDPA provides:

20          In a proceeding instituted by an application for a
           writ of habeas corpus by a person in custody pursuant
21          to the judgement of a State court, a determination of a
           factual issue made by a State court shall be presumed
22          to be correct.  The applicant shall have the burden of
           rebutting the presumption of correctness by clear and
23          convincing evidence.

24 28 U.S.C.A. § 2254(e)(1).

25                         **IV.  DISCUSSION**

26     Duran asserts four main grounds and multiple subclaims for

27 habeas relief.  (Am. Pet. 10, ECF No. 15; id. Attach. #2, 34, 67;

28 id. Attach. #3, 37; see also Traverse Attach. #1 Mem. P. & A. 10,

08cv430 WQH (RBB)

1   17, 32, 40, ECF No. 43.)   In ground one, Petitioner claims the

2   prosecutor failed to disclose material, exculpatory evidence in

3   violation of his discovery obligations, and the trial judge

4   abused his discretion by denying Duran's motion for a new trial.

5   (Am. Pet. 10, ECF No. 15.)

6       In ground two, Petitioner argues that the trial judge abused

7   his discretion by failing to order a competency hearing after

8   expressing doubt about Duran's mental status.   (<u>Id.</u> Attach. #2,

9   34.)   The judge is alleged to have erred in allowing him to

10  complete a <u>Lopez</u> waiver, <u>People v. Lopez</u>, 71 Cal. App. 3d 568,

11  138 Cal. Rptr. 36 (1977), without evaluating Duran's competence,

12  and his waiver was not knowing and intelligent because he was not

13  informed of his maximum punishment.   (<u>Id.</u>)

14      In ground three, Petitioner claims that he received

15  ineffective assistance of counsel prior to, and after, his self-

16  representation.   (<u>Id.</u> at 67.)   Petitioner argues that his counsel

17  failed to investigate Duran's mental capacity.   (<u>Id.</u> at 68.)   At

18  the time Petitioner waived his right to counsel, his attorney

19  failed to inform him of the correct maximum penalty.   (<u>Id.</u> at

20  70.)   In addition, Duran contends that the trial court erred by

21  failing to address his claim of ineffective assistance of counsel

22  raised in his motion for a new trial.   (<u>Id.</u> at 72.)

23      Finally, in ground four, Petitioner argues that the trial

24  judge improperly admitted evidence regarding the personal use of

25  a firearm, when that allegation had previously been dismissed

26  from counts one and two.   (<u>Id.</u> Attach. #3, 37–38.)

27

28

08cv430 WQH (RBB)

1     **A.   Ground One:   Whether the Prosecution Failed to Disclose**
             **Material, Exculpatory Evidence**
2

3         On November 24, 2004, Duran filed an informal request for

4    discovery pursuant to California Penal Code section 1054.5 (West

5    2008).  (Lodgment No. 1, Clerk's Tr. vol. 1, 21–28).  On December

6    10, 2004, he filed a motion for discovery pursuant to <u>Brady v.</u>

7    <u>Maryland</u>, 373 U.S. 83; <u>People v. Wheeler</u>, 4 Cal. 4th 284, 841

8    P.2d 938, 14 Cal. Rptr. 2d 418 (1992); and California Penal Code

9    section 1054(e) (West 2008).  (Lodgment No. 1, Clerk's Tr. vol.

10   1, 29–30); <u>see also</u> Cal. Penal Code § 1054(e) ("[N]o discovery

11   shall occur in criminal cases except as provided by this chapter,

12   other express statutory provisions, or as mandated by the

13   Constitution of the United States.")

14        On February 3, 2005, as Duran's trial entered its third and

15   final day, the prosecution turned over a "police follow-up

16   report." (Am. Pet. 10, ECF No. 15.)  Petitioner argues the late

17   delivery of the report violated the prosecution's discovery

18   obligations under <u>Brady</u>.[4]  (<u>Id.</u> at 13; Traverse Attach. #1 Mem.

19   P. & A. 13, ECF No. 43.)  He further asserts that his conviction

20   should be reversed because the report was favorable to his

21   defense, it contained material, exculpatory information, and it

22   was suppressed by the prosecution.  (Am. Pet. at 13–15, ECF No.

23   15.)  "Any information casting doubts on [the victim's]

24   identification [of Duran] would undermine the prosecution and aid

25   the defense." (<u>Id.</u> at 19.)  Petitioner concludes by arguing that

26   _____

27        [4]   Initially, Duran moved to have the document and its
     contents suppressed, but the court denied his motion. (Lodgment
28   No. 11, Rep.'s Appeal Tr. vol. 7, 505, 507-08.)

11                          08cv430 WQH (RBB)

1   the evidence "call[ed] into question the accuracy of [the

2   victim's] identification of [Duran and] rais[ed] a reasonable

3   probability of a different result . . . ."  (Id. at 20.)

4       Respondent contends that the California Court of Appeal

5   considered these claims and properly rejected them.  (Answer

6   Attach. #1 Mem. P. & A. 6, ECF No. 24.)  Respondent argues that

7   "[t]he Court of Appeal reasonably concluded the information about

8   [the undisclosed witnesses] was not material because . . . the

9   information in no way undermined confidence in the jury's

10  verdict."  (Id. at 10.)  Furthermore, "[t]he Court of Appeal's

11  decision was consistent with Brady and reasonable under the facts

12  of this case."  (Id. at 11.)

13      "[T]he suppression . . . of evidence favorable to an accused

14  violates due process where the evidence is material either to

15  guilt or punishment, irrespective of the good faith of the

16  prosecutor."  Brady, 373 U.S. at 87.  In Brady, the Supreme Court

17  recognized a prosecutor's obligation to disclose exculpatory

18  evidence, whether substantive or for impeachment purposes, when

19  such evidence is "material" to the defense.  See id.  Evidence is

20  material "only if there is a reasonable probability that, had the

21  evidence been disclosed to the defense, the result of the

22  proceeding would have been different."  United States v. Bagley,

23  473 U.S. 667, 682 (1985).  The mere possibility an item of

24  undisclosed information might have helped the defense or affected

25  the outcome of the trial does not establish materiality.  See

26  United States v. Agurs, 427 U.S. 97, 109 (1976).

27      Habeas corpus relief is only granted if the state court

28  adjudication "resulted in a decision that was contrary to, or

12                    08cv430 WQH (RBB)

1    involved an unreasonable application of, clearly established

2    federal law, as determined by the United States Supreme Court."

3    28 U.S.C.A. § 2254(a).  A <u>Brady</u> violation will not result in

4    habeas relief unless the improperly withheld evidence "could

5    reasonably be taken to put the whole case in such a different

6    light as to undermine confidence in the verdict." <u>Kyles v.</u>

7    <u>Whitley</u>, 514 U.S. 419, 435 (1995).

8         To establish a <u>Brady</u> violation, Petitioner must show three

9    things.  <u>Strickler v. Green</u>, 527 U.S. 263, 281–82 (1999).  First,

10   the evidence was favorable to him, either because it is

11   exculpatory or because it is impeaching.  (<u>Id.</u>)  Second, the

12   evidence must have been willfully or inadvertently suppressed by

13   the prosecution.  (<u>Id.</u>)  Third, the defendant was prejudiced by

14   the failure to disclose.  (<u>Id.</u>)

15        The follow-up police report contained statements by two

16   witnesses:  Raquel Martinez Robinson and Oscar Ochoa.  (Lodgment

17   No. 2, Clerk's Tr. vol. 2, 252.)  Robinson stated that she spent

18   no more than ten minutes with the suspect, and Ochoa indicated he

19   had only observed the suspect from afar.  (<u>Id.</u>)  Both witnesses

20   described the carjacker as a Hispanic male who was roughly thirty

21   years old.  (<u>Id.</u>)  Robinson added that the carjacker had short

22   black hair, a pocked face, and identified himself as "Joseph."

23   (<u>Id.</u>)  Both witnesses stated they would be unable to identify the

24   carjacker.  (<u>Id.</u>)  Neither Robinson nor Ochoa was able to

25   identify Duran from a photo lineup.  (<u>Id.</u>)

26        Duran presented this claim to the California Court of Appeal

27   and California Supreme Court.  (Lodgment No. 15, Appellant's

28   Opening Br. at 1, <u>People v. Duran</u>, No. D047059; Lodgment No. 19,

1   Pet. for Review at 3, 12, People v. Duran, [S150297].)  The state

2   supreme court summarily denied the petition for review.

3   (Lodgment No. 20, People v. Duran, [S150297], order.)  Because

4   the appellate court issued the last reasoned state court

5   decision, this Court will look through the state supreme court's

6   summary denial.  Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991).

7       The California Court of Appeal stated, "[I]f the information

8   in the police report was material to [Duran's] defense, it would

9   be difficult for us to find that the prosecution met its

10  discovery obligations." (Lodgment No. 18, People v. Duran, No.

11  D047059, slip op. at 9.)  The court continued:

12          However, on this record we cannot find that the
            information in the police report would have been of any
13          material assistance to Duran.  The day after the
            carjacking he was stopped driving the stolen car.  In
14          general he matched the description given by Garcia and
            in particular had a discolored right hand similar to
15          the one Garcia had reported.  Garcia talked to Duran
            directly and drove for a short while in the car with
16          him.  Thus Garcia had an excellent opportunity to
            recognize Duran and was able to pick him out of a
17          photographic lineup.

18          In contrast, the witnesses disclosed in the report
            had not been in a car with Duran and in fact apparently
19          wanted nothing to do with him while he was at the car
            dealership.  Importantly, unlike Garcia, none of the
20          undisclosed witnesses had been the victim of a
            harrowing carjacking.  Under these circumstances a jury
21          would not find their failure to identify him at all
            surprising or inconsistent with Garcia's testimony.
22          Indeed, given the undisclosed witnesses' casual
            opportunity to observe him, had Duran called them and
23          had them testify about their inability to pick him out
            of the photographic lineup, Duran would have
24          established in a fairly conclusive fashion that the
            photographic lineup was not in any manner suggestive.
25          Thus the witnesses' entirely explicable failure to
            identify Duran could have easily been used to support
26          the validity of Garcia's positive identification.

27  (Id. at 10-11.)  Thus, the appellate court found that the

28  undisclosed information was not material because there was no

                                14                    08cv430 WQH (RBB)

1  reasonable probability that the result would have been different

2  had it been disclosed.  (See id.)

3      The court of appeal reasoned that the victim's

4  identification of Petitioner was persuasive because Garcia had

5  ample opportunity to observe the carjacker, but the undisclosed

6  witnesses did not.  Duran matched the general description of the

7  carjacker, and Garcia was able to pick Petitioner out of a photo

8  lineup.  Petitioner was apprehended shortly after the crime, in

9  the stolen vehicle.  The court explained that the witnesses in

10  the report were distinguishable from Garcia because they had

11  little contact with the carjacker.  Their failure to identify

12  Petitioner from the photo lineup would not contradict Garcia's

13  testimony and would be understandable to the jury.  The

14  California Court of Appeal's decision was not contrary to, or an

15  unreasonable application of, clearly established federal law.

16  See Lockyer, 538 U.S. at 71 (citing Weeks, 528 U.S. 225).

17      In his brief to the California Court of Appeal, Duran argued

18  that a third witness, Jose Morales, had been discovered as a

19  result of interviewing Robinson and Ochoa.  (See Lodgment No. 15,

20  Appellant's Opening Br. at 7, People v. Duran, No. D047059.)

21  Morales was not interviewed by the police.  (Id.)  Morales, like

22  Robinson and Ochoa, saw the carjacker for a limited amount of

23  time; however, Morales believed he could identify the carjacker.

24  (Id.)  The court of appeal did not discuss Morales in its

25  opinion; the trial court, however, did have an opportunity to

26  review and rule on this claim.  (See Lodgment No. 18, People v.

27  Duran, No. D047059, slip op. at 1–11; Lodgment No. 13 Rep.'s

28  Appeal Tr. vol. 9, 726–28.)

1    The trial court heard Duran's motion for a new trial based

2    on the alleged <u>Brady</u> violation.  (Lodgment No. 13 Rep.'s Appeal

3    Tr. vol. 9, 708.)   The motion was based on potential testimony

4    from all three witnesses -- Robinson, Ochoa, and Morales.

5    Duran's attorney argued, "It is . . . obviously very significant

6    . . . that information also led to a third witness, who was not

7    mentioned in the report, who was also an eyewitness, Mr. Moreno

8    [sic] . . . ."  (<u>Id.</u> at 722.)  He asserted that the interview

9    with Robinson and Ochoa lead to "that third individual [Morales]

10   who was an eyewitness and also gave an indication about his

11   ability to identify the individual."  (<u>Id.</u> at 723.)

12        The motion for a new trial was supported by a declaration

13   from an investigator who had spoken with Morales.  (<u>See</u> Lodgment

14   No. 2, Clerk's Tr. vol. 2, 262-63.)  Judge Edwards stated that

15   even if the three individuals appeared at the trial, it "would

16   not lead to a different result."  (Lodgment No. 13, Rep.'s Appeal

17   Tr. vol. 9, 731.)   The trial court commented:

18        [T]he evidence in this case against [Duran] was strong.
         Mr. Garcia identified [Duran], and the very next day
19        the defendant was found in possession of the vehicle.
         So you have eyewitness testimony corroborated by the
20        physical evidence.

21        And this is not the kind of case where the issue
         of cross-racial identification is a matter which might
22        lead to misidentification.  The fact that the defendant
         was found in possession of the vehicle the very next
23        day and was identified by the person from whom the
         vehicle was taken, in this court's view, mitigates
24        against the finding that a different trier of fact
         would reach a different conclusion.

25

26   (<u>Id.</u> at 730.)

27        Judge Edwards continued:

28

16                                              08cv430 WQH (RBB)

1
2
3
4
5

> Although [the nondisclosed individuals] had not been able to identify [Duran] in a photo spread, looking at him in true life might have resulted in them identifying him.  And rather than having the one witness identify him and then having him be in the position to argue that this one witness was wrong, producing the other two witnesses who perhaps would have identified him would then have made that task impossible.

6
7

> When you take that with the fact that he was found in the vehicle a day later, you have no chance.

8   (Id. at 730-31.)

9      This Court gives deference to the last reasoned state-court

10  opinion.  Ylst v. Nunnemaker, 501 U.S. at 804.  The court of

11  appeal did not discuss whether Morales's testimony would have

12  yielded a different result.  As a result, this Court looks to the

13  trial court's discussion.

14     The identification of Morales stemmed from interviewing

15  witnesses listed in the follow-up report, and the court of appeal

16  found that the report was Brady material.  The Supreme Court has

17  held, "The reviewing court may consider directly any adverse

18  effect that the prosecutor's failure to respond [to a request for

19  Brady material] might have had on the preparation or presentation

20  of the defendant's case."  Bagley, 473 U.S. at 683 (emphasis

21  added).  Here, the belated disclosure of the follow-up report

22  hampered Duran's ability to discover, interview, and call Morales

23  to testify.

24     Still, Duran must show that Morales's testimony was material

25  to his defense.  Evidence is material when "its suppression

26  undermines confidence in the outcome of the trial."  Id. at 678.

27  Petitioner must demonstrate that Morales's testimony would have

28

1  changed the result of his trial.  Bagley, 473 U.S. at 682.  He
2  cannot meet this burden.

3      The trial court's analysis applies to Robinson, Ochoa, and
4  Morales.  Morales saw the carjacker for a limited amount of time.
5  (See Lodgment No. 2, Clerk's Tr. vol. 2, 263-64 (Decl. Frank C.
6  Griffin).)  Although he believed he "could still possibly
7  identify" the carjacker, Morales was never shown a lineup or
8  photo array, and he had not indicated that Duran was not the
9  carjacker.  (Id. at 264.)  Duran's defense was that Garcia
10 misidentified him.  The trial judge noted that "it's not that
11 [the newly discovered witnesses] picked someone different or said
12 that [Duran] was not the person."  (Lodgment No. 13, Rep.'s
13 Appeal Tr. vol. 9, 731.)  The court concluded that earlier
14 disclosure of the follow-up report would not have changed the
15 result in Petitioner's case.  (Id. at 728-31.)  Given the
16 strength of the case against Duran, uncertain testimony from
17 Morales would not have altered the course of the proceedings.
18 The trial court's analysis was not contrary to, or an
19 unreasonable application of, clearly established Supreme Court
20 law.

21     Duran also argues that the trial judge abused his discretion
22 in denying Petitioner's motion for a new trial.  He claims the
23 judge did not "explicitly address" Duran's Brady claim and
24 applied the wrong legal standard.  (Am. Pet. 21-26, ECF No. 15.)
25 Petitioner raised these arguments in the court of appeal.  (See
26 Lodgment No. 15, Appellant's Opening Br. at 15-17, People v.
27 Duran, No. D047059.)  Regardless of how the trial court handled
28 the Brady claim, the California Court of Appeal addressed the

18                                    08cv430 WQH (RBB)

claim and applied the legal standard Duran believes was ignored
by the trial judge.  (See Lodgment No. 18, <u>People v. Duran</u>, No.
D047059, slip op. at 6–11.)  Because there was no constitutional
violation, and the state courts correctly applied Supreme Court
law, the district court should **DENY** Duran habeas relief based on
the first ground raised in his Amended Petition.

**B.    <u>Ground Two:  Whether the Trial Court Erred in Failing
to Conduct a Competency Hearing and Allowing Petitioner
to Complete a Lopez Waiver and Whether His Waiver Was
"Knowing and Intelligent"</u>**

**1.   <u>Sua Sponte Competency Hearing</u>**

Duran claims "the trial court abused its discretion in not
ordering a competency hearing under [California Penal Code
section] 1368 upon expressing that it entertained doubt of
appellant's competence."  (Am. Pet. Attach. #2, 34, ECF No. 15;
Traverse Attach. #1 Mem. P. & A. 17, ECF No. 43); <u>see also</u> Cal.
Penal Code § 1368 (discussing the procedure for a competency
hearing).  Petitioner explains that the trial judge observed his
behavior and heard his attorney's description of multiple
difficulties during his office's representation of Duran.  (Am.
Pet. Attach. #2, 35, ECF No. 15.)

On August 20, 2004, after the preliminary hearing but before
trial, Duran perceived that he had problems with his appointed
counsel.  (<u>Id.</u> at 46–48.)  The trial court held a hearing
pursuant to <u>People v. Marsden</u>, 2 Cal. 3d 118, 465 P.2d 44, 84
Cal. Rptr. 156 (1970).  (Am. Pet. Attach. #2, 46, ECF No. 15);
<u>see also</u> <u>Marsden</u>, 2 Cal. 3d at 126, 465 P.2d at 49, 84 Cal. Rptr.
at 161 (holding that a defendant is deprived of his
constitutional right to the effective assistance of counsel where

19

1  a trial court denies a motion to substitute new counsel without

2  giving the defendant an opportunity to state the reasons for his

3  request).

4      Duran complained that he was being sexually harassed by his

5  appointed attorney.  (Am. Pet. Attach. #2, 47–49, ECF No. 15.)

6  During the hearing, the judge asked, "So it is not really

7  anything to do with the quality or the nature of the

8  representation that he's giving you or the legal advice he's

9  giving you?"  (<u>Id.</u> at 48.)  Petitioner added that there was a

10 problem with representation.  (<u>Id.</u>)  He and his counsel had a

11 disagreement over obtaining discovery from the district attorney.

12 (<u>Id.</u>)  The court began to question whether there was a breakdown

13 in communication when the attorney stated:

14         Let me interrupt, your honor.  I am going to cut
       it short, and I'm going to ask you to relieve my
15     office.  I am the third lawyer in my office that this
       case has been with.  Mr. Duran has had the same
16     attitude with everyone in my office, and I would assume
       everyone in the public defender's office, the same kind
17     of nonsense over and over again.  Let me just be frank.
       I don't have time for it, and I would ask you to find
18     that there is a breakdown in the attorney-client
       relationship and relieve my office.
19

20 (<u>Id.</u> at 50.)

21     The trial judge commented that Duran might seek to relieve

22 the next attorney appointed to represent him and stated, "He's

23 getting frustrated with any attorney.  Have we thought about

24 1368?"  (<u>Id.</u>)  Duran tried to assuage the judge's concern by

25 explaining that two of his prior counsel were relieved for

26 reasons other than a conflict with Duran.  (<u>Id.</u>)

27     Counsel stated that his caseload did not permit him to

28 handle Petitioner's case.  (<u>Id.</u> at 51.)  He added, "We just ran

1   out of people that could deal with Mr. Duran . . . ."  (Id.)   The

2   attorney described Duran as difficult and explained that his

3   office interviewed many witnesses for Petitioner, but "[h]e sent

4   us on one wild goose chase after another."  (Id.)

5        Duran responded, "They have no time for a technical case

6   like mine."  (Id. at 52.)  According to Petitioner, there was

7   circumstantial evidence to assemble, and his attorney failed to

8   ask the proper questions of the people who were interviewed.

9   (Id.)  He explained, "I needed my parole officers' photo copies

10  of my automobile registration and insurance to show there was no

11  motive for a carjacking."  (Id.)

12       The trial judge again asked, "Have you looked at 1368,

13  considered it at all?"  The attorney replied, "I am not aware of

14  any mental health history, and for that reason I have not

15  considered it."  (Id.)  Duran volunteered, "Your honor, I am

16  completely capable of understanding, and I am not asking for

17  self-representation.  I think that would be a poor choice."

18  (Id.)  The trial judge told Petitioner that his trial date was

19  approaching and changing attorneys may prevent him from being

20  able to make another Marsden motion.  (Id. at 53-54.)  He also

21  explained that Duran could hire his own attorney.  (Id. at 53.)

22  Ultimately, the court relieved the alternate public defender and

23  appointed private conflicts counsel.  (Id. at 54.)

24       Just over two months later, on October 28, 2004, Duran

25  decided to represent himself.  (Id. at 41.)  He told the court

26  that he was a high school graduate with no legal education.

27  (Id.)  The judge asked why he wanted to represent himself, and he

28  explained, "The complications of the case, the attorney doesn't

seem to understand them.  I'm the one who understands them."
(<u>Id.</u>)  Duran claimed to understand the evidence code and when
asked if he understood the penal code, he said, "If you give me
the opportunity to represent myself, I can always do the research
on it."  (<u>Id.</u> at 42.)

The judge advised Petitioner that he had a right to
represent himself but that didn't make self-representation a good
idea.  (<u>Id.</u>)  Duran countered, "I just think your honor, that I
could get the right information that I need that I haven't been
able to get from several attorneys . . . ."  (<u>Id.</u>)  Duran
confirmed that he understood opposing counsel went to law school,
college, and had tried other cases.  The judge asked Petitioner
if he thought that was unfair.  (<u>Id.</u>)  Duran responded, "I think
it's unfair that I have not had a proper defense."  The judge
analogized Duran's self-representation to him "stepping into a
ring with a heavyweight fighter."  (<u>Id.</u>)  When asked if he
thought he stood a chance, he responded, "Rocky won."  (<u>Id.</u>)

Next, the judge asked Duran to complete the <u>Lopez</u> waiver and
recessed to give him time to do so.  (<u>Id.</u> at 43.)  When the case
was re-called, Duran had not initialed one paragraph on the form
because he wanted more time to prepare for trial.  (<u>Id.</u>)
Petitioner asked for a ninety-day continuance, but the judge
said, "I'm not here to sit here and negotiate with you as to the
terms of your pro per status."  (<u>Id.</u> at 44.)

Duran was asked, "Is there anything on the form you don't
understand?"  (<u>Id.</u>)  He responded, "I need time."  (<u>Id.</u>)  The
judge explained that he would give Duran time, just no more time
than he would give a lawyer.  (<u>Id.</u>)  Duran asked for advisory

22

1  counsel; the judge denied the request.  (Id.)  Petitioner asked

2  for a legal runner; the judge again stated he would not negotiate

3  with Petitioner, but he would appoint a legal runner and

4  investigator.  (Id. at 44-45.)  At that time, Duran agreed that

5  he understood everything on the form.  (Id. at 45.)

6      Petitioner argues that this exchange shows that the court

7  doubted Duran's competency to represent himself.  (Id. at 35.)

8  Specifically, the court "heard [Duran's] counsel's observation of

9  appellant's behavior with prior appointed counsel and [counsel's

10  reference to the] 'same kind of nonsense over and over again.'"

11  (Id.)  Petitioner concludes, "In effect, counsel stated defendant

12  was incapable of cooperating with counsel in his own defense

13  . . . ."  (Id.)  Duran argues that the trial judge should have

14  ordered a competency hearing.  (Id.)  He also contends it was

15  error for the trial court to take his People v. Lopez waiver

16  without first evaluating his competency.  (Id. at 37.)

17      Respondent asserts there was no real doubt about

18  Petitioner's competence; rather, "Duran was simply a malcontent

19  whose dissatisfaction with multiple counsel smacked not of mental

20  problems but of the sociopathology his long criminal record

21  suggested."  (Answer Attach. #1 Mem. P. & A. 12, ECF No. 24.)

22  Respondent adds, "Duran himself represented that he was capable

23  of understanding."  (Id. at 18.)  Respondent also alleges that

24  Duran understood the Lopez waiver; thus, there was no

25  constitutional error.  (Id. at 14, 21.)

26      Duran included this issue in the petition for writ of habeas

27  corpus he submitted to the California Supreme Court.  (Lodgment

28  No. 21, People v. Duran, S161207 (petition for writ of habeas

1   corpus).)   The court summarily denied the petition.

2   (Supplemental Lodgment No. 1, In re Duran, S161207, order.)

3        "[W]hen the state court reaches a decision on the merits but

4   provides no reasoning to support its conclusion[,] . . . [the

5   federal habeas court] independently review[s] the record to

6   determine whether the state court clearly erred in its

7   application of Supreme Court law." Pirtle v. Morgan, 313 F.3d

8   1160, 1167 (9th Cir. 2002).   "Federal habeas review is not de

9   novo when the state court does not supply reasoning for its

10  decision, but an independent review of the record is required to

11  determine whether the state court clearly erred in its

12  application of controlling federal law." Delgado v. Lewis, 223

13  F.3d 976, 982 (9th Cir. 2000).

14       Due process dictates that a trial court conduct a hearing to

15  determine a defendant's competence to stand trial when confronted

16  with evidence that raises a bona fide doubt as to mental

17  competence.   See Pate v. Robinson, 383 U.S. 375, 385 (1966).   "A

18  bona fide doubt exists if there is substantial evidence of

19  incompetence, or substantial evidence that the defendant lacks

20  'sufficient present ability to consult with his lawyer with a

21  reasonable degree of rational understanding' or 'a rational as

22  well as factual understanding of the proceedings against him.'"

23  Williams v. Woodford, 384 F.3d 567, 604 (9th Cir. 2004) (quoting

24  Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam).)

25  Relevant factors include "evidence of a defendant's irrational

26  behavior, his demeanor at trial, and any prior medical opinion on

27  competence to stand trial." Drope v. Missouri, 420 U.S. 162, 180

28  (1975).   The same competency standard applies when a defendant

1   seeks to waive his right to the assistance of counsel.   <u>See</u>

2   <u>Godinez v. Moran</u>, 509 U.S. 389, 399–402 (1993) (distinguishing

3   between competence and making a knowing and voluntary waiver).

4       From the exchanges described above, there is no doubt

5   Petitioner was a demanding client.   But there is no indication he

6   lacked "'sufficient present ability to consult with his lawyer

7   with a reasonable degree of rational understanding -- and [that]

8   he [lacked] a rational as well as factual understanding of the

9   proceedings against him.'"   <u>See</u> <u>Dusky</u>, 362 U.S. at 402.

10       During the August 20, 2004 <u>Marsden</u> hearing, Duran distinctly

11   described his personal and professional problems with his prior

12   attorneys.   (Am. Pet. Attach. #2, 46–50, ECF No. 15.)   Petitioner

13   understood the difference between seeking new counsel and

14   representing himself.   (<u>Id.</u> at 52.)   He comprehended the facts of

15   his case and described the circumstantial evidence that he wanted

16   to show that he had no motive for carjacking.   (<u>Id.</u>)   Moreover,

17   Duran's behavior at the <u>Marsden</u> hearing was appropriate, his

18   counsel expressed no doubt as to his client's competence, and

19   Duran made no statements that would raise a bona fide doubt as to

20   his mental competence.   (<u>Id.</u> at 52–55.)

21       Although the trial judge asked defense counsel whether he

22   had considered a competency hearing, the record does not contain

23   substantial evidence of incompetence or show that the court had a

24   bona fide doubt as to Duran's mental competence.   Defense counsel

25   was "not aware of any mental health history," and Duran assured

26   the judge that he was "completely capable of understanding."

27   (<u>Id.</u> at 52.)

28

08cv430 WQH (RBB)

1    Under the circumstances, the trial judge's failure to sua
2  sponte conduct a competency hearing did not violate Duran's
3  constitutional right to due process.  In the end, the court
4  granted Duran's <u>Marsden</u> motion and also granted the alternate
5  public defender's request to be relieved as counsel for Duran
6  because of "irreconcilable differences" between defendant and
7  counsel.

8    The trial court proceedings were not contrary to, or an
9  unreasonable application of, clearly established Supreme Court
10 precedent.  <u>See</u> <u>Drope v. Missouri</u>, 420 U.S. 180–82; <u>Pate v.</u>
11 <u>Robinson</u>, 383 U.S. 385–86; <u>Dusky v. United States</u>, 362 U.S. at
12 402.  Therefore, the district court should **DENY** Duran's claim for
13 habeas relief on this subclaim in ground two.

14              **2.**  **<u>Whether Duran's Waiver of Counsel Was "Knowing and</u>**
15                   **<u>Intelligent"</u>**

16   A related subclaim is Petitioner's assertion that his waiver
17 of the assistance of counsel was not knowing and intelligent
18 because he was misinformed of the maximum penalties.  (Am. Pet.
19 Attach. #2, 39, ECF No. 15.)  Two months after his last attorney
20 was relieved, Duran sought to represent himself.  (Lodgment No.
21 5, Rep.'s Augment[ed] Appeal Tr. vol. 1, 1, Oct. 28, [2004].)
22 The court asked Duran to fill out a waiver pursuant to <u>People v.</u>
23 <u>Lopez</u>, 71 Cal. App. 3d 568, 138 Cal. Rptr. 36.  (<u>Id.</u> at 2–3;
24 Lodgment No. 1, Clerk's Tr. vol. 1, 19–20, Oct. 28, 2004); <u>see</u>
25 <u>also</u> <u>Lopez</u>, 71 Cal. App. 3d at 571, 138 Cal Rptr. at 38 (holding
26 that for a waiver of counsel to be knowing and intelligent the
27 court must advise the defendant, on the record, of the dangers
28 and disadvantages of self–representation).

1    Duran claims he did not understand the "true nature and

2   consequences of the maximum punishment as explained to him in the

3   Lopez waiver."  (Am. Pet. Attach. #2, 39, ECF No. 15.)  He points

4   to paragraph two, which states, "The maximum punishment(s) that

5   can be imposed upon conviction for the offense(s) . . . ."

6   (Lodgment No. 1, Clerk's Tr. vol. 1, 19–20.)  Although the

7   prosecutor, defense counsel, Duran, and trial judge were all at

8   the hearing where Petitioner sought to waive the assistance of

9   counsel, the maximum penalties for this four-count case, alleging

10   two prison prior convictions, a violent felony prison prior

11   conviction, and a prior strike conviction were uncertain and

12   ranged from nine to twenty years.

13    The first figure that appeared in paragraph two of the

14   waiver form was "9y."  (Id.)  That was crossed out and replaced

15   with "18 years."  (Id.)  The "18" was crossed out and replaced

16   with "20."  (Id.)  The final version, which Duran signed, stated

17   "20 years."  (Id.)  Judge Jeffrey Fraser approved the waiver.

18   (Id.)  Petitioner proceeded to represent himself at trial and was

19   convicted.  He was ultimately sentenced to thirty-five years to

20   life.[5]  (Lodgment No. 13, Rep.'s Appeal Tr. vol. 9, 741–42.)

21   Duran asserts that he was not made "aware of the risks and

22   consequences of the maximum penalties involved in signing the

23   Lopez waiver . . . ."  (Am. Pet. Attach. #2, 39–40, ECF No. 15;

24   see also Traverse Attach. #1 Mem. P. & A. 17, ECF No. 43.)

25

26    [5]  Duran was originally sentenced to forty years to life,

27   but the court of appeal reduced the sentence to thirty-five years
    to life on direct review.  (Lodgment No. 18, People v. Duran, No.

28   D047059, slip op. at 11.)

1    Respondent acknowledges that Ninth Circuit case law holds
2 that "advice as to the possible penalties is required before a
3 waiver of counsel can be accepted as 'knowing and intelligent'
4 . . . ." (Answer Attach. #1 Mem. P. & A. 19, ECF No. 24 (citing
5 United States v. Farhad, 190 F.3d 1097, 1099 (9th Cir. 1999);
6 United States v. Balough, 820 F.2d 1485, 1487 (9th Cir. 1987)).)
7 He nevertheless argues "that advice as to penalty is not a
8 requirement imposed by any United States Supreme Court decision."
9 (Answer  Attach. #1 Mem. P. & A. 19, ECF No. 24.)  "The court
10 must ensure the defendant is aware of the dangers and
11 disadvantages of self-representation, but this requirement does
12 not clearly extend to information about potential penalties."
13 (Id.)

14    In his Petition, Duran cites no case law to support the
15 contention that he should have been advised of potential
16 penalties. (Am. Pet. Attach. #2, 39-40, ECF No. 15.)  In his
17 Traverse, however, Duran cites several Ninth Circuit cases that
18 support his claim. He quotes United States v. Crowhurst, 596
19 F.2d 389, 391 (9th Cir. 1979), which cites multiple Ninth Circuit
20 cases and concludes:  "No decision of our court that has
21 addressed the waiver of counsel issue has held that the District
22 Court may dispense with the requirement that an accused
23 individual must specifically be made aware of the charges and
24 their possible penalties and sanctions." (Traverse Attach. #1
25 Mem. P. & A. 23, ECF No. 43.)

26    Even so, "a state court decision may not be overturned on
27 habeas corpus review . . . because of a conflict with Ninth
28 Circuit-based law."  Moore, 108 F.3d at 264; (see also Traverse

28

1  Attach. #1 Mem. P. & A. 22–31, ECF No. 43.).  "[A] writ may issue

2  only when the state court decision is contrary to, or involved an

3  unreasonable application of, an authoritative decision of the

4  Supreme Court."  <u>Moore</u>, 108 F.3d at 264) (citations and internal

5  quotations omitted).  Duran cites no Supreme Court precedent that

6  specifically supports his subclaim.  Consequently, the Court must

7  determine whether clearly established federal law supports his

8  argument.  (<u>See</u> Am. Pet. Attach. #2, 39–40, ECF No. 15; Traverse

9  Attach. #1 Mem. P. & A. 22–31, ECF No. 43.)

10      Duran submitted this issue to the California Supreme Court.

11  (Lodgment No. 21, <u>People v. Duran</u>, S161207 (petition for writ of

12  habeas corpus).)  The court summarily denied his habeas corpus

13  petition.  (Supplemental Lodgment No. 1, <u>In re Duran</u>, S161207,

14  order.)  "[W]hen the state court reaches a decision on the merits

15  but provides no reasoning to support its conclusion[,] . . . [the

16  federal habeas court] independently review[s] the record to

17  determine whether the state court clearly erred in its

18  application of Supreme Court law."  <u>Pirtle</u>, 313 F.3d at 1167; <u>see</u>

19  <u>Delgado</u>, 223 F.3d at 982.

20      Petitioner signed a <u>Lopez</u> waiver and initialed twelve sepa-

21  rate paragraphs.  (Lodgment No. 1, Clerk's Tr. vol. 1, 19–20.)

22  Paragraph two stated that his maximum exposure was twenty years.

23  (<u>Id.</u> at 19.)  As described above, the trial judge engaged in a

24  colloquy with Duran to be certain he knowingly and intelligently

25  waived the assistance of counsel.  (Lodgment No. 5, Rep.'s

26  Augment[ed] Appeal Tr. vol. 1, 1–7.)  Finally, the court asked

27  Duran if there was anything on the <u>Lopez</u> waiver that he did not

28

1   understand.  (Id. at 4.)  His only question was regarding a
2   continuance to prepare for trial.  (Id.)

3       On the date set for sentencing, Duran discussed the Lopez
4   waiver he signed before proceeding to trial.  (Lodgment No. 14,
5   Rep.'s Appeal Tr. vol. 3, 42, Mar. 8, 2005.)  Petitioner told the
6   sentencing judge that "[t]he last attorney I had, Mr. Lee
7   Plummer, there was a conflict of interest with him."  When the
8   court asked Petitioner about the conflict, Duran answered, "Well,
9   actually, it was kind of personal.  He [Plummer] didn't want to
10  bring that up but he did mention it when he gave up representing
11  me and I signed the Lopez waiver."  (Id.)

12      The form, Acknowledgment Concerning Right of Self-
13  Representation, listed the charged offenses.  (Lodgment No. 1,
14  Clerk's Tr. vol 1, 19.)  It warned Duran that he would not
15  receive special treatment.  (Id.)  Petitioner was advised that he
16  would be subject to all substantive and procedural rules without
17  help from the judge.  (Id.)  He was warned that opposing counsel
18  knew the rules and is experienced in litigation.  (Id.)  He was
19  informed of his right to a court-appointed attorney.  (Id.)  He
20  was told that he would not get extra library privileges, extra
21  time, or extra assistance.  (Id.)  Petitioner was also warned
22  that his self-representation would be revoked if he was
23  disruptive in court, and he could not claim incompetency on
24  appeal.  (Id. at 20.)

25      The Lopez waiver form described, generally and specifically,
26  the risks of self-representation.  The admonition regarding the
27  maximum punishment was one item on the detailed form.  Yet, it is
28  clear that the number of years he faced was a significant

consideration for Petitioner.  On August 20, 2004, when Duran was seeking to relieve the alternate public defender representing him, Petitioner was concerned about his maximum exposure.  He sought another attorney to devote more time to his case because "there is [sic] a lot of years to be considered here."  (Am. Pet. Attach. #2, 52.)  Duran now argues that the incorrect penalty nullifies his waiver.

> [I]t's a defendant's choice, not respondent's theory, to intelligently choose to represent himself on a 20 year maximum penalty, or representation for a 40 to life penalty.  Under the agreement in the <u>Lopez</u> waiver, if convicted, he would have "paroled" in a little over 18 years.  There is no guarantee of parole for any sentence ending with life . . . .  When the information is misleading, or in this instant case, completely false, then that's not an intelligent waiver, that's being hoodwinked.

(Traverse Attach. #1, Mem. P. & A. 29-30, ECF No. 43.)

Duran maintains that if he had been informed that the maximum punishment was forty years to life, instead of twenty, he would not have wanted to represent himself.  He also asserts that the miscalculation requires that habeas relief be granted.

### a.  <u>Clearly Established Federal Law</u>

This Court must decide what is clearly established Supreme Court law -- not an easy task.  "[Clearly established Federal law, as determined by the Supreme Court of the United States] refers to the holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412.

<u>Faretta v. California</u>, 422 U.S. 806 (1975), is widely regarded as the touchstone of a criminal defendant's Sixth Amendment right of self-representation.  See <u>United States v.</u>

<u>Vas</u>, No. 04-489, 2006 U.S. Dist. LEXIS 34863, at *28 (E.D. Pa. May 31, 2006).  But even before <u>Faretta</u>, the Supreme Court had outlined the requirements for a valid waiver of the right to counsel.

In <u>Von Moltke v. Gillies</u>, 332 U.S. 708, 720 (1948) (plurality), the Court concluded that "when petitioner pleaded guilty, she did not have that full understanding and comprehension of her legal rights indispensable to a valid waiver of the assistance of counsel."  Justice Black wrote:

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, <u>the range of allowable punishments</u> thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

<u>Id.</u> at 724 (emphasis added).  Because the quoted language in <u>Von Moltke</u> is from the plurality opinion, this Court must determine whether it is part of the holding of the Supreme Court and is clearly established law.

<u>Von Moltke</u> applied <u>Johnson v. Zerbst</u>, 304 U.S. 458 (1938), in coming to its conclusion that a remand was necessary to decide whether Von Moltke intelligently and competently waived her right to counsel.  <u>See</u> <u>Von Moltke</u>, 332 U.S. at 726 nn.6-7, 727. <u>Faretta</u> also relied on <u>Johnson v. Zerbst</u>, which held that "whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of counsel."  <u>Johnson</u>, 304 U.S. at 464.

If the language from <u>Von Moltke</u>, requiring that defendants be informed of the range of allowable punishments, is not part of

1  a majority opinion, it may still influence the scope of the

2  <u>Faretta</u> inquiry.  In <u>Marks v. United States</u>, 430 U.S. 188, 193

3  (1976), Justice Powell explained:  "When a fragmented Court

4  decides a case and no single rationale explaining the result

5  enjoys the assent of five Justices, 'the holding of the Court may

6  be viewed as that position taken by those Members who concurred

7  in the judgments on the narrowest grounds . . . .'"  <u>Id.</u> (quoting

8  <u>Gregg v. Georgia</u>, 428 U.S. 153, 169 n.15 (1976) (opinion of

9  Stewart, Powell, and Stevens, JJ.).

10      In Duran's case, the Respondent argues that "advice as to

11  penalty is not a requirement imposed by any United States Supreme

12  Court decision." (Answer Attach. #1 Mem. P. & A. 19, ECF No.

13  24.)  The argument requires this Court to find that neither

14  <u>Faretta</u> or <u>Von Moltke</u> is clearly established law requiring the

15  accurate disclosure of maximum penalties.

16      The Eighth Circuit, in <u>Shafer v. Bowersox</u>, 329 F.3d 637, 651

17  (8th Cir. 2003), rejected an argument "that <u>Von Moltke</u> does not

18  qualify as clearly established federal law because it is an old

19  plurality decision with unusual facts." <u>Shafer</u> noted that "the

20  facts of the case have not limited the impact of <u>Von</u>

21  <u>Moltke</u>, . . . for the Supreme Court has cited <u>Von Moltke</u> in a

22  number of subsequent cases." <u>Id.</u>  <u>Shafer</u> continued:

23      In <u>Wilkins v. Bowersox</u>, 145 F.3d 1006, 1013 n.5 (8th
        Cir. 1998), we observed that in <u>Von Moltke</u> "the Supreme
24      Court established the requirement that a judge's
        inquiry regarding waiver of counsel must be
25      comprehensive and probing."  Moreover, there are other
        Supreme Court precedents which clearly established the
26      knowing, voluntary, and intelligent rule.

27  <u>Id.</u> (citing <u>Godinez v. Moran</u>, 509 U.S. at 400; <u>Faretta</u>, 422 U.S.

28  at 835-36).  The Eighth Circuit concluded that "in <u>Faretta</u> and

1  Von Moltke [the Supreme Court] clearly established inquiry and

2  warning requirements" applicable to a defendant who wished to

3  waive counsel and plead guilty.  Id.  But see United States v.

4  Kiderlen, 569 F.3d 358, 367 (8th Cir. 2009) (distinguishing

5  Wilkins v. Bowersox, 145 F.3d 1006).

6      The admonition in the Von Moltke plurality opinion -- that

7  the defendant be advised of the "range of allowable punishments"

8  -- is not the holding of the case.  The narrower rationale is

9  that the voluntariness of Von Moltke's waiver depended on the

10 totality of circumstances and a remand was necessary.  Compare

11 Von Moltke, 332 U.S. at 723-24 (plurality opinion), with id. at

12 727-32 (Frankfurter, J., separate opinion, joined by Jackson,

13 J.).

14 Thus, a Supreme Court opinion has never held that knowledge of a

15 defendant's maximum exposure is a prerequisite to a knowing and

16 intelligent waiver of his right to counsel or the assertion of

17 his right to represent himself.  Nor has the Supreme Court held

18 that an incorrect statement of a defendant's maximum exposure

19 invalidates an otherwise knowing and intelligent waiver.

20     Nevertheless, Faretta, 422 U.S. at 835, cites Von Moltke and

21 may state a rule of general application sufficiently clear to

22 dispose of Duran's claim.  In Van Tran v. Lindsey, 212 F.3d 1143,

23 1157 (9th Cir. 2000) (overruled on other grounds), the Ninth

24 Circuit illustrated the difficulty of determining clearly

25 established law.

26          Suffice it to say that we must refrain from applying
           too narrow or too specific a standard when determining
27         the substance of the law the application of which we
           must assess.  The adoption of too limited a scope for
28         the definition of "clearly established law" would

                              34                    08cv430 WQH (RBB)

collapse the various parts of the analysis we must perform and prevent a proper application of the <u>Williams</u> mandate.

The Court, in <u>Williams v. Taylor</u>, 529 U.S. 362, 382 (2000), sought to describe when a holding is a rule of "general application."

> [A]s our precedent interpreting <u>Teague</u> has demonstrated, rules of law may be sufficiently clear for habeas purposes when they are expressed in terms of a generalized standard rather than as a bright-line rule.  As Justice Kennedy has explained:
>
> > "If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule . . . .  Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent."  <u>Wright v. West</u>, 505 U.S. 277, 308–309 (1992) (opinion concurring in judgment.)

More recently, in <u>Carey v. Musladin</u>, 549 U.S. 70 (2006), the Supreme Court illustrated this principle.  On appeal, the Ninth Circuit stated that <u>Estelle v. Williams</u>, 425 U.S. 501 (1976), and <u>Holbrook v. Flynn</u>, 475 U.S. 560 (1986), "clearly established the test for inherent prejudice applicable to the spectators' courtroom conduct [family members sat in the courtroom wearing buttons with a photo of the murder victim]."  <u>Carey</u>, 549 U.S. at 74.  <u>Estelle v. Williams</u> dealt with compelling a defendant to "'stand trial before a jury while dressed in identifiable prison clothes,'" and <u>Holbrook v. Flynn</u> discussed "seating 'four uniformed state troopers' in the row of spectators' seats

immediately behind the defendant . . . ."  Id. at 75 (citations omitted).  In this context, the Carey Court wrote:

> [A]lthough the Court articulated the test for inherent prejudice that applies to state conduct in Williams and Flynn, we have never applied that test to spectators' conduct.  Indeed, part of the legal test of Williams and Flynn -- asking whether the practices furthered an essential state interest -- suggests that those cases apply only to state-sponsored practices.

Id. at 76.  The Supreme Court held that because it had not addressed "the potentially prejudicial effect of spectators' courtroom conduct of the kind involved [spectators wearing buttons], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal Law.'"  Id. at 77.

Faretta announced a "generalized standard."  In Faretta, 422 U.S. at 835 (citations omitted), the Court concluded:

> [I]n order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits [associated with the right to counsel].  Johnson v. Zerbst, 304 U.S., at 464-465.  Cf. Von Moltke v. Gillies, 332 U.S. 708, 723-724 (plurality opinion of Black, J.)  Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."  Adams v. United States ex rel. McCann, 317 U.S., at 279.

The Court has stated that "[w]arnings of the pitfalls of proceeding to trial without counsel . . . must be 'rigorous[ly]' conveyed."  Iowa v. Tovar, 541 U.S. 77, 89 (2004) (citing Patterson v. Illinois, 487 U.S. 285, 298 (1988)) (quotations omitted).  In Tovar, the Supreme Court noted that there are no "scripted admonitions . . . necessary in every guilty plea instance;" yet, it quoted Johnson v. Zerbst's admonition that "the information a defendant must have to waive counsel

intelligently will 'depend, in each case, upon the particular facts and circumstances surrounding that case.'"  Tovar, id. at 92 (quoting Johnson v. Zerbst, 304 U.S. at 464).

Cases since Faretta have continued to hold that to waive the constitutional right to counsel, a criminal defendant must be competent to stand trial, and "a trial court must satisfy itself that the waiver . . . is knowing and voluntary."  Godinez, 509 U.S. at 400.  "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances -- even though the defendant may not know the specific detailed consequences of invoking it."  United States v. Ruiz, 536 U.S. 622, 629 (2002).  "When a defendant appreciates the risks of forgoing counsel and chooses to do so voluntarily, the Constitution protects his ability to present his own defense even when that harms his case."  Indiana v. Edwards, 554 U.S. 164, 128 S. Ct. 2379, 2391 (2008).  At the same time, "[i]f [the defendant] . . . lacked 'a full and complete appreciation of all of the consequences' flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum."  Patterson v. Illinois, 487 U.S. at 294.  Here, the Respondent has not attempted to show that the material understatement of penalties Duran faced satisfied that constitutional minimum.

AEDPA "'does not, however, purport to limit the federal courts' independent interpretive authority with respect to federal questions.'"  Williams v. Taylor, 529 U.S. at 382

08cv430 WQH (RBB)

(quoting <u>Lindh v. Murphy</u>, 96 F.3d at 869.   The Supreme Court has
not decided whether the failure to accurately advise a defendant
of the potential penalties he faces invalidates his waiver of the
assistance of counsel.   Still, evaluating "a novel factual
situation may nonetheless be dictated by Supreme Court
precedent."   <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1057 (9th Cir.
2004).

In <u>Lopez v. Thompson</u>, 202 F.3d 1110, 1117 (9th Cir. 2000)
(en banc), a case brought under § 2254, the court construed
<u>Faretta</u> as a rule of general application.   The Ninth Circuit
stated that "[n]either the Constitution nor <u>Faretta</u> compels the
district court to engage in a specific colloquy with the
defendant."   <u>Id.</u>   Instead, federal courts examine the "record as
a whole."   <u>Id.</u> at 1118.   <u>Lopez</u> held that the colloquy suggested
by the Ninth Circuit in <u>Balough</u>, which included informing the
defendant of possible penalties, is not "constitutionally
required."   <u>Id.</u> at 1117.   The court treated <u>Faretta</u> as a
generalized standard.   It found no <u>Faretta</u> violation but observed
that "Lopez was informed of the nature of the charges and
proceedings against him, the possible sentences that might be
imposed (including possible sentence enhancements), and the
dangers of self-representation."   <u>Id.</u>

The Ninth Circuit has frequently interpreted <u>Faretta</u>.   In a
recent habeas corpus proceeding, the court discussed the validity
of the petitioner's <u>Faretta</u> waiver and reiterated, "[W]e require
only that a defendant be made aware of three 'critical elements'
of self-representation:   (1) 'the nature of the charges against
him'; (2) 'the possible penalties'; and (3) 'the dangers and

1  disadvantages of self-representation.'"  McCormack v. Adams, No.
2  09-15546, 2010 U.S. App. LEXIS 18452, at *15 (9th Cir. Sept. 3,
3  2010) (quoting United States v. Keen, 104 F.3d 1111, 1114 (9th
4  Cir. 1996); accord United States v. Erskine, 355 F.3d at 1167
5  (quoting United States v. Balough, 820 F.3d at 1487).  Other
6  district courts ruling on § 2254 petitions have interpreted
7  Faretta and Ninth Circuit case law as prescribing the three-
8  factor test.  See Gassoway v. Mendoza-Powers, No. 2:08-cv-0652-
9  JFM(HC), 2010 U.S. Dist. LEXIS 92158, at *15 (E.D. Cal. Aug. 13,
10 2010) (internal quotations and citations omitted); Spencer v.
11 Runnels, No. CIV S-03-0376 GEB KJM P, 2006 U.S. Dist. LEXIS 3092,
12 at *30 (E.D. Cal. Jan. 27, 2006).

13     Williams v. Taylor, Carey v. Musladin, and Van Tran v.
14 Lindsey convince this Court that Respondent's contention that
15 "advice as to penalty is not a requirement imposed by any United
16 States Supreme Court decision" (Answer Attach. #1 Mem. P. & A.
17 19, ECF No. 24), interprets Faretta too narrowly.  Duran's case
18 is not one where potential penalties were not addressed.  Here,
19 there was a material misstatement of the penalties.  Forty years
20 to life is qualitatively different from twenty years with the
21 possibility of parole.

22     The validity of a defendant's waiver of the assistance of
23 counsel is a mixed question of law and fact.  United States v.
24 Erskine, 355 F.3d 1161, 1166 (9th Cir. 2044).  This Court's
25 independent review of the record compels the conclusion that
26 because of the material understatement of the maximum penalties
27 he faced, Duran's waiver of his Sixth Amendment right to the
28

1    assistance of counsel was not voluntary and intelligent.[6]  As a

2    result, the Faretta waiver was ineffective.

3        A waiver of the right to counsel that is not knowing and

4    intelligent is a violation of the Sixth Amendment and Faretta,

5    and a "harmless error analysis does not apply."  See United

6    States v. Forrester, 512 F.3d 500, 509 (9th Cir. 2007); accord

7    United States v. Chamberlain, 326 F. App'x 640, 642 (3d Cir.

8    2009) ("[A] Faretta-type error is structural, and requires

9    automatic reversal.").  "A court's failure to secure a valid

10   Faretta waiver, which includes an accurate advisement as to

11   maximum penalties, constitutes per se prejudicial error, and the

12   harmless error standard is inapplicable."  Gassoway v. Mendoza-

13   Powers, No. 2:08-cv-0652-JFM(HC), 2010 U.S. Dist. LEXIS 92158, at

14   *16 (citing Erskine, 355 F.3d at 1167.)

15       For all these reasons, the trial court's decision to accept

16   Duran's Faretta waiver as knowing and intelligent was contrary

17   to, and an unreasonable application of, Supreme Court precedent.

18   The district court should **GRANT** this claim for habeas relief.

19

20

21

22

---

23       [6]  In an analogous setting, the Supreme Court held that a
24   guilty plea is not voluntary and intelligent unless the defendant
     is "fully aware of the direct consequences" of his plea.  See
25   Brady v. United States, 397 U.S. 742, 755 (1970).  Direct
     consequences include "the maximum punishment provided by law."
26   Torrey v. Estelle, 842 F.2d 234, 236 (9th Cir. 1988) (citing
27   United States ex rel. Pebworth v. Conte, 489 F.2d 266, 267 (9th
     Cir. 1974); accord Little v. Crawford, 449 F.3d 1075, 1080 (9th
28   Cir. 2006).

**C.  Ground Three:  Whether Duran Received Ineffective Assistance of Counsel**

In his third claim for habeas relief, Duran argues that he received ineffective assistance of counsel on two separate occasions.  (Am. Pet. Attach. #2, 67, ECF No. 15; Traverse Attach. #1 Mem. P. & A. 32, ECF No. 43.)  First, Duran states, "Counsel was ineffective in that he failed to conduct a careful investigation concerning the mental capacity of [petitioner]." (Am. Pet. Attach. #2, 68, ECF No. 15.)  Second, Duran contends, "During the signing of the Lopez waiver appointed counsel did not inform [petitioner] of the maximum penalties upon conviction." (Id. at 70.)  Finally, "[Petitioner] sought a ruling on ineffective assistance of counsel, which the trial court did not rule on."  (Id. at 72.)

Respondent argues, "None of the alleged inadequacies Duran asserts truly demonstrate that Duran's counsel was ineffective." (Answer Mem. P. & A. 24, ECF No. 24.)  First, "Duran's counsel had no cause to move for the court to conduct a competency hearing."  (Id.)  Therefore, Duran's attorney's failure to do so cannot be the basis of an ineffective assistance of counsel claim.  Second, "it was not necessary under Faretta for Duran to have been informed of a specific maximum sentence.  All that was required was that Duran understand the serious consequences of his decision to represent himself."  (Id.)  Finally, Respondent argues that there was no prejudice from the court failing to rule on an ineffectiveness claim, because the claimed ineffectiveness stemmed from Duran's self-representation.  (Id.)

41

1    For ineffective assistance of counsel to provide a basis for
2    habeas relief, Duran must successfully meet a two-prong test.
3    Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, he
4    must show that counsel's performance was deficient.  Id. at 687.
5    "This requires a showing that counsel made errors so serious that
6    counsel was not functioning as the 'counsel' guaranteed the
7    defendant by the Sixth Amendment."  Id.  "Review of counsel's
8    conduct is highly deferential and there is a strong presumption
9    that counsel's conduct fell within the wide range of reasonable
10   representation."  Hensley v. Crist, 67 F.3d 181, 184 (9th Cir.
11   1995) (citation omitted); see Strickland, 466 U.S. at 689.

12   Second, Petitioner must establish that counsel's deficient
13   performance prejudiced his defense.  Strickland, 466 U.S. at 687.
14   This requires a showing that counsel's errors were so serious
15   they deprived Duran "of a fair trial, a trial whose result is
16   reliable."  Id.  To satisfy the test's second prong, Petitioner
17   must show a reasonable probability that the result of the
18   proceeding would have been different but for the error.  Williams
19   v. Taylor, 529 U.S. at 406; Strickland, 466 U.S. at 694.  A
20   reviewing court "need not decide whether counsel's performance
21   was deficient when the claim of ineffectiveness may be rejected
22   for lack of prejudice."  Jackson v. Calderon, 211 F.3d 1148, 1155
23   n.3 (9th Cir. 2000) (citing Strickland, 466 U.S. at 697).

24   Duran raised these issues in the petition for writ of habeas
25   corpus he filed with the California Supreme Court.  (Lodgment No.
26   21, People v. Duran, S161207 (petition for writ of habeas
27   corpus).)  The California Supreme Court summarily denied his
28   petition.  (Supplemental Lodgment No. 1, In re Duran, S161207,

order.)  Here again, because "the state court reach[ed] a decision on the merits but provide[d] no reasoning to support its conclusion[,] . . . [the federal habeas court] independently review[s] the record to determine whether the state court clearly erred in its application of Supreme Court law."  <u>Pirtle</u>, 313 F.3d at 1167.

## 1.  <u>Failure to Investigate Competency</u>

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  <u>Strickland</u>, 466 U.S. at 690–91.  "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  <u>Id.</u> at 691.  "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  <u>Id.</u> at 690.

Duran claims that after first-hand observation, and the trial court's questions regarding competency, his attorney should have requested a competency hearing.  (Am. Pet. Attach. #2, 69, ECF No. 15; Traverse Attach. #1 Mem. P. & A. 37, ECF No. 43.)  In a similar factual setting, the Third Circuit concluded that the petitioner had not established ineffective assistance of trial counsel.

> Counsel's failure to request a competency hearing would give rise to an ineffective assistance claim if there were "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found

1   incompetent to stand trial had the issue been raised
2   and fully considered."

3   Karenbauer v. Beard, No. 09-1770, 2010 U.S. App. LEXIS 16858, at
4   **19-20 (3d Cir. Aug. 12, 2010) (quoting Taylor v. Horn, 504 F.3d
5   416, 438 (3d Cir. 2007)).

6      Duran's attorney stated he was "not aware of any mental
7   health history . . . ."  (Am. Pet. Attach. #2, 52, ECF No. 15.)
8   The Court has found that, given the information before the trial
9   court, its failure to sua sponte order a competency hearing did
10  not constitute a constitutional violation.  Counsel's decision
11  not to request a competency hearing was objectively reasonable in
12  light of the circumstances.  See Karenbauer, No. 09-1770, 2010
13  U.S. App. LEXIS 16858, at *20.  Duran cannot satisfy the first
14  prong of the two-prong test in Strickland.

15     Duran argues that counsel's failure to investigate his
16  mental health history "deprived [him] of a clearly available
17  avenue of defense."  (Am. Pet. Attach. #2, 69, ECF No. 15;
18  Traverse Attach. #1 Mem. P. & A. 37, ECF No. 43.)  Petitioner
19  does not identify the defense, and he does not allege that he was
20  mentally incompetent.  He merely contends his attorney was
21  ineffective for failing to investigate Duran's mental history.
22  (Am. Pet. Attach. #2, 69, ECF No. 15.)

23     Even if the failure to request a competency hearing or
24  further investigate Petitioner's mental history was not
25  objectively reasonable, Duran has not established ineffective
26  assistance of counsel.  "[He] has failed to show prejudice under
27  Strickland's second prong because he cannot demonstrate a
28  reasonable probability that he would have been found incompetent

1  if only his attorney had asked for a hearing." <u>Karenbauer</u>, No.

2  09-1770, 2010 U.S. App. LEXIS 16858, at *20 (citing <u>Taylor v.</u>

3  <u>Horn</u>, 504 F.3d at 439); <u>accord</u> <u>Grant v. Brown</u>, 312 F. App'x 71,

4  73 (9th Cir. 2009) (citing <u>Strickland</u>, 466 U.S. at 694) ("Because

5  we conclude that Grant has not been shown to be incompetent at

6  the time of trial, Grant has failed to demonstrate a 'reasonable

7  probability' that the 'result of the proceedings' would have been

8  different but for his attorney's purported failures.").

9      After an independent review of the record, the Court

10  concludes that Duran has not shown that he suffered any

11  prejudice.  As a result, Petitioner's counsel was not

12  constitutionally ineffective, and the California Supreme Court's

13  decision denying habeas relief was not contrary to, or an

14  unreasonable application of, Supreme Court precedent.  <u>See</u>

15  <u>Strickland</u>, 466 U.S. at 687, 697.  The district court should **DENY**

16  this aspect of Duran's ineffective assistance claim.

17      **2.   <u>Ineffective Assistance in Connection with the</u>**
        **<u>Lopez Waiver</u>**

18

19      The Court has already concluded that Petitioner's <u>Faretta</u>

20  rights -- requiring a knowing, voluntary, and intelligent waiver

21  of the assistance of counsel -- were violated in connection with

22  his <u>Lopez</u> waiver.  The application of <u>Faretta</u> to Duran's waiver

23  of the assistance of counsel is distinct from the application of

24  <u>Strickland</u> to his ineffective assistance of counsel claim.

25      This subclaim of ineffective assistance of counsel focuses

26  on the maximum punishment misstated on the <u>People v. Lopez</u> waiver

27  form.  (Am. Pet. Attach. #2 Mem. P. & A. 70, ECF No. 15.)  On

28  October 28, 2004, Duran signed a waiver form that stated maximum

prison terms of nine years, eighteen years, and twenty years.
(Lodgment No. 1, Clerk's Tr. vol. 1, 19–20.)   Nine and eighteen
were crossed out, leaving the maximum punishment described as
"twenty years."  (Id. at 19.)   Yet, on August 16, 2005, Duran was
sentenced to forty years to life in prison.  (Am. Pet. Attach.
#2, 70, ECF No. 15.)   Petitioner complains that his attorney's
failure to inform him "that he was facing 40 years to life, as
opposed to only 20 years" constitutes ineffective assistance.
(Id. at 70–71.)

Assuming the misstatement of penalties is performance below
an objective standard of reasonableness, Petitioner must
establish that he was prejudiced by counsel's deficient
performance.   See Strickland, 466 U.S. 687–88, 693–94.   "The
defendant must show that there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.   A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."   Id. at 694.

Duran's claim is similar to one made in Koon v. Rushton, No.
8:05–2533–RBH–BHH, 2007 U.S. Dist. LEXIS 76613 (D. S.C. Aug. 7,
2007) (report and recommendation), adopted by 2007 U.S. Dist.
LEXIS 73347 (D. S.C. Sept. 30, 2007), aff'd, 364 F. App'x 22 (4th
Cir. 2010).   In Koon, the petitioner stated two related claims:
first, his trial counsel was ineffective for failing to request a
hearing on Koon's motion to proceed pro se under Faretta.   Koon,
8:05–2253–RBH–BHH, 2007 U.S. Dist. LEXIS 76613, at **47–48.
Second, by not sua sponte conducting a hearing on Koon's request

1  to represent himself, the trial court violated <u>Faretta</u>.  <u>Id.</u> at
2  *48.

3      In this context, the court stated:  "But even if the
4  petitioner could demonstrate that trial counsel's efforts were
5  ineffective, he faces the formidable task of showing prejudice
6  . . . ."  <u>Id.</u> at *50.  Koon claimed that counsel's failure to
7  request a <u>Faretta</u> hearing had an adverse effect on Koon's right
8  to represent himself, and this was a structural error, negating
9  the need to show prejudice.  <u>Id.</u> at **50-51.  The court rejected
10 the argument and held that, under <u>Strickland</u>, a showing of
11 prejudice was still required.  <u>Id.</u> at **51-52.  Although Koon
12 complained that he was forced to forgo self-representation, the
13 court found no prejudice.  "There is no reason to believe that
14 [Koon] would have outperformed trained counsel in the defense of
15 his case to an extent that he would have been better off without
16 him."  <u>Id.</u> at *54.

17     Similarly, even if Duran's counsel had correctly stated the
18 maximum penalties and Duran elected not to represent himself, the
19 evidence against him was substantial.  There is no reasonable
20 probability that the result would have been different.  <u>See</u>
21 <u>Strickland</u>, 466 U.S. at 694.  "An error by counsel, even if
22 professionally unreasonable, does not warrant setting aside the
23 judgment of a criminal proceeding if the error had no effect on
24 the judgment."  <u>Id.</u> at 691.  Because Petitioner suffered no
25 prejudice, the district court should **DENY** habeas relief based on
26 this subclaim in ground three of the Amended Petition.

27
28

47                                    08cv430 WQH (RBB)

### 3.   A Ruling on the Ineffective Assistance Claim

After Duran was convicted, he requested appointed counsel to represent him for the purpose of sentencing.  (Lodgment No. 14, Rep.'s Tr. Appeal-Augment vol. 3, 33, 40-41, Mar. 8, 2005.) Duran's attorney filed a motion for a new trial.  (Lodgment No. 2, Clerk's Tr. vol. 2, 231; Lodgment No. 13, Rep.'s Appeal Tr. vol. 9, 717, Aug. 16, 2005.)  In footnote one to the new trial motion, Duran's attorney wrote:

> In this motion the Defendant does not waive any claim of ineffective assistance of counsel, despite the In Pro Per status of the Defendant at the time of trial, as it pertains to any finding of failure to call witnesses, or seek a continuance to subpoena witnesses and alternatively seeks a ruling.

(Lodgment No. 2, Clerk's Tr. vol. 2, 240.)  This footnote is not entirely clear.  It appears that Duran was seeking to preserve an appellate right to complain that he received ineffective assistance during the time he represented himself.

If Petitioner's claim is that the trial court failed to rule on his argument that Petitioner received ineffective assistance of counsel as a result of his self-representation, this argument fails.  Faretta, 422 U.S. at 835 n.46 (noting that when a criminal defendant elects to represent himself, he waives his right to complain of ineffective assistance of counsel).  Thus, there is no prejudice to Duran if the trial court failed to rule on this issue.

Petitioner also argues that his appellate counsel was ineffective because she did not raise the trial court's failure to rule on the ineffective assistance claim.  (Am. Pet. Attach. #2, 72, ECF No. 15.)  As explained above, Duran is precluded from

48

arguing ineffective assistance of counsel for the period of self-representation, and he is not entitled to relief for the alleged ineffective assistance of his appointed counsel.  Because there is no merit to either claim, Duran's appellate counsel was not ineffective in choosing not to raise them.  See Adams v. Lewis, 42 F. App'x 1, 9 (9th Cir. 2002).

For all these reasons, the district court should **DENY** the ineffective assistance of trial and appellate counsel claims contained in ground three of Duran's Amended Petition.

### D.  Ground Four:  Whether the Admission of Dismissed Gun Allegations Resulted in a Denial of Due Process

Duran contends that "the trial court allowed admission of dismissed gun allegations over defense protest."  (Am. Pet. Attach. #3, 37, ECF No. 15; Traverse Attach. #1 Mem. P. & A. 40, ECF No. 43.)  He asserts that his rights were violated by the admission of Garcia's testimony that Duran was armed during the carjacking and the admission of a 911 tape that references a gun. (Am. Pet. Attach. #3, 37, ECF No. 15)  Petitioner argues that admission of this evidence violated his "right to due process and a fair trial."  (Id. at 38.)

Respondent counters that Duran's argument is a "mischaracterization as there were no gun allegations charged and none were 'admitted.'"  (Answer Attach. #1 Mem. P. & A. 25, ECF No. 24.)  "Two witnesses . . . testified about Duran displaying the handle of a gun during the carjacking as a way of intimidating the victim to get out of the Jeep."  (Id.) Respondent contends, "Because this is a matter of the admissibility of evidence, its resolution depended on California

49

1   evidence law."   (<u>Id.</u> at 37.)   Respondent concludes, "Therefore,

2   it does not present a federal question for this court to review."

3   (<u>Id.</u>)

4        "In conducting habeas review, a federal court is limited to

5   deciding whether a conviction violated the Constitution, laws or

6   treaties of the United States."   <u>Estelle</u>, 502 U.S. at 68; <u>see</u>

7   <u>also</u> 28 U.S.C. § 2254(a).   Habeas relief is not available for an

8   alleged error in the state court's interpretation or application

9   of state law.   <u>Estelle</u>, 502 U.S. at 67-68; <u>Jammal v. Van de Kamp</u>,

10  926 F.2d 918, 919 (9th Cir. 1991); <u>see also</u> <u>Dugger v. Adams</u>, 489

11  U.S. 401, 409 (1989) ("[T]he availability of a claim under state

12  law does not of itself establish that a claim was available under

13  the United States Constitution.").   A habeas petitioner "may not

14  transform a state-law issue into a federal one merely by

15  asserting a violation of due process."   <u>Langford v. Day</u>, 110 F.3d

16  1380, 1389 (9th Cir. 1997).   When a habeas claim is predicated on

17  state law, the petitioner is not entitled to federal habeas

18  relief.   <u>Estelle</u>, 502 U.S. at 67-68 (holding that admissibility

19  of evidence is generally a matter of state law and will rarely

20  support federal habeas corpus relief).

21       Under narrow circumstances, the misapplication of state

22  evidentiary rules may violate federal due process safeguards.

23  <u>See</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990).   To warrant

24  federal habeas relief, a state court's evidentiary ruling must

25  have "so fatally infected the proceedings as to render them

26  fundamentally unfair."   <u>Jammal</u>, 926 F.2d at 919.

27       Duran submitted this issue to the California Supreme Court

28  as part of his petition for writ of habeas corpus.   (Lodgment No.

21, <u>People v. Duran</u>, S161207 (petition for writ of habeas corpus).)  The petition was summarily denied.  (Supplemental Lodgment No. 1, <u>In re Duran</u>, S161207, order.)  Here again, because the state court reache[d] a decision on the merits but provide[d] no reasoning to support its conclusion[,] . . . [the federal habeas court] independently review[s] the record to determine whether the state court clearly erred in its application of Supreme Court law.  <u>Pirtle</u>, 313 F.3d at 1167.

The criminal complaint charged Duran with carjacking; robbery; the unlawful taking of a vehicle; and buying, receiving, and concealing a stolen vehicle.  (Lodgment No. 1, Clerk's Tr. vol. 1, 1.)  The complaint also alleged that Duran personally used a firearm in the commission of a felony and personally used a deadly or dangerous weapon during the commission of a felony. At the preliminary hearing, both firearm allegations were dismissed for insufficiency of the evidence.  (Lodgment No. 2, Clerk's Tr. vol. 2, 325, Apr. 28, 2004.)

At trial, the victim of the carjacking testified that he believed Duran was carrying a gun.  (Lodgment No. 10, Rep.'s Appeal Tr. vol. 6, 461–62, 484–86.)  The prosecutor played a recording of the 911 call made shortly after the carjacking where the caller stated that the perpetrator had a gun.  (<u>Id.</u> at 437; Lodgment No. 1, Clerk's Tr. vol. 1, 125.)

The California Constitution provides that "relevant evidence shall not be excluded in any criminal proceeding."  Cal. Const. art. I, § 28.  "'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any

1  disputed fact that is of consequence to the determination of the
2  action." Cal. Evid. Code § 210 (West 1995).

3       Duran was charged with robbery. (Lodgment No. 1, Clerk's
4  Tr. vol. 1, 71.) "Robbery is the felonious taking of personal
5  property in the possession of another, from his person or
6  immediate presence, and against his will, accomplished by means
7  of force or fear." Cal. Penal Code § 211 (West 2008). By
8  pleading not guilty, Duran placed the use of force or fear in
9  dispute. Therefore, the prosecutor was required to prove the
10 "taking was accomplished either by force or fear." (Lodgment No.
11 1, Clerk's Tr. vol. 1, 168–69.)

12      The victim's belief that Duran was armed during the robbery
13 is relevant to proving the vehicle was taken by force or fear.
14 There is no evidence the prosecution elicited the testimony for
15 any purpose other than proving the elements of the crimes
16 charged. The prosecutor did not discuss the elements of personal
17 use of a firearm allegation during Duran's trial. The
18 instructions given to the jury did not include an instruction
19 relating to a gun allegation. (See e.g., Lodgment No. 1 Clerk's
20 Tr. vol 1, 130–208.)

21      Duran contended that because the court dismissed the gun
22 enhancement allegations at the preliminary hearing, the
23 prosecution was barred from introducing any evidence at trial
24 related to a gun. That argument fails because evidence relating
25 to the use of a gun was admissible to prove that the taking of
26 the Jeep was by force or fear, an element of the crime of
27 robbery. Duran offers no case law to support his contention, and
28 this Court has been unable to locate any. Thus, there was no

1    error, much less an error which "fatally infected the proceedings

2    [so] as to render them fundamentally unfair." Jammal, 926 F.2d

3    at 919.

4         The district court should **DENY** Duran's claim because the

5    admission of evidence Duran was armed was not contrary to, or an

6    unreasonable application of, clearly established federal law.

7    See Lockyer, 538 U.S. at 71 (citing Weeks, 528 U.S. 225).

8         **E.   Evidentiary Hearing**

9         In his Traverse, Duran requested an evidentiary hearing.

10   (Traverse 4, ECF No. 43.)   In light of the findings in this

11   Report and Recommendation, Petitioner's request for an

12   evidentiary hearing is **DENIED**.   See Bashor v. Risley, 730 F.2d

13   1228, 1233 (9th Cir. 1984) (holding that an evidentiary hearing

14   is not required on issues which can be resolved on the basis of

15   the state record).

16                     **V.   CONCLUSION**

17        For the above reasons, Duran's Amended Petition for Writ of

18   Habeas Corpus should be **GRANTED** for the claim that he did not

19   knowingly and voluntarily waive his right to counsel under

20   Faretta (Am. Pet. Attach. #2, 39, ECF No. 15); all other claims

21   for habeas relief should be **DENIED**.   Petitioner's request for an

22   evidentiary hearing is also **DENIED**.

23        This Report and Recommendation will be submitted to the

24   United States District Court judge assigned to this case,

25   pursuant to the provisions of 28 U.S.C. § 636(b)(1).   Any party

26   may file written objections with the Court and serve a copy on

27   all parties on or before November 12, 2010.   The document should

28   be captioned "Objections to Report and Recommendation."   Any

1  reply to the objections shall be served and filed on or before

2  November 29, 2010.   The parties are advised that failure to file

3  objections within the specified time may waive the right to

4  appeal the district court's order.   Martinez v. Ylst, 951 F.2d

5  1153, 1157 (9th Cir. 1991).

6

7  DATED:   October 22, 2010

   Ruben B. Brooks, Magistrate Judge

8                                   United States District Court

9  cc:
   Judge Hayes
10 All Parties of Record

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28