1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   JOSEPH ALFONSO DURAN,              Civil No.   08cv0430 WQH (RBB)

12                    Petitioner,

13                                      **REPORT AND RECOMMENDATION**
                                        **DENYING AMENDED PETITION FOR**
                 v.                     **WRIT OF HABEAS CORPUS [ECF NO.**
14                                      **15] AND ORDER DENYING**
     JEFFREY BEARD,[1] Secretary of the **EVIDENTIARY HEARING [ECF NOS.**
15   California Department of           **43, 77, 99, 110, 116.]**
     Corrections and Rehabilitation
16
                       Respondent.
17

18        Petitioner Joseph Alfonso Duran, a state prisoner proceeding

19   pro se and in forma pauperis, filed a Petition for Writ of Habeas

20   Corpus on March 6, 2008 [ECF No. 1] and an Amended Petition on

21   December 9, 2008 [ECF No. 15].[2]  On October 22, 2010, after

22   _____

23        [1] Matthew Cate, formerly named as Respondent in this case, is no longer
     the   Secretary   of   the   California   Department   of   Corrections   and
24   Rehabilitation; rather, Jeffrey Beard has been appointed Secretary of that
     agency.  The Court therefore substitutes "Jeffrey Beard" as Respondent in
     place of "Matthew Cate."  See Fed. R. Civ. P. 25(d)(1) ("When a public
25   official is a party to an action in his official capacity and during its
     pendency dies, resigns, or otherwise ceases to hold office, the action does
26   not abate and the officer's successor is automatically substituted as a
     party.")
27
          [2] Because the Amended Petition is not consecutively paginated, the
28   Court will cite to it using the numbers assigned by the electronic case
     filing system.

reviewing the Amended Petition, Respondent's Answer, Petitioner's Traverse and the state court record, this Court issued a report and recommendation recommending that Duran's First Amended Petition for Writ of Habeas Corpus be granted in part and denied in part [ECF No. 48].  The evidence in the record demonstrated that Petitioner's waiver of his right to counsel, pursuant to <u>Faretta v. California</u>, 422 U.S. 806, 807 (1975), was not knowingly and intelligently made because the trial court incorrectly informed him of his maximum sentence exposure.  (Report & Recommendation Granting in Part and Den. in Part Am. Pet. 1, ECF No. 48.)  United States District Judge William Q. Hayes issued an order adopting the Report and Recommendation.  (Order 7–8, ECF No. 53.)

Respondent appealed to the United States Court of Appeals for the Ninth Circuit [ECF No. 55].  The Ninth Circuit appointed counsel for Duran on May 17, 2011 [ECF No. 63].  On November 29, 2012, the Ninth Circuit issued an order vacating this Court's order granting habeas relief and remanding for reconsideration of Duran's amended petition in light of arguments presented by Respondent for the first time at oral argument.  (<u>Duran v. Cate</u>, No. 11-5556, order (9th Cir. Nov. 29, 2012), ECF No. 75.)  Specifically, the court of appeals directed this Court to do the following:

> (1) consider "the state's new position that the state trial judge correctly advised Duran of his maximum punishment (20 years) at the time of the October 28, 2008 <u>Faretta</u> waiver";

> (2) review "state court records regarding Duran's January 14, 2005 arraignment on the amended information";

> (3) "make factual findings on the full extent of the advice that the state trial judge gave Duran regarding his rights

during the January 14, 2005 arraignment, including (1) . . . the maximum punishment he faced upon conviction and (2) whether Duran was advised of his Sixth Amendment right to counsel"; and

(4) "issue a ruling on all of the claims in Duran's amended habeas petition, including Duran's <u>Faretta</u> claim."

(<u>Id.</u>)[3]

Upon remand, the parties were directed to file briefing in light of the court of appeals' decision [ECF No. 74]. Both Respondent and Petitioner filed supplemental briefs on January 22, 2013 [ECF Nos 76, 77]. On March 27, 2013, Respondent submitted a Second Supplemental Lodgment [ECF No. 86]. On September 9, 2013, Petitioner filed Briefing in Response to Supplemental Lodging and Respondent's Brief re Further Proceedings [ECF No. 99]. Respondent filed a Response Brief to Second Supplemental Lodgment and Further Proceedings on October 18, 2013 [ECF No. 103]. Petitioner filed a Reply to Respondent's Brief (ECF No. 103) on January 27, 2014 [ECF No. 110]. Additional briefing was requested from Petitioner and Respondent [ECF No. 112]. Beard filed a response on February 25, 2014 [ECF No. 113], and Duran filed a reply on March 8, 2014 [ECF No. 116].

The Court has considered the Amended Petition, Answer, Traverse, the state court record and all of the supplemental briefs submitted by the parties. For the reasons set forth below, the Court finds that (1) Duran was advised of the maximum penalty he

---

[3] The court of appeals also stated that after ruling on Duran's amended petition, "the district court may issue a certificate of appealability on any claim raised in Duran's petition." (<u>Duran v. Cate</u>, No. 11-55566, order at 3, ECF No. 75.)

faced at the October 28, 2004 <u>Faretta</u> hearing; (2) the trial court informed Petitioner he was facing at least 25 years to life at his January 14, 2005 arraignment on the amended information; (3) the trial court did not explicitly advise Duran of his Sixth Amendment right to counsel at the January 14, 2005 arraignment; and (4) the court urged Duran to consult with his defense attorney who was representing him in another criminal case.

Further, for the reasons discussed below, Court recommends Duran's Amended Petition for Writ of Habeas Corpus be **DENIED.**

Duran requested an evidentiary hearing in his Traverse (Traverse 3-4, ECF No. 43) and in his supplemental briefs after remand. (<u>See</u> Pet'r's Briefing Pursuant Remand 14, ECF No. 77; Pet'r's Briefing Resp. Supplemental Lodging 23, ECF No. 99; Pet'r's Reply Resp't' Br. (ECF No. 103) 14-15, ECF No. 110; Pet'r's Reply to Doc. 113 [Resp't's Br.] 14, ECF No. 116.) As explained below, the Court **DENIES** Duran's request for an evidentiary hearing.

## I.  FACTUAL BACKGROUND

On January 11, 2004, Petitioner Joseph Duran went to a National City car dealership where he met Jose Fernando Garcia, a car salesman. (Lodgment No. 10, Rep.'s Appeal Tr. vol. 6, 449-52, Feb. 2, 2005.) Duran told Garcia that his mother had given him $15,000 to buy a car, and he wanted to test drive a Jeep. (<u>Id.</u> at 453, 455.)

Duran also mentioned that he had just had a cast removed from his right hand. (<u>Id.</u> at 454.) Petitioner lifted his right sleeve and showed Garcia that one hand was a different color than the other. (<u>Id.</u>)

Garcia retrieved the keys to the Jeep that Duran had selected. (Id. at 458.)  They got into the car, and Duran drove out of the dealership.  (Id.)  After a short distance, Garcia asked Duran to pull over so he could remove a balloon that was tied to the right-hand side mirror.  (Id. at 459.)  Once the Jeep was stopped, Duran told Garcia, "Why don't you get the fuck out of the car."  (Id. at 461.)  Duran lifted his shirt and revealed what Garcia believed to be a gun.  (Id.)  Garcia was frightened, so he jumped out of the car and ran back to the dealership.  (Id. at 462.)  Duran drove away in the vehicle.  (Id. at 463.)

When Garcia returned to the dealership he told his manager, James Burgess, what happened and Burgess called 911.  (Id.)  Garcia gave the 911 operator a general description of the carjacker. (Id.)  Later, a police officer came to the dealership and took a more detailed statement from Garcia.  (Id. at 463-64.)

On January 12, 2004, the day after the robbery, Officer Michael Helms, a San Diego County Sheriff, noticed a Jeep speeding out of a local shopping center.  (Lodgment No. 11, Rep.'s Appeal Tr. vol. 7, 528-30, Feb. 3, 2005.)  The Jeep ran a stop sign and made an illegal turn toward oncoming traffic.  (Id. at 530.)  Officer Helms stopped the vehicle because of the traffic violations.  (Id. at 531-32.)

Duran was the driver of the Jeep.  (Id. at 533-35.)  During the traffic stop, he explained that he did not have identification, but Duran gave his name and date of birth to Officer Helms.  (Id.)  Shortly thereafter, the officer ran a check on the vehicle's license plate and learned that it was stolen the day before.  (Id.

1   at 535-36.)  Officer Helms arrested Duran and contacted National

2   City Police to assist in the investigation.  (Id. at 536, 538.)

3       National City Police Officers took several photographs of

4   Duran, including his face, hair, and where his right arm was

5   slightly deformed and discolored.  (Id. at 557-59.)  Two days

6   later, on January 14, 2004, an officer showed a photographic lineup

7   to Garcia, the car salesman.  (Lodgment No. 10, Rep's Appeal Tr.

8   vol. 6, 467.)  Garcia identified Duran from the photographic lineup

9   and also identified him during the trial.  (Id. at 453, 469-70.)

10                  **II.  STATE COURT PROCEEDINGS**

11       On February 4, 2005, the jury convicted Duran of carjacking,

12   robbery, and the unlawful taking and driving of a vehicle.

13   (Lodgment No. 2, Clerk's Tr. vol. 2, 359-61, Feb. 4, 2005.)  The

14   jury found him not guilty of buying, receiving, concealing,

15   selling, or withholding a stolen vehicle.  (Lodgment No. 12, Rep.'s

16   Tr. Appeal vol. 8, 696-97, Feb. 4, 2005.)  Duran waived his right

17   to a jury trial on his prior convictions.  (Id. at 703.)  He

18   admitted prior convictions for assault with a deadly weapon on May

19   26, 1999, and theft of a firearm on March 1, 1991.  (Id. at 704.)

20   The trial court found Duran's two prior convictions qualified as

21   prison priors, serious felonies, and strikes.  (Id.)

22       On August 16, 2005, the trial court sentenced Duran to twenty-

23   five years to life in state prison for carjacking.  (Lodgment No.

24   13, Rep.'s Appeal Tr. vol. 9, 741-42.)  The court added two

25   consecutive five-year terms for the two serious felonies, a

26   consecutive three-year term for the violent prison prior, and two

27   consecutive one-year terms for each of the prison priors.  (Id. at

28   742.)  The sentences for robbery and the unlawful taking and

driving of a vehicle, counts two and three, were stayed pursuant to California Penal Code section 654. (Id. at 743.) Petitioner's total sentence was forty years to life in state prison. (Id. at 742-43; see also Lodgment No. 2, Clerk's Tr. vol. 2, 368.)

Duran appealed his conviction to the California Court of Appeal. (Lodgment No. 15, Appellant's Opening Br. at 1, People v. Duran, No. D047059 (Cal. Ct. App. Jan. 16, 2007).) He argued that the prosecutor violated Brady v. Maryland, 373 U.S. 83 (1963), as well as California Penal Code section 1054.1, and the trial court miscalculated his sentence. (Lodgment No. 15, Appellant's Opening Br. at 8-24, People v. Duran, No. D047059.) The California Court of Appeal affirmed Duran's conviction but remanded his case to the trial court with instructions to strike the prison term enhancements under California Penal Code sections 667.5(a) and 667.5(b). (Lodgment No. 18, People v. Duran, No. D047059, slip op. at 11 (Cal. Ct. App. Jan 16, 2007).) This left Duran with a sentence of thirty-five years to life.

Duran then filed a petition for review in the California Supreme Court and made the same arguments regarding Brady and California Penal Code section 1054.1 discovery violations. (Lodgment No. 19, Pet. for Review at 3, 12, People v. Duran, [S150297] (Cal. filed Feb. 20, 2007).) The supreme court summarily denied his petition. (Lodgment No. 20, People v. Duran, [S150297], order (Cal. Mar. 30, 2007).)

On February 26, 2008, Duran filed a petition for writ of habeas corpus in the California Supreme Court. (Lodgment No. 21, People v. Duran, S161207 (Cal. filed Feb. 26, 2008) (petition for writ of habeas corpus).) He argued: (1) The trial court abused

its discretion when it did not order a competency hearing and erred when it took a "Lopez waiver" without evaluating his competence and informing him of the maximum punishment; (2) he received ineffective assistance of counsel; and (3) the judge improperly admitted evidence of a gun.  (Id.)  The petition was summarily denied.  (Supplemental Lodgment No. 1, In re Duran, S161207, order (Cal. Oct. 16, 2008).)

### III.   STANDARD OF REVIEW

Because Duran filed his Petition after April 24, 1996, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  28 U.S.C.A. § 2244 (West 2006); Woodford v. Garceau, 538 U.S. 202, 204 (2003) (citing Lindh v. Murphy, 521 U.S. 320, 326 (1997)).  AEDPA sets forth the scope of review for federal habeas corpus claims:

> The Supreme Court, a justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States.

28 U.S.C.A. § 2254(a) (West 2006); see also Reed v. Farley, 512 U.S. 339, 347 (1994); Hernandez v. Ylst, 930 F.2d 714, 719 (9th Cir. 1991).

To present a cognizable federal habeas corpus claim, a state prisoner must allege his conviction was obtained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.A § 2254(a).  A petitioner must allege the state court violated his federal constitutional rights.  Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990); Mannhald v. Reed, 847 F.2d 576, 579 (9th Cir. 1988).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law. Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect state court's application of state law); Jackson, 921 F.2d at 885 (concluding federal courts have no authority to review a state's application of its law). Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).

In 1996, Congress "worked substantial changes to the law of habeas corpus." Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997). Amended section 2254(d) now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C.A § 2254(d).

The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003), stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters

under section 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." Id. at 71 (citation omitted).  In other words, a federal court is not required to review the state court decision de novo.  Id.  Rather, a federal court can proceed directly to the reasonableness analysis under section 2254(d)(1). Id.

The "novelty" in section 2254(d)(1) is "the reference to 'Federal law, as determined by the Supreme Court of the United States.'"  Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997) (emphasis in original deleted).  Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules." (Id.)  "[A] state court decision may not be overturned on habeas corpus review, for example, because of a conflict with Ninth Circuit-based law."  Moore, 108 F.3d at 264.  "[A] writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court."  Id. (citing Childress v. Johnson, 103 F.3d 1221, 1224-26 (5th Cir. 1997); Devin v. DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996); see Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996)).

Furthermore, with respect to the factual findings of the trial court, AEDPA provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of

1    rebutting the presumption of correctness by clear and
2    convincing evidence.

3    28 U.S.C.A. § 2254(e)(1).

4                          **IV. DISCUSSION**

5        As noted above, the Ninth Circuit Court of Appeals has
6    directed this Court to consider "the state's new position" that
7    Duran was correctly advised regarding the maximum penalty he faced
8    at the time of his <u>Faretta</u> waiver hearing, review the record and
9    make specific factual findings regarding Duran's January 14, 2005
10   arraignment on the amended information. The Ninth Circuit then
11   directed this Court to issue a ruling on all of the claims raised
12   in Duran's amended petition, including his <u>Farretta</u> claim.  (<u>Id.</u>)

13       This Court will begin by addressing the Ninth Circuit's
14   specific instructions related Duran's <u>Faretta</u> hearing and the
15   January 14, 2005 arraignment.  Thereafter, the Court will address
16   the claims raised in Duran's Amended Petition.

17   **A.   <u>Whether the Trial Judge Correctly Advised Duran of his Maximum
         Punishment at Petitioner's October 28, 2004 *Faretta* Waiver</u>**
18

19       On May 3, 2004, an information was filed charging Duran with
20   carjacking (Cal. Penal Code § 215(a)); robbery (Cal. Penal Code
21   § 211); unlawfully taking and driving of a vehicle (Cal. Penal
22   Code § 10851(a)); and buying, receiving, concealing, selling,
23   withholding a stolen vehicle (Cal. Penal Code § 496d).  (Lodgment
24   No. 1, Clerk's Tr. vol. 1, 14-15, May 3, 2004).  The information
25   further alleged that Duran had two probation denial priors pursuant
26   to Penal Code section 1203(e)(4) and two prison priors within the
27   meaning of California Penal Code sections 667.5(b) and 668 – the
28   first, a 1991 conviction under California Penal Code section 487(3)

and the second, a 1999 conviction under California Penal Code section 245(a)(1).  (Id. at 16.)  The information described the 1999 conviction as both a "serious felony" and "violent felony" under California Penal Code section 1192.7(c)(23); thus, it qualified as a "strike prior" pursuant to California Penal Code sections 667(b)-(i); 1170.12 and 668.  (Id. at 16-17.)  Accordingly, the May 3, 2004 information charged Duran with only one "strike" prior.

Petitioner's maximum exposure was the upper term of nine years for carjacking, see Cal. Penal Code § 215(a) (West 2014), doubled to eighteen years if the prior strike allegation was found to be true.  See Cal. Penal Code § 667(e)(1) (West 2010).  In addition, if found true, the two alleged prison priors would each add an additional year to Duran's sentence.  See Cal. Penal Code § 667.5(b).  In sum, the maximum term Duran faced on the based on the charges alleged in the May 3, 2004 information was twenty years in prison.

On October 28, 2004, Duran asked to represent himself, pursuant to Faretta v. California, 422 U.S. 806, 807 (1975). (Lodgment No. 5, Rep.'s Augment[ed] Appeal Tr. vol. 1, 1, Oct. 28, [2004].)  After some discussion, Judge Jeffrey Fraser asked Petitioner to fill out a waiver form pursuant to People v. Lopez, 71 Cal. App. 3d 568, 138 Cal. Rptr. 36.  (Id. at 2-3; Lodgment No. 1, Clerk's Tr. vol. 1, 19-20, Oct. 28, 2004); see also Lopez, 71 Cal. App. 3d at 571, 138 Cal. Rptr. at 38 (holding that for a waiver of counsel to be knowing and intelligent the court must advise the defendant, on the record, of the dangers and disadvantages of self-representation).

Paragraph two of the Lopez waiver form informs the defendant of "the maximum punishment(s) that can be imposed on conviction for the offense(s)." (Lodgment No. 1, Clerk's Tr. vol. 1, 19.)  The first figure that appeared in paragraph two of the form was "9y." (Id.)  That was crossed out and replaced with "18 years." (Id.)  Then "18" was crossed out and replaced with "20." (Id.)  The final version stated "20 years." (Id.)

After some discussion about Duran's request for a continuance and advisory counsel, Duran initialed each paragraph on the waiver form and signed it. (See id. at 19-20; see also Lodgment No. 5, Rep.'s Appeal Tr. vol. 1, 4-5.)  Judge Fraser asked Duran if he understood everything on the form.  Duran replied that he did. (Lodgment No. 5, Rep.'s Appeal Tr. vol. 1, 5.)  When asked if he had any further questions for the court, Petitioner replied "Just how much time that I'm given to prepare." (Id.)  The court granted Duran's request to represent himself and relieved defense counsel. (Id.)

Both Petitioner and Respondent agree that at the October 28, 2004 Faretta hearing, Duran was correctly informed that he faced a maximum penalty of twenty years in prison. (See Pet'r's Briefing Pursuant Remand 11-12, ECF No. 77; Resp't's Br. Re Further Proceedings 4, ECF No. 76.)  Based on the charges alleged in the May 3, 2004 information, this was accurate.  The Court therefore finds Duran was correctly advised that twenty years was the maximum penalty he faced at the time he waived his right to counsel on October 28, 2004.

**B.    The January 14, 2005 Arraignment on Amended Information**

    **1.    Summary of the Proceedings**

On January 3, 2005, a new prosecutor, Minaz Bhayani, took over the case; his predecessor had handled the case since April 2004. (See Lodgment No. 6, Rep.'s Augment[ed] Appeal Tr. vol. 2, 24, Jan. 12, 2005; Lodgment No. 3, Rep.'s Tr., Preliminary Exam 1, Apr. 28, 2004.)  On January 12, 2005, a readiness conference was held and discovery matters and pretrial motions were discussed.  (See Lodgment No. 6, Rep.'s Augment[ed] Appeal Tr. vol. 2, 21-32.)  The trial date, previously set for January 24, 2005, was confirmed. (Id. at 32.)

On January 13, 2005, the day after the readiness conference, the prosecutor filed an amended information.  (Lodgment No. 1, Clerk's Tr. vol. 1, 71-75.)  Duran was arraigned on the amended information on January 14, 2005.  (Lodgment No. 24, Rep.'s Tr., Arraignment, Jan. 14, 2005.)  At the arraignment, the prosecutor announced he had "discovered that Mr. Duran is not a second striker but a third striker."  (Id. at 2.)  He stated that Duran's 1991 conviction under California Penal Code section 487(3), was a "grand theft firearm" conviction, which qualified as a strike.  (Id. at 2.)  That conviction had been alleged only as a "probation denial prior" and a "prison prior" in the May 3, 2004 information.  (See Lodgment No. 1, Clerk's Tr. vol. 1, 16.)

The prosecutor stated the amended information now included a second serious felony prior allegation and a second strike prior allegation, both based on Duran's 1991 conviction for grand theft of a firearm.  (Lodgment No. 24, Rep.'s Augment[ed] Tr. 2.)  Duran received a copy of the amended information and waived further

reading.  (Id.)  He pleaded not guilty.  (Id.)  Judge Raymond Edwards, who had taken the case over from Judge Fraser, noted that Duran had signed and filed with the court an acknowledgment of constitutional rights form on January 15, 2004, when he was originally arraigned.  (Id. at 3.)  There was then a discussion about whether Judge Edwards or Judge Fraser would preside over the trial.  (Id. at 3-4.)  Duran also inquired whether the trial would start on January 24, 2005.  (Id. at 4.)  The judge responded that it would.  (Id.)

Judge Edwards asked Duran if there had been any effort to settle the case.  (Id. at 5.)  Duran responded that there had been an offer but it had been "semi-retracted;" a second offer had been made by Duran but not accepted by the prosecutor.  (Id.)  The prosecutor clarified that he had asked Duran to make a reasonable offer that he could take to his supervisor.  Duran indicated he would accept four years and eight months.  (Id.)  The prosecutor told Duran his supervisor would not go along with four years and eight months.  (Id.)  After speaking to his supervisor, the prosecutor told Duran he could not agree to anything less than eight years.  (Id.)  At the settlement conference, Bhayani advised Duran that if he did not accept the offer then, it would be revoked after the conference.  Duran declined the offer.  (Id. at 5-6.)

The prosecutor noted that the plea discussion had occurred before he discovered the second strike.  He stated that now Duran was looking at "perhaps 25 years to life" on his case.  (Id. at 6.)  The prosecutor also announced he had learned that Duran had another felony case in El Cajon, in which he was charged with burglary and forgery.  (Id.)  Prosecutor Bhayani told the court that he had

contacted the prosecutor handling Duran's El Cajon case to inform

him it appeared Duran had a second strike prior for theft of a

firearm.  (<u>Id.</u>)  Bhayani anticipated that the information in the El

Cajon case would be amended as well.  He added, "[S]o that really

adds up the time quite a bit."  (<u>Id.</u>)

The judge asked Duran who was representing him in his El Cajon

case, and he suggested that Duran speak to his attorney in that

case.  (<u>Id.</u> at 6-7.)

> [J]ust have a conversation with him as your lawyer in
> this case about – and the reason I'm asking this is a
> lawyer has an obligation to try to resolve the case where
> it is in the best interest of his client.  So, since
> you're serving as your own lawyer, you have an obligation
> to try to resolve this matter.  So it's in the best
> interests of your client, who is you.

(<u>Id.</u>)  The judge asked Duran, "[H]ave you talked with your lawyer

[in the El Cajon case] about trying to work out some kind of

package deal?"  (<u>Id.</u> at 7.)

Judge Edwards continued:

> What I'm thinking is this: If I'm the prosecutor I
> like for you not to resolve the cases because if you get
> convicted in this one, and if they can convict you of the
> robbery that's a strike.  Then you go to trial in El
> Cajon, you get convicted out there.  Then these cases are
> going to be winding up 25 years to life, 25 years to
> life, 25 years to life.
>
> You're never going to get out of prison.  Well,
> California law, once you have a life sentence, you're not
> getting out whether you have a single or a double.

(<u>Id.</u>)

The judge again urged Duran to speak to his lawyer in El

Cajon:

> My concern is to make sure you understand the choices
> that you're making because they are decisions that you
> will have to live with, and I'd like for you to make
> knowing and intelligent decisions because then if you get
> convicted and you wind up with all these years in prison,

1    I will sleep well at night because you and I have had
     this conversation.  You knew what your options were, and
2    you decided to roll the dice.

3    (Id. at 8.)

4         During the hearing, the prosecutor stated he had a copy of the

5    reporter's transcript of Duran's change of plea hearing in his 1991

6    case, showing that Duran was convicted of grand theft of a firearm.

7    (Id. at 9.)  Judge Edwards informed Duran that grand theft of a

8    firearm would constitute a "serious felony" as a matter of law and

9    cited California Penal Code section 1192.7(c)(26).  (Id. at 9.)

10   The prosecutor noted California Penal Code section 497.3 had been

11   renumbered since 1991, and was now section 487(d).  (Id.)  Duran

12   stated, "So it was 487.  Then it was not a strike.  Now it's D,

13   that's a strike."  (Id. at 10.)  Judge Edwards explained that

14   nothing had changed but the numbers of the code section.  Duran

15   reiterated his not guilty plea, and it was entered.  (Id.)  Lastly,

16   the judge again urged Duran to speak to his lawyer in his El Cajon

17   case, stating "[T]he more information you have, if it turns out bad

18   for you, that's your decision with all the information at your

19   disposal."  (Id.)  Trial remained set to begin on January 24, 2005.

20   (Id.)

21        **2.    Factual Findings on the Full Extent of the Advice the
               Trial Judge Gave Duran During his January 14, 2005**
22             **Arraignment**

23             a. Advisement of maximum penalty if convicted

24        Based on the discussions between the prosecutor, the trial

25   judge and Duran during arraignment, the Court finds Duran was aware

26   that his case was now a "three strikes case," exposing him to a

27   possible life sentence.  (Id. at 2.)  It was made clear that the

28   prosecutor amended the information to allege two prior strikes.

1   "[T]he amended information includes a second serious felony prior
2   as well as a conviction second strike prior, a copy of which has
3   been provided to Mr. Duran." (<u>Id.</u>)  Duran received a copy of the
4   amended information and waived its reading. (<u>Id.</u>)

5        The trial judge did not calculate Duran's precise maximum
6   possible exposure, but the prosecutor stated, "Looking at my
7   calculations [,] [Duran faced] perhaps 25 to life on this case."
8   (<u>Id.</u> at 6.)  The trial judge also expressed concern that Duran was
9   facing at least 25 years to life sentence if he was convicted in
10  this case and possibly even more life sentences if he was convicted
11  of the multiple counts in his El Cajon case.  He stated, "[T]hese
12  cases are going to be winding up 25 years to life, 25 years to
13  life, 25 years to life.  You're never going to get out of prison."
14  (<u>Id.</u> at 7.)  He noted that Duran would be unlikely to get parole if
15  he received a life sentence. (<u>Id.</u> at 8.)  Judge Edwards told Duran
16  theft of a firearm was a strike as a matter of law. (<u>Id.</u> at 9.)
17  The Court **FINDS** Duran was informed at the January 14, 2005
18  arraignment that a second strike had been alleged and that he was
19  facing at least twenty-five years to life in prison.

20            b.   <u>Advisement on Sixth Amendment right to counsel</u>
21        During the arraignment on January 15, 2005, Judge Edwards did
22  not explicitly advise Duran of his Sixth Amendment right to
23  counsel.  He noted Duran had signed an acknowledgment of
24  constitutional rights, almost a year prior, when the original
25  felony complaint was filed. (<u>Id.</u> at 3; <u>see also</u> Lodgment No. 1,
26  Clerk's Tr. vol. 1, 6.)  Judge Edwards did not review these rights
27  with Duran at the January 14, 2005 arraignment.  The Court **FINDS**
28

that the state judge did not re-advise Duran of his right to counsel.

                  **c.**   **Additional advice the state trial judge gave Duran**

At the arraignment, Judge Edwards encouraged Duran to consider working out a plea deal. He also strongly encouraged Duran to speak to his defense attorney in his separate El Cajon case. He suggested that they might possibly come to a package plea agreement that would spare Duran a life sentence. The judge stated, "[S]ee whether or not you[,] as your lawyer in this case[,] and him[,] as your lawyer in that [El Cajon] case think that you can package these two cases together, and it's certain that the offer that they had offered before of eight years wasn't a life sentence." (<u>Id.</u> at 8.)

The Court **FINDS** the state trial judge urged Duran on multiple occasions to speak to his defense counsel in the El Cajon case and consider the cumulative effects of the choices he was making.

**C.**   **Claims Raised in Duran's Amended Petition**

Having considered the Ninth Circuit's initial instructions on remand, the Court now turns to the claims raised in Duran's amended petition. Duran asserts four main grounds and multiple subclaims for habeas relief. (Am. Pet. 10, ECF No. 15; <u>id.</u> Attach. #2, 34, 67; <u>id.</u> Attach. #3, 37; <u>see also</u> Traverse Attach. #1 Mem. P. & A. 10, 17, 32, 40, ECF No. 43.) In ground one, Petitioner claims the prosecutor failed to disclose material, exculpatory evidence in violation of his discovery obligations, and the trial judge abused his discretion by denying Duran's motion for a new trial. (Am. Pet. 10, ECF No. 15.)

In ground two, Petitioner argues the trial judge abused his discretion by failing to order a competency hearing after expressing doubt about Duran's mental status. (Id. Attach. #2, 34.)  The judge is alleged to have erred in allowing him to complete a Lopez waiver, People v. Lopez, 71 Cal. App. 3d 568, 138 Cal. Rptr. 36 (1977), without evaluating Duran's competence. Petitioner further claims his waiver of counsel pursuant to Faretta, 422 U.S. at 807, was not knowing and intelligent because he was not properly informed of his maximum exposure. (Id.)

In ground three, Petitioner claims he received ineffective assistance of counsel prior to, and after, his self-representation. (Id. at 67.)  Petitioner argues his counsel failed to investigate Duran's mental capacity. (Id. at 68.)  At the time Petitioner waived his right to counsel, his attorney failed to inform him of the correct maximum penalty. (Id. at 70.)  In addition, Duran contends that the trial court erred by failing to address his claim of ineffective assistance of counsel raised in his motion for a new trial. (Id. at 72.)

Finally, in ground four, Petitioner argues that the trial judge improperly admitted evidence regarding the personal use of a firearm, when that allegation had previously been dismissed from counts one and two. (Id. Attach. #3, 37-38.)

**1.   Ground One:  Whether the Prosecution Failed to Disclose Material, Exculpatory Evidence**

On November 24, 2004, Duran filed an informal request for discovery pursuant to California Penal Code section 1054.5 (West 2008). (Lodgment No. 1, Clerk's Tr. vol. 1, 21-28).  On December 10, 2004, he filed a motion for discovery pursuant to Brady v.

1   <u>Maryland</u>, 373 U.S. 83; <u>People v. Wheeler</u>, 4 Cal. 4th 284, 841 P.2d

2   938, 14 Cal. Rptr. 2d 418 (1992); and California Penal Code section

3   1054(e) (West 2008).  (Lodgment No. 1, Clerk's Tr. vol. 1, 29-30);

4   <u>see also</u> Cal. Penal Code § 1054(e) ("[N]o discovery shall occur in

5   criminal cases except as provided by this chapter, other express

6   statutory provisions, or as mandated by the Constitution of the

7   United States.")

8        On February 3, 2005, as Duran's trial entered its third and

9   final day, the prosecution turned over a "police follow-up report."

10  (Am. Pet. 10, ECF No. 15.)  Petitioner argues the late delivery of

11  the report violated the prosecution's discovery obligations under

12  <u>Brady</u>.[4]  (<u>Id.</u> at 13; Traverse Attach. #1 Mem. P. & A. 13, ECF No.

13  43.)  He further asserts that his conviction should be reversed

14  because the report was favorable to his defense; it contained

15  material, exculpatory information; and it was suppressed by the

16  prosecution.  (Am. Pet. 13-15, ECF No. 15.)  "Any information

17  casting doubts on [the victim's] identification [of Duran] would

18  undermine the prosecution and aid the defense."  (<u>Id.</u> at 19.)

19  Petitioner concludes by arguing that the evidence "call[ed] into

20  question the accuracy of [the victim's] identification of [Duran

21  and] rais[ed] a reasonable probability of a different result

22  . . . ."  (<u>Id.</u> at 20.)

23       Respondent contends that the California Court of Appeal

24  considered these claims and properly rejected them.  (Answer

25  Attach. #1 Mem. P. & A. 6, ECF No. 24.)  Respondent argues that

26  "[t]he Court of Appeal reasonably concluded the information about

27

28       [4]  Initially, Duran moved to have the document and its contents
    suppressed, but the court denied his motion. (Lodgment No. 11, Rep.'s Appeal
    Tr. vol. 7, 505, 507-08.)

[the undisclosed witnesses] was not material because . . . the
information in no way undermined confidence in the jury's verdict."
(Id. at 10.)   Furthermore, "[t]he Court of Appeal's decision was
consistent with Brady and reasonable under the facts of this case."
(Id. at 11.)

"[T]he suppression . . . of evidence favorable to an accused
violates due process where the evidence is material either to guilt
or punishment, irrespective of the good faith of the prosecutor."
Brady, 373 U.S. at 87.   In Brady, the Supreme Court recognized a
prosecutor's obligation to disclose exculpatory evidence, whether
substantive or for impeachment purposes, when such evidence is
"material" to the defense.   See id.   Evidence is material "only if
there is a reasonable probability that, had the evidence been
disclosed to the defense, the result of the proceeding would have
been different."   United States v. Bagley, 473 U.S. 667, 682
(1985).   The mere possibility an item of undisclosed information
might have helped the defense or affected the outcome of the trial
does not establish materiality.   See United States v. Agurs, 427
U.S. 97, 109 (1976).

Habeas corpus relief is only granted if the state court
adjudication "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
federal law, as determined by the United States Supreme Court."   28
U.S.C.A. § 2254(a).   A Brady violation will not result in habeas
relief unless the improperly withheld evidence "could reasonably be
taken to put the whole case in such a different light as to
undermine confidence in the verdict."   Kyles v. Whitley, 514 U.S.
419, 435 (1995).

To establish a <u>Brady</u> violation, Petitioner must show three things. <u>Strickler v. Green</u>, 527 U.S. 263, 281-82 (1999). First, the evidence was favorable to him, either because it is exculpatory or because it is impeaching. (<u>Id.</u>) Second, the evidence must have been willfully or inadvertently suppressed by the prosecution. (<u>Id.</u>) Third, the defendant was prejudiced by the failure to disclose. (<u>Id.</u>)

The follow-up police report contained statements by two witnesses: Raquel Martinez Robinson and Oscar Ochoa. (Lodgment No. 2, Clerk's Tr. vol. 2, 252.) Robinson stated that she spent no more than ten minutes with the suspect, and Ochoa indicated he had only observed the suspect from afar. (<u>Id.</u>) Both witnesses described the carjacker as a Hispanic male who was roughly thirty years old. (<u>Id.</u>) Robinson added that the carjacker had short black hair, a pocked face, and identified himself as "Joseph." (<u>Id.</u>) Both witnesses stated they would be unable to identify the carjacker. (<u>Id.</u>) Neither Robinson nor Ochoa was able to identify Duran from a photo lineup. (<u>Id.</u>)

Duran presented this claim to the California Court of Appeal and California Supreme Court. (Lodgment No. 15, Appellant's Opening Br. at 1, <u>People v. Duran</u>, No. D047059; Lodgment No. 19, Pet. for Review at 3, 12, <u>People v. Duran</u>, [S150297].) The state supreme court summarily denied the petition for review. (Lodgment No. 20, <u>People v. Duran</u>, [S150297], order.) Because the appellate court issued the last reasoned state court decision, this Court will look through the state supreme court's summary denial. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804 (1991).

The California Court of Appeal stated, "[I]f the information in the police report was material to [Duran's] defense, it would be difficult for us to find that the prosecution met its discovery obligations." (Lodgment No. 18, People v. Duran, No. D047059, slip op. at 9.)  The court continued:

> However, on this record we cannot find that the information in the police report would have been of any material assistance to Duran.  The day after the carjacking he was stopped driving the stolen car.  In general he matched the description given by Garcia and in particular had a discolored right hand similar to the one Garcia had reported.  Garcia talked to Duran directly and drove for a short while in the car with him.  Thus Garcia had an excellent opportunity to recognize Duran and was able to pick him out of a photographic lineup.
>
> In contrast, the witnesses disclosed in the report had not been in a car with Duran and in fact apparently wanted nothing to do with him while he was at the car dealership.  Importantly, unlike Garcia, none of the undisclosed witnesses had been the victim of a harrowing carjacking.  Under these circumstances a jury would not find their failure to identify him at all surprising or inconsistent with Garcia's testimony.  Indeed, given the undisclosed witnesses' casual opportunity to observe him, had Duran called them and had them testify about their inability to pick him out of the photographic lineup, Duran would have established in a fairly conclusive fashion that the photographic lineup was not in any manner suggestive.  Thus the witnesses' entirely explicable failure to identify Duran could have easily been used to support the validity of Garcia's positive identification.

(Id. at 10-11.)  Thus, the appellate court found that the undisclosed information was not material because there was no reasonable probability that the result would have been different had it been disclosed.  (See id.)

The court of appeal reasoned that the victim's identification of Petitioner was persuasive because Garcia had ample opportunity to observe the carjacker, but the undisclosed witnesses did not. Duran matched the general description of the carjacker, and Garcia

was able to pick Petitioner out of a photo lineup.  Petitioner was
apprehended shortly after the crime, in the stolen vehicle.  The
court explained that the witnesses in the report were
distinguishable from Garcia because they had little contact with
the carjacker.  Their failure to identify Petitioner from the photo
lineup would not contradict Garcia's testimony and would be
understandable to the jury.  The California Court of Appeal's
decision was not contrary to, or an unreasonable application of,
clearly established federal law.  See Lockyer, 538 U.S. at 71
(citing Weeks v. Angelone, 528 U.S. 225 (2000)).

        In his brief to the California Court of Appeal, Duran argued
that a third witness, Jose Morales, had been discovered as a result
of interviewing Robinson and Ochoa.  (See Lodgment No. 15,
Appellant's Opening Br. at 7, People v. Duran, No. D047059.)
Morales was not interviewed by the police.  (Id.)  Morales, like
Robinson and Ochoa, saw the carjacker for a limited amount of time;
however, Morales believed he could identify the carjacker.  (Id.)
The court of appeal did not discuss Morales in its opinion; the
trial court, however, did have an opportunity to review and rule on
this claim.  (See Lodgment No. 18, People v. Duran, No. D047059,
slip op. at 1-11; Lodgment No. 13 Rep.'s Appeal Tr. vol. 9, 726-
28.)

        The trial court heard Duran's motion for a new trial based on
the alleged Brady violation.  (Lodgment No. 13 Rep.'s Appeal Tr.
vol. 9, 708.)  The motion was premised on potential testimony from
all three witnesses -- Robinson, Ochoa, and Morales.  Duran's
attorney argued, "It is . . . obviously very significant . . . that
information also led to a third witness, who was not mentioned in

the report, who was also an eyewitness, Mr. Moreno [sic] . . . ."
(Id. at 722.)  He asserted that the interview with Robinson and
Ochoa lead to "that third individual [Morales] who was an
eyewitness and also gave an indication about his ability to
identify the individual."  (Id. at 723.)

The motion for a new trial was supported by a declaration from
an investigator who had spoken with Morales.  (See Lodgment No. 2,
Clerk's Tr. vol. 2, 262-63.)  Judge Edwards stated that even if the
three individuals appeared at the trial, it "would not lead to a
different result."  (Lodgment No. 13, Rep.'s Appeal Tr. vol. 9,
731.)  The trial court commented:

> [T]he evidence in this case against [Duran] was strong.
> Mr. Garcia identified [Duran], and the very next day the
> defendant was found in possession of the vehicle.  So you
> have eyewitness testimony corroborated by the physical
> evidence.
>
> And this is not the kind of case where the issue of
> cross-racial identification is a matter which might lead
> to misidentification.  The fact that the defendant was
> found in possession of the vehicle the very next day and
> was identified by the person from whom the vehicle was
> taken, in this court's view, mitigates against the
> finding that a different trier of fact would reach a
> different conclusion.

(Id. at 730.)

> Judge Edwards continued:
> Although [the nondisclosed individuals] had not been able
> to identify [Duran] in a photo spread, looking at him in
> true life might have resulted in them identifying him.
> And rather than having the one witness identify him and
> then having him be in the position to argue that this one
> witness was wrong, producing the other two witnesses who
> perhaps would have identified him would then have made
> that task impossible.
>
> When you take that with the fact that he was found
> in the vehicle a day later, you have no chance.

(Id. at 730-31.)

This Court gives deference to the last reasoned state-court opinion. Ylst v. Nunnemaker, 501 U.S. at 804. The court of appeal did not discuss whether Morales's testimony would have yielded a different result. Consequently, this Court looks to the trial court's discussion.

The identification of Morales stemmed from interviewing witnesses listed in the follow-up report, and the court of appeal found that the report was Brady material. The Supreme Court has held, "The reviewing court may consider directly any adverse effect that the prosecutor's failure to respond [to a request for Brady material] might have had on the preparation or presentation of the defendant's case." Bagley, 473 U.S. at 683 (emphasis added). Here, the belated disclosure of the follow-up report hampered Duran's ability to discover, interview, and call Morales to testify.

Still, Duran must show that Morales's testimony was material to his defense. Evidence is material when "its suppression undermines confidence in the outcome of the trial." Id. at 678. Petitioner must demonstrate that Morales's testimony would have changed the result of his trial. Bagley, 473 U.S. at 682. He cannot meet this burden.

The trial court's analysis applies to Robinson, Ochoa, and Morales. Morales saw the carjacker for a limited amount of time. (See Lodgment No. 2, Clerk's Tr. vol. 2, 263-64 (Decl. Frank C. Griffin).) Although he believed he "could still possibly identify" the carjacker, Morales was never shown a lineup or photo array, and he had not indicated that Duran was not the carjacker. (Id. at 264.) Duran's defense was that Garcia misidentified him. The

1    trial judge noted that "it's not that [the newly discovered
2    witnesses] picked someone different or said that [Duran] was not
3    the person." (Lodgment No. 13, Rep.'s Appeal Tr. vol. 9, 731.)
4    The court concluded that earlier disclosure of the follow-up report
5    would not have changed the result in Petitioner's case. (Id. at
6    728-31.) Given the strength of the case against Duran, uncertain
7    testimony from Morales would not have altered the course of the
8    proceedings. The trial court's analysis was not contrary to, or an
9    unreasonable application of, clearly established Supreme Court law.
10        Duran also argues that the trial judge abused his discretion
11   in denying Petitioner's motion for a new trial. He claims the
12   judge did not "explicitly address" Duran's Brady claim and applied
13   the wrong legal standard. (Am. Pet. 21-26, ECF No. 15.)
14   Petitioner raised these arguments in the court of appeal. (See
15   Lodgment No. 15, Appellant's Opening Br. at 15-17, People v. Duran,
16   No. D047059.) Regardless of how the trial court handled the Brady
17   claim, the California Court of Appeal addressed the claim and
18   applied the legal standard Duran believes was ignored by the trial
19   judge. (See Lodgment No. 18, People v. Duran, No. D047059, slip
20   op. at 6-11.) Because there was no constitutional violation, and
21   the state courts correctly applied Supreme Court law, the district
22   court should **DENY** Duran habeas relief based on the first ground
23   raised in his Amended Petition.
24
25
26
27
28

**2.   Ground Two:  Whether the Trial Court Erred in Failing to Conduct a Competency Hearing and Allowing Petitioner to Complete a _Lopez_ Waiver and Whether His Waiver Was "Knowing and Intelligent"**

a.   Sua sponte competency hearing

Duran claims that "the trial court abused its discretion in not ordering a competency hearing under [California Penal Code section] 1368 upon expressing that it entertained doubt of appellant's competence." (Am. Pet. Attach. #2, 34, ECF No. 15; Traverse Attach. #1 Mem. P. & A. 17, ECF No. 43); see also Cal. Penal Code § 1368 (West 2011) (discussing the procedure for a competency hearing).  Petitioner explains that the trial judge observed his behavior and heard his attorney's description of multiple difficulties during his office's representation of Duran. (Am. Pet. Attach. #2, 35, ECF No. 15.)

On August 20, 2004, after the preliminary hearing but before trial, Duran perceived that he had problems with his appointed counsel.  (Id. at 46-48.)  The trial court held a hearing in accordance with People v. Marsden, 2 Cal. 3d 118, 465 P.2d 44, 84 Cal. Rptr. 156 (1970).  (See Am. Pet. Attach. #2, 46, ECF No. 15); see also Marsden, 2 Cal. 3d at 126, 465 P.2d at 49, 84 Cal. Rptr. at 161 (holding that a defendant is deprived of his constitutional right to the effective assistance of counsel where a trial court denies a motion to substitute new counsel without giving the defendant an opportunity to state the reasons for his request).

Duran complained that he was being sexually harassed by his appointed attorney.  (Am. Pet. Attach. #2, 47-49, ECF No. 15.) During the hearing, the judge asked, "So it is not really anything to do with the quality or the nature of the representation that

he's giving you or the legal advice he's giving you?"  (Id. at 48.)

Petitioner added that there was a problem with representation.

(Id.)  He and his counsel had a disagreement over obtaining

discovery from the district attorney.  (Id.)  The court began to

question whether there was a breakdown in communication when the

attorney stated:

> Let me interrupt, your honor.  I am going to cut it
> short, and I'm going to ask you to relieve my office.  I
> am the third lawyer in my office that this case has been
> with.  Mr. Duran has had the same attitude with everyone
> in my office, and I would assume everyone in the public
> defender's office, the same kind of nonsense over and
> over again.  Let me just be frank.  I don't have time for
> it, and I would ask you to find that there is a breakdown
> in the attorney-client relationship and relieve my
> office.

(Id. at 50.)

The trial judge commented that Duran might seek to relieve the

next attorney appointed to represent him and stated, "He's getting

frustrated with any attorney.  Have we thought about 1368?"  (Id.)

Duran tried to assuage the judge's concern by explaining that two

of his prior counsel were relieved for reasons other than a

conflict with Duran.  (Id.)

Counsel stated that his caseload did not permit him to handle

Petitioner's case.  (Id. at 51.)  He added, "We just ran out of

people that could deal with Mr. Duran . . . ."  (Id.)  The attorney

described Duran as difficult and explained that his office

interviewed many witnesses for Petitioner, but "[h]e sent us on one

wild goose chase after another."  (Id.)

Duran responded, "They have no time for a technical case like

mine."  (Id. at 52.)  According to Petitioner, there was

circumstantial evidence to assemble, and his attorney failed to ask

the proper questions of the people who were interviewed.  (<u>Id.</u>)  He explained, "I needed my parole officers' photo copies of my automobile registration and insurance to show there was no motive for a carjacking."  (<u>Id.</u>)

The trial judge again asked, "Have you looked at 1368, considered it at all?"  The attorney replied, "I am not aware of any mental health history, and for that reason I have not considered it."  (<u>Id.</u>)  Duran volunteered, "Your honor, I am completely capable of understanding, and I am not asking for self-representation.  I think that would be a poor choice."  (<u>Id.</u>)  The trial judge told Petitioner that his trial date was approaching and changing attorneys may prevent him from being able to make another <u>Marsden</u> motion.  (<u>Id.</u> at 53-54.)  He also explained that Duran could hire his own attorney.  (<u>Id.</u> at 53.)  Ultimately, the court relieved the alternate public defender and appointed private conflicts counsel.  (<u>Id.</u> at 54.)

Just over two months later, on October 28, 2004, Duran decided to represent himself.  (<u>Id.</u> at 41.)  He told the court that he was a high school graduate with no legal education.  (<u>Id.</u>)  The judge asked why he wanted to represent himself, and Duran explained, "The complications of the case, the attorney doesn't seem to understand them.  I'm the one who understands them."  (<u>Id.</u>)  Duran claimed to understand the evidence code and when asked if he understood the penal code, he said, "If you give me the opportunity to represent myself, I can always do the research on it."  (<u>Id.</u> at 42.)

The judge advised Petitioner that he had a right to represent himself but that didn't make self-representation a good idea.  (<u>Id.</u>)  Duran countered, "I just think your honor, that I could get

the right information that I need that I haven't been able to get from several attorneys . . . ." (Id.) Duran confirmed that he understood opposing counsel went to law school, college, and had tried other cases. The judge asked Petitioner if he thought that was unfair. (Id.) Duran responded, "I think it's unfair that I have not had a proper defense." The judge analogized Duran's self-representation to him "stepping into a ring with a heavyweight fighter." (Id.) When asked if he thought he stood a chance, he responded, "Rocky won." (Id.)

Next, the judge asked Duran to complete the Lopez waiver and recessed to give him time to do so. (Id. at 43.) When the case was re-called, Duran had not initialed one paragraph on the form because he wanted more time to prepare for trial. (Id.) Petitioner asked for a ninety-day continuance, but the judge said, "I'm not here to sit here and negotiate with you as to the terms of your pro per status." (Id. at 44.)

Duran was asked, "Is there anything on the form you don't understand?" (Id.) He responded, "I need time." (Id.) The judge explained that he would give Duran time, just no more time than he would give a lawyer. (Id.) Duran asked for advisory counsel; the judge denied the request. (Id.) Petitioner asked for a legal runner; the judge again stated he would not negotiate with Petitioner, but he would appoint a legal runner and investigator. (Id. at 44-45.) At that time, Duran agreed that he understood everything on the form. (Id. at 45.)

Petitioner argues that this exchange shows that the court doubted Duran's competency to represent himself. (Id. at 35.) Specifically, the court "heard [Duran's] counsel's observation of

appellant's behavior with prior appointed counsel and [counsel's reference to the] 'same kind of nonsense over and over again.'" (<u>Id.</u>)  Petitioner concludes, "In effect, counsel stated defendant was incapable of cooperating with counsel in his own defense . . . ."  (<u>Id.</u>)  Duran argues that the trial judge should have ordered a competency hearing.  (<u>Id.</u>)  He also contends it was error for the trial court to take his <u>People v. Lopez</u> waiver without first evaluating his competency.  (<u>Id.</u> at 37.)

Respondent asserts there was no real doubt about Petitioner's competence; rather, "Duran was simply a malcontent whose dissatisfaction with multiple counsel smacked not of mental problems but of the sociopathology his long criminal record suggested."  (Answer Attach. #1 Mem. P. & A. 12, ECF No. 24.) Respondent adds, "Duran himself represented that he was capable of understanding."  (<u>Id.</u> at 18.)  Respondent also alleges that Duran understood the <u>Lopez</u> waiver; thus, there was no constitutional error.  (<u>Id.</u> at 14, 21.)

Duran included this issue in the petition for writ of habeas corpus he submitted to the California Supreme Court.  (Lodgment No. 21, <u>People v. Duran</u>, S161207 (petition for writ of habeas corpus).) The court summarily denied the petition.  (Supplemental Lodgment No. 1, <u>In re Duran</u>, S161207, order.)

"[W]hen the state court reaches a decision on the merits but provides no reasoning to support its conclusion[,] . . . [the federal habeas court] independently review[s] the record to determine whether the state court clearly erred in its application of Supreme Court law."  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).  "Federal habeas review is not de novo when the state

court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

Due process dictates that a trial court conduct a hearing to determine a defendant's competence to stand trial when confronted with evidence that raises a bona fide doubt as to mental competence. See Pate v. Robinson, 383 U.S. 375, 385 (1966). "A bona fide doubt exists if there is substantial evidence of incompetence, or substantial evidence that the defendant lacks 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or 'a rational as well as factual understanding of the proceedings against him.'" Williams v. Woodford, 384 F.3d 567, 604 (9th Cir. 2004) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam).) Relevant factors include "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." Drope v. Missouri, 420 U.S. 162, 180 (1975). The same competency standard applies when a defendant seeks to waive his right to the assistance of counsel. See Godinez v. Moran, 509 U.S. 389, 399-402 (1993) (distinguishing between competence and making a knowing and voluntary waiver).

From the exchanges described above, there is no doubt Petitioner was a demanding client. But there is no indication he lacked "'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and [that] he [lacked] a rational as well as factual understanding of the proceedings against him.'" See Dusky, 362 U.S. at 402.

During the August 20, 2004 <u>Marsden</u> hearing, Duran distinctly described his personal and professional problems with his prior attorneys. (Am. Pet. Attach. #2, 46-50, ECF No. 15.) Petitioner understood the difference between seeking new counsel and representing himself. (<u>Id.</u> at 52.) He comprehended the facts of his case and described the circumstantial evidence that he wanted to show that he had no motive for carjacking. (<u>Id.</u>) Moreover, Duran's behavior at the <u>Marsden</u> hearing was appropriate, his counsel expressed no doubt as to his client's competence, and Duran made no statements that would raise a bona fide doubt as to his mental competence. (<u>Id.</u> at 52-55.)

Although the trial judge asked defense counsel whether he had considered a competency hearing, the record does not contain substantial evidence of incompetence or show that the court had a bona fide doubt as to Duran's mental competence. Defense counsel was "not aware of any mental health history," and Duran assured the judge that he was "completely capable of understanding." (<u>Id.</u> at 52.)

Under the circumstances, the trial judge's failure to sua sponte conduct a competency hearing did not violate Duran's constitutional right to due process. In the end, the court granted Duran's <u>Marsden</u> motion and also granted the alternate public defender's request to be relieved as counsel for Duran because of "irreconcilable differences" between defendant and counsel.

The trial court proceedings were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. <u>See Drope v. Missouri</u>, 420 U.S. 180-82; <u>Pate v. Robinson</u>, 383 U.S. 385-86; <u>Dusky v. United States</u>, 362 U.S. at 402.

Therefore, the district court should **DENY** Duran's claim for habeas relief on this subclaim in ground two.

>    b.   Duran's *Faretta* waiver

Petitioner asserts that his waiver of the assistance of counsel was not knowing and intelligent because he was "not made fully aware of the risks and consequences of the maximum penalties involved." (Am. Pet. Attach. #2, 39, ECF No. 15.) As discussed above in Section IV(A) of this Report and Recommendation, this Court finds that at the October 28, 2004 <u>Faretta</u> hearing, Duran was accurately advised that he faced a maximum punishment of 20 years in prison if convicted of the charges alleged in the operative May 3, 2004 information.

In supplemental briefing after the case was remanded to this Court by the Ninth Circuit, Duran concedes that he was advised of the maximum sentence he faced on the charges alleged at the time of the <u>Faretta</u> hearing. (<u>See</u> Pet'r's Briefing Pursuant to Remand 15, ECF No. 77.) Petitioner argues his waiver of counsel was nonetheless unknowing and unintelligent because he was not advised of the possibility that the information could later be amended to expose him to a more severe sentence. He states, "What the courts require in a <u>Faretta</u> warning, however, is not an accounting of what the maximum *charged* penalties but the maximum *possible* penalties." (<u>Id</u>.) Petitioner contends his maximum sentence was "always life" based on the two prior strikes he had suffered and that "failure to properly advise [him at the <u>Faretta</u> hearing] of this most severe circumstance resulted in an unknowing and unintelligent waiver of counsel, which constitutes a Sixth Amendment violation." (<u>Id.</u> at 16.)

Petitioner further argues that when the information was amended on January 14, 2005, to allege the second strike, the court had a duty under <u>Faretta</u> to re-advise him of his right to counsel. (<u>Id.</u>)  Duran contends the record shows he "never understood he was facing a mandatory twenty-five to [l]ife if convicted." (Pet'r's Briefing Resp. Supplemental Lodging 13, ECF No. 99.)  He claims that because he was confused about his maximum exposure after the January 14, 2005 arraignment, his <u>Faretta</u> waiver was not knowing and voluntary. (<u>Id.</u> at 12-13.)

Respondent argues there is "no United States Supreme Court precedent requiring an advisement of potential penalties at all, much less the range of potential hypothetical penalties based on charges and allegations that may be but are not yet brought." (Resp't's Resp. Br. Second Supplemental Lodgment 10, ECF No. 103.) Moreover, he asserts there is no Supreme Court law requiring re-advisement of a right to counsel following a substantial chance in circumstances. (<u>Id.</u> at 16.)  Respondent contends the state court's determination that Duran's waiver of his right to counsel was knowing and voluntary was a reasonable application of clearly established law. (<u>Id.</u> at 14.)

Duran submitted this issue to the California Supreme Court.[5] (Lodgment No. 21, <u>People v. Duran</u>, S161207 (petition for writ of habeas corpus).)  The court summarily denied his habeas corpus

_____

[5] Although this Court initially construed Duran's argument to be that he was erroneously advised of the maximum penalty he faced, his argument, as presented in his petition to the California Supreme Court, the instant amended petition and traverse, can be liberally construed to include the assertion that failure to advise him of the maximum possible penalty if the information was amended, was a violation of his Sixth Amendment rights.  See <u>Maleng v. Cook</u>, 490 U.S. 488, 493 (1989) (stating that pro se petitions must be construed "with the deference to which pro se litigants are entitled").

petition.  (Supplemental Lodgment No. 1, <u>In re Duran</u>, S161207, order.)  "[W]hen the state court reaches a decision on the merits but provides no reasoning to support its conclusion[,] . . . [the federal habeas court] independently review[s] the record to determine whether the state court clearly erred in its application of Supreme Court law."  <u>Pirtle</u>, 313 F.3d at 1167; see <u>Delgado</u>, 223 F.3d at 982.

### (i) Clearly established federal law

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case the right to be represented by counsel.  <u>Faretta</u>, 422 U.S. at 807.  The Sixth and Fourteenth Amendments also guarantee a defendant the right to represent himself, but in order to invoke this right, a defendant must waive his Sixth Amendment right to counsel and the waiver must be "knowing, voluntary and intelligent."  <u>Iowa v. Tovar</u>, 541 U.S. 77, 88 (2004) (citing <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)).

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits.  Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

<u>Faretta</u>, 422 U.S. at 835 (citations omitted) (internal quotation marks omitted).  When a defendant elects to waive the right to be represented by trial counsel, "[w]arnings of the pitfalls of proceeding to trial without counsel . . . must be 'rigorous[ly]'

conveyed." Tovar, 541 U.S. at 89 (citing Patterson v. Illinois, 487 U.S. 285, 298 (1988)).

"Neither the Constitution nor Faretta compels the [court] to engage in a specific colloquy with the defendant." Lopez v. Thompson, 202 F.3d 1110, 1117 (9th Cir. 2000) "[Faretta] mandated no specific litany or formula to ensure that waivers of counsel are knowing and intelligent." Id. at 1119. Instead, the court examines the record as a whole to determine if the trial court made the defendant "'aware of the dangers and disadvantages of self-representation.'" Id. at 1117 (quoting Faretta, 422 U.S. at 835); see also Edwards v. Arizona, 451 U.S. 477, 482 (1981) (holding that a waiver of the right to counsel must be knowingly and intelligently made and "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused[]") (citations omitted) (internal quotation marks omitted).

> *(ii) Whether Petitioner's Faretta waiver on October 28, 2004 was knowing and voluntary*

As discussed above, at the October 28, 2004 Faretta hearing, Judge Fraser inquired about Duran's education and his understanding of the evidence and penal codes. (Lodgment No. 5, Rep.'s Augment[ed] Appeal Tr. vol. 1, 1-2.) He warned Duran that he would likely be at a disadvantage against an experienced attorney. (Id. at 2.) Duran completed a Lopez waiver form, which indicated the charges he faced and that he was exposed to twenty years in prison. Petitioner signed the waiver and initialed twelve separate paragraphs. (Lodgment No. 1, Clerk's Tr. vol. 1, 19-20.)

Among other things, the waiver advised that self-represented persons must follow substantive and procedural rules and would not be assisted by the judge; the prosecution would treat the self-represented as any other attorney; extra time for preparing for the case would not be granted; a self-represented defendant cannot claim incompetency of representation on appeal; and "self representation is almost always unwise." (Id.)  The judge asked Duran if there was anything on the Lopez waiver that he did not understand.  (Lodgment No. 5, Rep.'s Augment[ed] Appeal Tr. vol. 1, 5.)  Duran's only question was regarding a continuance to prepare for trial.  (Id.)

In Lopez, the court noted that, while not mandated, the suggested procedure for federal district courts accepting a waiver of the assistance of counsel was to discuss with the defendant "whether the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties and the dangers of self-representation."  202 F.3d at 1117 (citing United States v. Harris, 683 F.2d 322, 324 (9th Cir. 1982); United States v. Balough, 820 F.2d 1485, 1488 (9th Cir. 1987)).  But "[federal courts] cannot impose a procedural framework on state courts unles compelled by the Constitution. . . ."  Id.  Lopez was brought under § 2254; there, the court construed Faretta as a rule of general application requiring it to examine the "record as a whole."  (Id. at 1118.)

Here, at the October 28, 2004 Faretta hearing, Duran was accurately informed that he faced a maximum penalty of twenty years if convicted of the charges alleged in the information.  He was advised of the charges against him and that he would not be getting

special treatment as a pro per.   Judge Fraser also advised Duran
that he would likely be at a disadvantage against an experienced
prosecutor.   Duran elected to proceed without counsel.   Similarly,
in Lopez, the Ninth Circuit evaluated the record as a whole and
found no Faretta violation where Lopez was informed of the charges
and proceedings against him, the possible sentence that could be
imposed, and the dangers of self-representation.   See Lopez, 202 F.
3d at 1117.

Petitioner argues that, viewing the record as a whole, simply
informing him of the maximum penalty he could receive under the
operative information was misleading because the information could
be amended in the future to allege additional enhancements which
could lengthen his sentence.   (See Pet'r's Briefing Pursuant to
Remand 15, ECF No. 77.)   He points to the May 3, 2004 information,
which includes an allegation that Duran suffered a "prison prior"
for a 1991 conviction under California Penal Code section 487(3).
(Id.)   As discussed above, on January 13, 2005, more than two
months after Duran began representing himself, the information was
amended to allege that his conviction under California Penal Code
section 487(3) was a "strike" prior, thus exposing Duran to a
sentence of at least twenty-five years to life.   (Lodgment No. 1,
Clerk's Tr. vol. 1, 71-75.)

Petitioner claims that because the California Penal Code
section 487(3) conviction was identified on the May 3, 2004
information as a prison prior, "both the district attorney and
defense attorney were well aware of Mr. Duran's priors and his
exposure to a three strike[s] sentence of life."   (See Pet'r's
Briefing Pursuant to Remand 15, ECF No. 77.)   Duran concluded that

he should have been informed that there was a possibility that the information could be amended and a second strike could be alleged, thus exposing him to a possible life sentence.  (Id.)

First, it is far from clear that at the time of the Faretta hearing, the district attorney and defense counsel were "well aware" that Duran's 1991 conviction constituted a "strike."  The May 3, 2004 information showed only that Duran had been convicted in Los Angeles in 1991 of California Penal Code section 487(3).[6] Section 487 generally defines "grand theft."  See Cal. Penal Code § 487 (West 2010).  In 1991, section 487(3) stated that grand theft was committed when "the property taken is an automobile, firearm, horse, mare, gelding, any bovine animal, any caprine animal, mule, jack, jenny, sheep, lamb, hog, sow, boar, gilt, barrow or pig." Cal. Penal Code § 487(3) (West 1988).

The information did not include the factual basis for the conviction or identify whether the property taken was an automobile, firearm or other item.  Grand theft of an automobile is not a "serious felony" or "strike" under California Penal Code section 1192.7, while theft of a firearm is.  See Cal. Penal Code § 1192.7(c)(26) (West 2004).  Indeed, of the nineteen items listed in section 487(3), and the dozens of other types of grand theft defined in sections 487(1) and 487(2), only the grand theft of a firearm constitutes a "serious felony" that would qualify as a "strike."  See Penal Code § 1192.7(c).  Thus, the simple knowledge

---

[6] California Penal Code section 487 was renumbered in 1997 and section 487(3) became section 487(d).  (See Cal. Penal Code § 487(d) (West 1997). In 2002, section 487(d) was revised to separate theft of automobiles and livestock from theft of a firearm into different subsections. (See Cal. Penal Code § 487(d)(1), (2) (West 2002); see also 2002 Cal. Legis. Serv. Ch. 787 § 12 (S.B. 1798) (West).

1  that Duran had been convicted of violating section 487(3) in 1991

2  would not have been enough to establish that he was convicted of

3  theft of a firearm, and therefore not enough to establish he was

4  exposed to a potential sentence of twenty-five years to life.[7]

5      Petitioner points to no law to support the argument that

6  Faretta required that the trial court advise him that "the sentence

7  could be increased later or that the second prior alleged in the

8  information could later be charged as a second strike." (See

9  Pet'r's Reply Resp't's. Br. (ECF No. 103) 8, ECF No. 110.)  Even

10 assuming it was clear from the information that Duran's 1991

11 conviction could be charged as a strike prior, Petitioner provides

12 no authority which holds that a defendant must be advised of the

13 "possible penalties" beyond those he faced if convicted of the

14 charges alleged at the time of the waiver.

15      Duran instead cites several cases that discuss the Ninth

16 Circuit's "'preferred procedure' to ensure the validity of a

17 waiver'" which requires that the "defendant is made aware of (1)

18 the nature of the charges against him; (2) the possible penalties;

19 and (3) the dangers and disadvantages of self-representation."  See

20 United States v. Farhad, 190 F 3d. 1097, 1099 (9th Cir. 1999);

21 McCormack v. Adams, 621 F.3d 970, 977 (9th Cir. 2010). (See

22 Pet'r's Briefing Pursuant to Remand 15, ECF No. 77.)  None of the

23 cases cited by Petitioner stand for the proposition that more is

24 required than advisement of the maximum possible sentence for the

25

26      _____

27      [7] Ultimately, the prosecutor who took over the case on January 3, 2005, determined that Duran had been convicted of theft of a firearm by obtaining a copy of the change of plea transcript from Los Angeles Superior Court.

28 (See Lodgment No. 24, Rep.'s Tr. at 9; see also Lodgment No. 2, Clerk's Tr. vol. 2, 301-09.)

charged penalties.  See Farhad, 190 F.3d at 1098 (advising defendant he was charged with nineteen counts and informing him of the maximum penalty as to each count); McCormack, 621 F. 3d at 973 (ensuring defendant was aware of the maximum penalty he faced if "convicted on all charges"); United States v. Erskine, 355 F.3d at 1167 (holding waiver invalid when trial court erroneously advised defendant of his maximum exposure on the charged offense).

There is no clearly established law requiring the court advise a defendant of all possible future consequences.  See Patterson v. Illinois, 487 U.S. at 294 ("If [the defendant] . . . lacked 'a full and complete appreciation of all of the consequences' flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum.")  Here, the advice provided to Duran at the Faretta hearing more than satisfied the constitutional requirement.

Considering the record as a whole, the state court's conclusion that Duran's October 28, 2004 Faretta waiver was knowing and voluntary was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.  See Faretta, 422 U.S. at 835.

> *(iii)    The effect of the January 14, 2005 arraignment and subsequent proceedings on Petitioner's Faretta waiver*

In supplemental briefing, Duran argues that at his January 14, 2005 arraignment on the amended information, the trial court was required under Faretta to re-advise him of his right to counsel. (See Pet'r's Briefing Pursuant Remand 16-20, ECF No. 77.) Petitioner also contends that the transcripts of the January 14, 2005 hearing and subsequent proceedings show he did not understand

the penalties and proceedings and that, taken in conjunction with the court's "mistaken advisement" at the October 28, 2004, his *Faretta* waiver was invalid. (Pet'r's Briefing Resp. Supplemental Lodging 13, ECF No. 99.)

In *McCormick v. Adams*, 621 F.3d 970, 978 (9th Cir. 2010), the court concluded that McCormick's "initial *Faretta* waiver was knowing and voluntary [and] considere[ed] whether that waiver was nullified by subsequent events." It found the claim "untenable as a logical matter." *Id.* The Ninth Circuit explained, "If McCormick's waiver was subject to renewal at multiple pretrial hearings, the trial court would be required to determine that his waiver was knowing and voluntary at each relevant appearance. But this is not the law: The validity of a *Faretta* waiver is typically assessed at the time it is entered." *Id.*; *see also* *United States v. Erskine*, 355 F.3d 1161, 1169 (9th Cir. 2004) (discussing the validity of a *Faretta* waiver as an inquiry about "what the defendant understood *at the particular stage of the proceedings at which he purportedly waived his right to counsel[]*").

At the same time, some appellate courts have suggested that a substantial change in circumstances may require revisiting a *Faretta* waiver. *See* *United States v. Hantzis*, 625 F.3d 575, 580–81 (9th Cir. 2010) ("A properly conducted *Faretta* colloquy need not be renewed in subsequent proceedings unless intervening events substantially change the circumstances existing at the time of the initial colloquy."); *see also* *United States v. Fazzini*, 871 F.2d 635, 643 (7th Cir. 1989) ("Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial

change in circumstances will require the district court to inquire whether the defendant wishes to revoke his earlier waiver.")

There is, however, no Supreme Court law requiring the re-advisement of a right to counsel following a substantial change in circumstances once a valid _Faretta_ waiver has been made.  _Becker v. Martel_, 472 Fed. App'x 823, 824 (9th Cir. 2012).  In _Becker_, the Ninth Circuit concluded that "[b]ecause the Supreme Court has not squarely established that, after a valid _Faretta_ waiver, criminal defendants must be re-advised of the right to counsel following the addition of new charges against them, the California Court's [denial of the claim] was not unreasonable."  _Id._  The absence of Supreme Court holdings on the issue precludes relief under 28 U.S.C. § 2254(d)(1).  _See Carey v. Musladin_, 549 U.S. 70, 77 (2006); _see also_ _Moses v. Payne_, 555 F.3d 742, 754 (9th Cir. 2009) ("[W]hen a Supreme Court decision does not 'squarely address[]' the issue in th[e] case . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue . . . , and so [a federal habeas court] must defer to the state court's decision.")  Thus, because there is no clearly established on this issue, the state court's decision cannot be contrary to, or an unreasonable application of, clearly established federal law.  _Becker_, 472 Fed. App'x at 824; _see Carey_, 549 U.S. at 77.[8]

---

[8]   It appears Petitioner may have conceded this issue in later supplemental briefing.  (_See_ Pet'r's Briefing Resp. Supplemental Lodging, 9, ECF No. 99 ("While Mr. Duran believes the trial court should have re-advised him of his right to counsel [at the January 14, 2005 hearing], that is not the error.")) Petitioner continues, "The error is that the court initially mistakenly advised Mr. Duran that the maximum sentence was twenty years and later when the additional strike was charged . . . failed to

Furthermore, even assuming <u>Faretta's</u> general rule is sufficiently established to encompass Duran's claim, he would not be entitled to relief.  State courts have significant "leeway" in applying general rules, such as <u>Faretta's</u> requirement that waiver be "voluntary and intelligent."  <u>See</u> <u>Richter v. Harrington</u>, 562 U.S. 86, ___, 131 S. Ct. 770, 786 (2011) (stating "'[t]he more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations[]'") (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)).

Although the trial judge did not explicitly re-advise Duran of his right to counsel at the January 14, 2005 hearing, he did make it clear that Petitioner was facing an additional strike and a maximum sentence of twenty-five years to life, if not more. (Lodgment No. 24, Rep.'s Augment[ed] Tr. 7.)  The judge encouraged Duran to consult with his attorney in Duran's other pending criminal case.  (<u>Id.</u> at 6-7, 9.)  When Duran expressed confusion over the change in the Penal Code section, the judge explained that it did not change the fact that theft of a firearm qualified as a strike.  (<u>Id.</u> at 9.)  The prosecutor pointed to the specific Penal Code section which listed "theft of a firearm" as a "serious felony."  (<u>Id.</u>)  In light of the advisements given Duran during his arraignment, this Court cannot say the supreme state court's denial of Duran's <u>Faretta</u> claim was contrary to, or an unreasonable application of <u>Faretta</u>.  <u>See</u> <u>Harrington</u>, 562 U.S. at ___, 131 S. Ct. at 786.

ensure that Mr. Duran understood what was happening and wanted to continue pro per."  (<u>Id.</u>)

1     Petitioner also argues he was denied the opportunity to

2   request counsel after he expressed frustration and stated he was

3   being "bamboozled," during pretrial proceedings on January 25,

4   2005.  This, Duran contends, coupled with his confusion about the

5   maximum sentence following his arraignment on the amended

6   information, rendered his <u>Faretta</u> waiver unknowing and

7   unintelligent.  (<u>See</u> Pet'r's Br. Resp. Supplemental Lodging 12-13,

8   ECF No. 99.)

9     A motions in limine hearing and Duran's trial were set for

10  January 24, 2015.  (Lodgment No. 2, Clerk's Tr. 341-42.05 (mins.).)

11  The prosecutor requested that the trial be continued one day to

12  January 25, 2005, to locate a witness.  (<u>Id.</u> at 342.05.)  The

13  following day, the prosecution requested a further continuance of

14  the trial and additional time to locate the witness.  (Lodgment No.

15  9, Rep.'s Appeal Tr. vol. 5, 330-31.)  Duran objected that the

16  prosecutor had not shown due diligence.  (<u>Id.</u> at 331-32.)  He

17  remarked that he was not an attorney; Judge Edwards interjected,

18  "You're doing a pretty good job."  (<u>Id.</u> at 332.)  The judge

19  explained that under the state's speedy trial provision, the

20  prosecution could have up February 2nd to locate the witness or

21  show due diligence to be able to use the preliminary hearing

22  testimony. (<u>Id.</u> at 339-40, 345.)  Duran was frustrated with the

23  delay of his trial.  He stated, "Like I've stated before, I don't

24  know the law, and I feel that I'm being taken advantage of,

25  bamboozled.  I'm not accusing the court of being party to that."

26  (<u>Id.</u> at 341.)  In context, Petitioner's comment was an expression

27  of his disappointment with the ruling.

28

Judge Edwards responded that he would give Duran some time to research the matter if he wanted to show the judge's ruling was incorrect.  Duran replied that he "couldn't even tell you where to start to look for something like that." (<u>Id.</u>)  Judge Edwards then reminded Duran of his <u>Lopez</u> waiver and reiterated the portions which advise that a self-represented defendant will be treated the same as any attorney and will be governed by the same rules that govern any attorney. (<u>Id.</u> at 343-44.)  The judge's reference to Duran's <u>Lopez</u> waiver was a reminder that pro se litigants are treated as attorneys.

After this, argument on due diligence and other matters resumed.  Duran argued that his trial should not be continued beyond January 25 to allow the prosecutor to locate a witness when the court already ruled on January 24 that due diligence for using the preliminary hearing transcript had not been shown. (<u>Id.</u> at 345-46.)  Petitioner pointed out that the prosecutor and his investigator were experienced, (<u>id.</u> at 349), and the absent witness was "cumulative," (<u>id.</u> at 350).  Duran moved to exclude witnesses, reports, (<u>id.</u> at 387-90) and sunglasses worn by the suspect (<u>id.</u> at 391).  Indeed, Duran understood the downside of representing himself. "It's not that I'm ignorant. It's not that I made a bad choice to proceed in self-representation.  I just don't understand all the rules of the game, and one gets frustrated." (<u>Id.</u> at 347.)

Finally, Petitioner's claim he "never understood he was facing a mandatory twenty-five to life if convicted," is contradicted by the record.  At the same January 25, 2005 hearing, when Duran was arguing he would be prejudiced by the delay, he stated "when somebody's facing 34 years to life for something he can – something

he did not do, he's physically impossible – it was physically impossible for me to have done." (_Id._ at 356.)  Shortly after, he argued that allowing the prosecutor six days to search for the witness "is not going to outweigh 34 years to life." (_Id._ at 357.) Thus, the record indicates that Duran did indeed understand he was facing a possible life sentence after his arraignment on the amended information.

*(iv) Conclusion*

Viewing the record as a whole, the state court's denial of Petitioner's claim that his October 28, 2004 waiver of counsel was not knowing and intelligent was neither contrary to, nor an unreasonable application of, clearly established law.  _See_ _Faretta_, 422 U.S. at 835.  Moreover, nothing that occurred at the January 14, 2005 arraignment or during subsequent proceedings altered the validity of Duran's _Faretta_ waiver.  The state court's denial of Duran's claim that his October 28, 2004 _Faretta_ waiver was invalid was neither contrary to, nor an unreasonable application of, clearly established law.  _Id._; _see also_ _Carey_, 549 U.S. at 77. Additionally, because there is no clearly established Supreme Court law that a substantial change in circumstances invalidates a _Faretta_ waiver that was valid when given, this subclaim also fails. _See_ _Becker v. Martel_, 472 Fed. App'x at 824. The district court should **DENY** Duran's claim for relief on this subclaim of ground two.

> **3.   Ground Three:   Whether Duran Received Ineffective Assistance of Counsel**

In ground three of his Amended Petition, Duran argues that he received ineffective assistance of counsel on two separate

occasions.  (Am. Pet. Attach. #2, 67, ECF No. 15; Traverse Attach. #1 Mem. P. & A. 32, ECF No. 43.)  First, Duran states, "Counsel was ineffective in that he failed to conduct a careful investigation concerning the mental capacity of [petitioner]."  (Am. Pet. Attach. #2, 68, ECF No. 15.)  Second, Duran contends, "During the signing of the <u>Lopez</u> waiver appointed counsel did not inform [Petitioner] of the maximum penalties upon conviction."  (<u>Id.</u> at 70.)  Further, "[Petitioner] sought a ruling on ineffective assistance of counsel, which the trial court did not rule on."  (<u>Id.</u> at 72.)

In supplemental briefing after this case was remanded to this Court by the Ninth Circuit Court of Appeals, Petitioner also argues he received ineffective assistance of counsel during plea bargaining.  (<u>See</u> Pet'r's Br. Resp. Supplemental Lodging 20-22, ECF No. 99; <u>see also</u> Pet'r's Reply to Doc. 113 [Resp't's Br.] 6-14, ECF No. 116.)  He asserts that he would have accepted an plea offer of "15 stip." had he known he was facing a potential life sentence.  (<u>See</u> Pet'r's Reply to Doc. 113 [Resp't's Br.] 12-13, ECF No. 116.)

Respondent argues, "None of the alleged inadequacies Duran asserts truly demonstrate that Duran's counsel was ineffective." (Answer Mem. P. & A. 24, ECF No. 24.)  First, "Duran's counsel had no cause to move for the court to conduct a competency hearing." (<u>Id.</u>)  Therefore, Duran's attorney's failure to do so cannot be the basis of an ineffective assistance of counsel claim.  Second, "it was not necessary under <u>Faretta</u> for Duran to have been informed of a specific maximum sentence.  All that was required was that Duran understand the serious consequences of his decision to represent himself."  (<u>Id.</u>)  Respondent argues that there was no prejudice from the court failing to rule on an ineffectiveness claim, because

the claimed ineffectiveness stemmed from Duran's self-representation.  (Id.)

Finally, as to Duran's claim of ineffective assistance of counsel during plea bargaining, Respondent argues the claim is unexhausted.  (See Resp't's Resp. Br. Second Supplemental Lodgment 18-19, ECF No. 103.)  In addition, Respondent contends Petitioner has presented no evidence regarding any plea discussions pertaining to a fifteen-year offer.  (Resp't's Br., Jan. 25, 2014, 8-9, ECF No. 113.)  Further, Duran cannot show prejudice because after he began representing himself, he rejected an offer of eight years. Thus, he would not have accepted a fifteen-year offer.  (See id. at 9-10.)

For ineffective assistance of counsel to provide a basis for habeas relief, Duran must successfully meet a two-prong test. Strickland v. Washington, 466 U.S. 668, 687 (1984).  First, he must show that counsel's performance was deficient.  Id. at 687.  "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  "Review of counsel's conduct is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." Hensley v. Crist, 67 F.3d 181, 184 (9th Cir. 1995) (citation omitted); see Strickland, 466 U.S. at 689.

Second, Petitioner must establish that counsel's deficient performance prejudiced his defense.  Strickland, 466 U.S. at 687. This requires a showing that counsel's errors were so serious they deprived Duran "of a fair trial, a trial whose result is reliable." Id.  To satisfy the test's second prong, Petitioner must show a

reasonable probability that the result of the proceeding would have been different but for the error. Williams v. Taylor, 529 U.S. at 406; Strickland, 466 U.S. at 694. A reviewing court "need not decide whether counsel's performance was deficient when the claim of ineffectiveness may be rejected for lack of prejudice." Jackson v. Calderon, 211 F.3d 1148, 1155 n.3 (9th Cir. 2000) (citing Strickland, 466 U.S. at 697).

a.   Failure to investigate competency

Duran raised this issue in the petition for writ of habeas corpus he filed with the California Supreme Court. (Lodgment No. 21, People v. Duran, S161207 (petition for writ of habeas corpus).) The California Supreme Court summarily denied his petition. (Supplemental Lodgment No. 1, In re Duran, S161207, order.) Here again, because "the state court reach[ed] a decision on the merits but provide[d] no reasoning to support its conclusion[,] . . . [the federal habeas court] independently review[s] the record to determine whether the state court clearly erred in its application of Supreme Court law." Pirtle, 313 F.3d at 1167.

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690.

Duran claims that after first-hand observation, and the trial court's questions regarding competency, his attorney should have requested a competency hearing. (Am. Pet. Attach. #2, 69, ECF No. 15; Traverse Attach. #1 Mem. P. & A. 37, ECF No. 43.) In a similar factual setting, the Third Circuit concluded that the petitioner had not established ineffective assistance of trial counsel.

> Counsel's failure to request a competency hearing would give rise to an ineffective assistance claim if there were "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered."

Karenbauer v. Beard, No. 09-1770, 2010 U.S. App. LEXIS 16858, at *19-20 (3d Cir. Aug. 12, 2010) (quoting Taylor v. Horn, 504 F.3d 416, 438 (3d Cir. 2007)).

Duran's attorney stated he was "not aware of any mental health history . . . ." (Am. Pet. Attach. #2, 52, ECF No. 15.) As discussed above, the Court has found that, given the information before the trial court, its failure to sua sponte order a competency hearing did not constitute a constitutional violation. Counsel's decision not to request a competency hearing was objectively reasonable in light of the circumstances. See Karenbauer, No. 09-1770, 2010 U.S. App. LEXIS 16858, at *20. Duran cannot satisfy the first prong of the two-prong test in Strickland.

Duran argues that counsel's failure to investigate his mental health history "deprived [him] of a clearly available avenue of defense." (Am. Pet. Attach. #2, 69, ECF No. 15; Traverse Attach. #1 Mem. P. & A. 37, ECF No. 43.) Petitioner does not identify the defense, and he does not allege that he was mentally incompetent.

He merely contends his attorney was ineffective for failing to investigate Duran's mental history.  (Am. Pet. Attach. #2, 69, ECF No. 15.)

Even if the failure to request a competency hearing or further investigate Petitioner's mental history was not objectively reasonable, Duran has not established ineffective assistance of counsel.  "[He] has failed to show prejudice under Strickland's second prong because he cannot demonstrate a reasonable probability that he would have been found incompetent if only his attorney had asked for a hearing."  Karenbauer, No. 09-1770, 2010 U.S. App. LEXIS 16858, at *20 (citing Taylor v. Horn, 504 F.3d at 439); accord Grant v. Brown, 312 F. App'x 71, 73 (9th Cir. 2009) (citing Strickland, 466 U.S. at 694) ("Because we conclude that Grant has not been shown to be incompetent at the time of trial, Grant has failed to demonstrate a 'reasonable probability' that the 'result of the proceedings' would have been different but for his attorney's purported failures.").

After an independent review of the record, the Court concludes that Duran has not shown that he suffered any prejudice.  As a result, Petitioner's counsel was not constitutionally ineffective, and the California Supreme Court's decision denying habeas relief was not contrary to, or an unreasonable application of, Supreme Court precedent.  See Strickland, 466 U.S. at 687, 697.  The district court should **DENY** this aspect of Duran's ineffective assistance claim.

b.   Ineffective assistance in connection with the *Lopez* waiver

Duran claims he received of ineffective assistance of counsel when his attorney informed him of the maximum punishment indicated on the Lopez waiver form. (Am. Pet. Attach. #2 Mem. P. & A. 70, ECF No. 15.) Duran signed a waiver form that stated maximum prison term twenty years. (Lodgment No. 1, Clerk's Tr. vol. 1, 19-20.) Petitioner complains that his attorney's failure to inform him "that he was facing 40 years to life, as opposed to only 20 years" constitutes ineffective assistance. (Am. Pet. Attach. #2 Mem. P. & A. 70 at 70-71.) He claims that he was prejudiced because "his decision to represent himself was not 'knowing and voluntary.'" (Id. at 71.)

Duran raised this issue in the petition for writ of habeas corpus he filed with the California Supreme Court. (Lodgment No. 21, People v. Duran, S161207 (petition for writ of habeas corpus).) The California Supreme Court summarily denied his petition. (Supplemental Lodgment No. 1, In re Duran, S161207, order.) Because "the state court reach[ed] a decision on the merits but provide[d] no reasoning to support its conclusion[,] . . . [the federal habeas court] independently review[s] the record to determine whether the state court clearly erred in its application of Supreme Court law." Pirtle, 313 F.3d at 1167.

At the Faretta hearing, Duran filled out the Lopez waiver form that identified the offenses charged and the maximum punishment that could be imposed if convicted of those offenses. (See Lodgment No. 5, Rep.'s Augment[ed] Appeal Tr. vol. 1, 2-3; Lodgment No. 1, Clerk's Tr. vol. 1, 19.) The maximum punishment was listed

at twenty years.   Duran acknowledges that this information was accurate.   (Pet'r's Briefing Pursuant Remand 11-12, ECF No. 77.)   Defense counsel did not provide ineffective assistance in connection with the Lopez waiver.   See Strickland, 466 U.S. at 687.

Furthermore, Petitioner has not shown prejudice.   His claim that he would not have waived counsel had he known he was exposed to a life sentence is undermined by the record.   When Duran was arraigned on the amended information on January 14, 2005, and notified that he was facing twenty-five years to life, and possibly more, he gave no indication that he sought the assistance of counsel.   (See Lodgment No. 24, Rep.'s Tr., Arraignment 2-10.)   On January 25, 2005, it was clear that Duran knew he was facing "34 years to life," (see Lodgment No. 9, Rep.'s Appeal Tr. vol. 5, 356-57).   Moreover, the evidence against him was substantial.   The victim identified him as the carjacker in a photo line-up and at trial.   (Lodgment No. 10, Rep's Appeal Tr. vol. 6, 467, 453, 469-70.)   There is no reasonable probability that the result would have been different had he been represented by counsel at trial.[9] See Strickland, 466 U.S. at 694.

---

[9] In supplemental briefing, Duran appears to argue he was prejudiced because he would not have waived counsel had he known his exposure was to twenty-five years to life and therefore he would have accepted the prosecutor's plea offer of fifteen years or later offer of eight years. (See Pet'r's Briefing Resp. Supplemental Lodging 19, ECF No. 99.)   This argument was not raised in the Amended Petition and not raised in the California Supreme Court.   In addition, at the time the eight-year offer was made, Duran was acting as his own counsel.   (See Lodgment No. 24 Rep.'s Tr., Arraignment, 6.)   Therefore, he was responsible for evaluating the terms of the plea offer and his decision to reject the offer rested solely on him. "[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to denial of 'effective assistance of counsel.'" Savage v. Estelle, 924 F.2d 1459, 1466 (9th Cir. 1990) (quoting Faretta, 422 U.S. at 834-35 n. 46).

1   Because defense counsel's performance was not deficient and

2   Petitioner suffered no prejudice, the district court should **DENY**

3   habeas relief based on this subclaim in ground three of the Amended

4   Petition.

5           c.   A Ruling on the Ineffective Assistance Claim

6   Duran claims the trial court improperly failed to rule on his

7   ineffective assistance of counsel claim.  (Am. Pet. Attach. #2, 72,

8   ECF No. 15.)  Duran raised this issue in the petition for writ of

9   habeas corpus he filed with the California Supreme Court.

10  (Lodgment No. 21, People v. Duran, S161207 (petition for writ of

11  habeas corpus).)  The California Supreme Court summarily denied his

12  petition.  (Supplemental Lodgment No. 1, In re Duran, S161207,

13  order.)  Because "the state court reach[ed] a decision on the

14  merits but provide[d] no reasoning to support its conclusion[,]

15  . . . [the federal habeas court] independently review[s] the record

16  to determine whether the state court clearly erred in its

17  application of Supreme Court law."  Pirtle, 313 F.3d at 1167.

18  After Duran was convicted, he requested appointed counsel to

19  represent him for the purpose of sentencing.  (Lodgment No. 14,

20  Rep.'s Tr. Appeal-Augment vol. 3, 33, 40-41, Mar. 8, 2005.)

21  Duran's attorney filed a motion for a new trial.  (Lodgment No. 2,

22  Clerk's Tr. vol. 2, 231; Lodgment No. 13, Rep.'s Appeal Tr. vol. 9,

23  717, Aug. 16, 2005.)  In footnote one to the new trial motion,

24  Duran's attorney wrote:

25          In this motion the Defendant does not waive any
        claim of ineffective assistance of counsel, despite the
26      In Pro Per status of the Defendant at the time of trial,
        as it pertains to any finding of failure to call
27      witnesses, or seek a continuance to subpoena witnesses
        and alternatively seeks a ruling.

28

(Lodgment No. 2, Clerk's Tr. vol. 2, 240.)  This footnote is not entirely clear.  It appears that Duran was seeking to preserve an appellate right to complain that he received ineffective assistance during the time he represented himself.

If Petitioner's claim is that the trial court failed to rule on his argument that Petitioner received ineffective assistance of counsel as a result of his self-representation, this argument fails.  <u>Faretta</u>, 422 U.S. at 835 n.46 (noting that when a criminal defendant elects to represent himself, he waives his right to complain of ineffective assistance of counsel).  Thus, there is no prejudice to Duran if the trial court failed to rule on this issue.

Petitioner also argues that his appellate counsel was ineffective because she did not raise the trial court's failure to rule on the ineffective assistance claim.  (Am. Pet. Attach. #2, 72, ECF No. 15.)  As explained above, Duran is precluded from arguing ineffective assistance of counsel for the period of self-representation, and there is no basis for habeas relief for the alleged ineffective assistance of his appointed counsel.  Because there is no merit to either claim, Duran's appellate counsel was not ineffective in choosing not to raise them.  <u>See</u> <u>Adams v. Lewis</u>, 42 Fed. App'x 1, 9 (9th Cir. 2002).

For all these reasons, the district court should **DENY** the ineffective assistance of trial and appellate counsel claims contained in ground three of Duran's Amended Petition.

        d.   <u>Ineffective assistance of counsel during plea bargaining</u>

In supplemental briefing after the case was remanded by the Ninth Circuit, Petitioner, now represented by counsel, claims he

received ineffective assistance of counsel during plea

negotiations.  (See Pet'r's Briefing Pursuant Remand 21, ECF No.

77.)  He alleges:

> According to the transcript at the Faretta hearing,
> the pre-trial plea offer was a 'stip 15,' i.e., a
> stipulated sentence of fifteen years.  However, at the
> time that Mr. Duran was offered this "stip. 15" deal, he
> was also told that the maximum sentence he could receive
> was twenty years.  Thus, Mr. Duran was led to believe
> that if it turned down the plea offer, went to trial and
> lost, he would only serve an additional five years. . . .
> As it turned out, by turning down the deal, he subjected
> himself to a Life sentence . . . .

(Id. at 20-21 (citation omitted).)  He alleges this claim was

included in his amended petition and was overlooked by this Court

when it issued its October 22, 2010 Report and Recommendation.

(Id. at 21-22.)  Duran requests permission to renew this claim.

(Id. at 20.)

   He further argues this Court failed to consider "the prejudice

that Mr. Duran was denied the opportunity to evaluate the true

significance of either the 'stip 15' or the later offer of 8 years

because he did not know, at the time of those offers, that he could

face a mandatory 25 to Life if convicted."  (Pet'r's Briefing Resp.

Supplemental Lodging 19, ECF No. 99.)

> *(i)  Whether the claim was raised in the Amended
>         Petition*

   On remand, the Ninth Circuit directed this Court to issue a

ruling on "all of the claims in Duran's amended habeas petition."

(Duran v. Cate, order at 3, ECF No. 75.)  Thus, the first question

is whether Petitioner's claim that he received ineffective

assistance of counsel during plea negotiations was presented to the

Court.

In his Amended Petition, Duran claims that "during signing of the <u>Lopez</u> waiver by appellant, assigned private conflicts counsel informed appellant by having him initial No. 2 on the form, that the maximum punishment was 20 years.  On August 16, 2005, appellant was sentenced to 40 years to life." (Am. Pet. Attach. #2 Mem. P. & A. 67, ECF No. 15.)  Petitioner argues, "During the signing of the <u>Lopez</u> waiver appointed counsel did not inform appellant of the maximum penalties upon conviction." (<u>Id.</u> at 70.)  He goes on to state that "[s]urely, a defendant would need to know that he was facing 40 years to life, as opposed to only 20 years." (<u>Id.</u> t 70-71.)  Finally he alleges he was prejudiced "in that his decision to represent himself was not 'knowing and voluntary.'" (<u>Id.</u> at 71.) Nowhere in the Amended Petition is there any mention of a plea offer, plea negotiations, or advice defense counsel gave Duran regarding a potential plea.

Likewise, in his Traverse, Petitioner argues that defense counsel misinformed him about his maximum exposure "thereby, [he] did not make a knowing and intelligent choice in signing of the <u>Lopez</u> waiver." (Traverse Attach. #1 Mem. P. & A. 36, ECF No. 43.) Duran states that "[t]he purpose of 'knowing and voluntary' inquiry is to determine whether the defendant actually does understand the significance and consequences of a particular decision . . . . [Petitioner] waived counsel with the understanding that the record makes clear, he would receive 20 years maximum if convicted." (<u>Id.</u> at 38.)

Both Duran's Amended Petition and Traverse raise a claim that ineffective assistance of counsel rendered his <u>Lopez</u> waiver

involuntary.  Neither pleading refers to plea negotiations or advice from defense counsel about possible plea bargains.

Under section 2254, a petitioner is required to allege facts "with sufficient specificity to support his claim for relief." Wacht v. Cardwell, 604 F.2d 1245, 1246 (9th Cir. 1979).  The petition should allow the court to determine "from the face of the petition alone, whether the petition merits further habeas corpus review."  Adams v. Armontrout, 897 F.2d 332, 334 (8th Cir. 1990). Here, none of the facts discussed in supplemental briefing regarding purported plea negotiations are presented in the amended petition.  Petitioner does not describe any negotiations leading to an offer of fifteen years.[10] And there is no mention of the subsequent eight year offer made to Duran, and rejected by him, while he was representing himself.  (See Lodgment No. 24, Rep.'s Tr. Arraignment 5-6.)  Furthermore, in supplemental briefing addressing the merits of this claim, Duran's attorney does not identify where in the Amended Petition the claim is alleged.  (See Pet'r's Briefing Pursuant Remand 21-22, ECF No. 77; Pet'r's Briefing Resp. Supplemental Lodging 17-23, ECF No. 99; Pet'r's Reply to Doc. 113 [Resp't's Br.] 6-10, ECF No. 116.)

While this Court must construe pro se habeas filings liberally, see Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005), when there is simply no allegation in the Amended Petition

---

[10] Portions of the reporter's transcript is attached to the Amended Petition, including the transcript of the Faretta hearing.  (Amend. Pet. Attach #2, 73-80, ECF No. 15.)  In that transcript, Judge Fraser makes a vague reference to the last offer of "15 stip." (Id. at 77.)  The Court, however, is not required to sift through the state court records of habeas petitioners to determine whether sufficient facts exist to support an additional unraised claim for relief.  See Adams, 897 F.2d at 333.

that plea negotiations even took place, it is impossible to "liberally construe" the pleading to include a claim that defense counsel was ineffective during plea bargaining.  This Court therefore concludes that the issue of ineffective counsel during plea negotiations was not included in the Amended Petition.

The Ninth Circuit Court of Appeals directed this Court to rule on the claims in the Amended Petition.  Because this issue was not raised there, the Court declines to address it on remand.  Cf. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (stating that court may ignore issue raised for first time in traverse); see also Brown v. Roe, 279 F.3d 742, 744 (9th Cir. 2002) (holding that district court has discretion whether to consider evidence presented for the first time in objections to a report and recommendation).

*(ii) Whether the claim was exhausted in state court*

Even assuming the claim was raised in the Amended Petition, Respondent argues it has not been exhausted in state court. (Resp't's Resp. Br. to Second Supplemental Lodgment 18-19, ECF No. 103.)  Before a state prisoner may challenge his state conviction in federal court by way of a federal habeas petition, he must first exhaust his federal grounds for relief in state court.  28 U.S.C. § 2254(b); see also Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam).  To satisfy the exhaustion requirement, a petitioner must "fairly present" his federal claims to the state courts, "to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Duncan, 513 U.S. at 365 (citations omitted) (internal quotation marks omitted).

To "fairly present" a federal claim to the state's highest court, the petitioner must alert that court to the claim in the brief or petition presented to that court. <u>Baldwin v. Reese</u>, 541 U.S. 27, 31-32 (2004). The petitioner must describe both the federal legal theory and the operative facts to the state court so that it has a "'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (per curiam) (citation omitted); <u>see also</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971); <u>Tamalini v. Stewart</u>, 249 F.3d 895, 898 (9th Cir. 2001). A petitioner does not ordinarily fairly present a federal claim to a state court if that court must read beyond a petition, brief, or similar papers to find material that will alert it to the presence of a federal claim. <u>Baldwin</u>, 541 U.S. at 32-33.

In Duran's habeas corpus petition filed in the California Supreme Court, he alleged, "Appointed counsel, during the signing of the waiver of counsel, did not inform appellant fully of the maximum penalties upon conviction, denying him effective assistance of counsel." (Lodgment No. 21, <u>People v. Duran</u>, S161207 at 30.[11]) He argues that counsel indicated on the <u>Lopez</u> waiver form that his maximum exposure was twenty years and he was ultimately sentenced to forty years to life. (<u>Id.</u> at 30-31.) The state petition does not mention any plea negotiations or plea offers that were considered or rejected. The state courts could not consider a claim of ineffective assistance of counsel regarding plea negotiations without any factual allegations to support it.

_____

[11] The petition was not originally paginated. The Court has therefore paginated it consecutively.

Petitioner now argues that while he was represented by counsel, his attorney's performance was deficient because his attorney failed to advise him of his exposure to twenty-five years to life, citing numerous cases concerning ineffective assistance of counsel during plea negotiations. (See Pet'r's Reply to Doc. 113 [Resp't's Br.] 6-10, ECF No. 116. Duran argues he suffered prejudice because he would have accepted the fifteen-year offer had he known he could be charged with another strike. (Id. at 11-14.) None of these facts or allegations are presented in the petition to the state court.

Petitioner presented other claims of ineffective assistance of counsel, but that does not exhaust other distinct ineffective assistance of counsel claims. Moormann v. Schriro, 426 F.3d 1044, 1056 (9th Cir. 2005) ("This does not mean, however, that a petitioner who presented any ineffective assistance of counsel claim below can later add unrelated alleged instances of counsel's ineffectiveness to his claim."); see also Rose v. Palmateer, 395 F.3d 1108, 1112 (9th Cir. 2005) (claim of ineffective assistance of counsel not fairly presented to state courts even though "admittedly related" to other, exhausted claims of ineffective assistance because they were "distinct claims with separate elements of proof" which should have been "separately and specifically presented to the state courts[]"). In his petition to the California Supreme Court, Duran failed to allege the claim of ineffective assistance of counsel during plea negotiations.

Where a claim has not been presented to the state's highest court, a petitioner may nonetheless show that he has "technically exhausted" the claim, if he no longer has state court remedies

1   available to him.  Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir.

2   2007) (en banc) ("The Supreme Court has noted that '[a] habeas

3   petitioner who has defaulted his federal claims in state court

4   meets the technical requirements for exhaustion; there are no state

5   remedies any longer "available" to him.'") (quoting Coleman v.

6   Thompson, 501 U.S. 722, 732 (1991)); see Cassett v. Stewart, 406

7   F.3d 614, 621 n.5 (9th Cir. 2005).

8        Here, based on California's rule barring untimely petitions

9   for post-conviction relief, which the United States Supreme Court

10  has found to be clearly established and consistently applied,

11  Petitioner no longer has state court remedies available with

12  respect to this claim.  See Walker v. Martin, 562 U.S. __, 131 S.

13  Ct. 1120, 1125-31 (2011) (holding that California's timeliness

14  requirement providing that a prisoner must seek habeas relief

15  without "substantial delay" as "measured from the time the

16  petitioner or counsel knew, or should reasonably have known, of the

17  information offered in support of the claim and the legal basis for

18  the claim," is clearly established and consistently applied)

19  (citing In re Robbins, 18 Cal.4th 770, 805, 77 Cal. Rptr. 2d 153

20  (1998) (holding that a habeas claim "that is substantially delayed"

21  will not be considered unless "the petitioner can demonstrate 'good

22  cause' for the delay.")).  The Court therefore concludes Duran's

23  new claim is technically exhausted.  See Cassett, 406 F.3d at 621

24  n.5.

25            (iii)    Whether the claim is procedurally
                       defaulted
26

27       The Ninth Circuit has held that claims which are "technically

28  exhausted" are procedurally defaulted if the procedural rule that

would be imposed is independent and adequate.  <u>Cooper v. Neven</u>, 641 F.3d 322, 327 (9th Cir. 2011).  A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law.  <u>Michigan v. Long</u>, 463 U.S. 1032, 1040–41 (1983); <u>Harris v. Reed</u>, 489 U.S. 255, 265 (1989).  A ground is interwoven with federal law if the state has made application of the procedural bar dependent on an antecedent ruling on federal law, such as the determination of whether federal constitutional error has been committed.  <u>See</u> <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985).  "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" <u>Walker</u>, 562 U.S. at ___, 131 S. Ct. at 1127–28 (quoting <u>Beard v. Kindler</u>, 558 U.S. 53, 61 (2009)).  The Supreme Court has concluded that California's untimeliness rule is an independent and adequate state procedural rule.  <u>Id.</u> at 1128–30.  Accordingly, Petitioner's "technically exhausted" claim is procedurally defaulted.

*(iv) Whether procedural default can be overcome*

This Court may still reach the merits of the claim if Petitioner can demonstrate cause for his failure to timely present his claim to the state courts and prejudice arising from the default, or if he can demonstrate that a fundamental miscarriage of justice would result from the Court not reaching the merits of the defaulted claim.  <u>Coleman</u>, 501 U.S. at 750.

The cause prong can be satisfied if Petitioner demonstrates some "objective factor" that precluded him from raising his claims in state court, such as interference by state officials or constitutionally ineffective counsel.  <u>McCleskey v. Zant</u>, 499 U.S. 467, 493–94 (1991).  There is nothing in the record which would

indicate cause in Duran's case.  Even if Petitioner were to allege he was prevented from raising the claim by ineffective assistance of appellate counsel, this would not establish cause because he has not raised an independent claim of ineffective assistance of appellate counsel.  See Edwards v. Carpenter, 529 U.S. 446, 452 (2000) ("[A] claim of ineffective assistance, . . . [in failing to preserve a claim for review] generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'") (quoting Murray v. Carrier, 477 U.S. 478, 489 (1986)).  Because there is no cause for the procedural default, the Court need not address prejudice.  Cook v. Schriro, 538 F.3d 1000, 1028 n.13 (9th Cir. 2008).

Finally, Duran has not demonstrated that the failure to consider the claim will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.  The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Murray, 477 U.S. at 496).

"Actual innocence" means factual innocence, not simply legal insufficiency; a mere showing of reasonable doubt is not enough.  See Wood v. Hall, 130 F.3d 373, 379 (9th Cir. 1997).  Duran must show that "'it is more likely than no that no reasonable juror would have convicted him . . . .'"  Id.  There is no evidence in the record sufficient to establish Duran is actually and factually innocent of the charges of which he was convicted.  Indeed, the contention is undermined by Duran's claim that he would have pleaded guilty in return for a fifteen year sentence.  Thus, the

1  claims are procedurally defaulted.  <u>Schlup</u>, 513 U.S. at 327;

2  <u>Cooper</u>, 641 F.3d at 327.

3               *(v)  Conclusion*

4       Based on the foregoing, the Court finds Petitioner's subclaim

5  of ineffective assistance of trial counsel related to plea

6  bargaining was not presented in Petitioner's Amended Petition and

7  therefore not subject to consideration on remand from the Ninth

8  Circuit Court of Appeals.  Even assuming arguendo that the claim is

9  properly before this Court and technically exhausted, it is

10  procedurally defaulted.  It should be **DISMISSED**.

11       **4.   Ground Four:  Whether the Admission of Dismissed Gun
            Allegations Resulted in a Denial of Due Process**

12

13       Duran contends that "the trial court allowed admission of

14  dismissed gun allegations over defense protest." (Am. Pet. Attach.

15  #3, 37, ECF No. 15; Traverse Attach. #1 Mem. P. & A. 40, ECF No.

16  43.)  He asserts that his rights were violated by the admission of

17  Garcia's testimony that Duran was armed during the carjacking and

18  the admission of a 911 tape that references a gun.  (Am. Pet.

19  Attach. #3, 37, ECF No. 15)  Petitioner argues that admission of

20  this evidence violated his "right to due process and a fair trial."

21  (<u>Id.</u> at 38.)

22       Respondent counters that Duran's argument is a

23  "mischaracterization as there were no gun allegations charged and

24  none were 'admitted.'" (Answer Attach. #1 Mem. P. & A. 25, ECF No.

25  24.)  "Two witnesses . . . testified about Duran displaying the

26  handle of a gun during the carjacking as a way of intimidating the

27  victim to get out of the Jeep." (<u>Id.</u>)  Respondent contends,

28  "Because this is a matter of the admissibility of evidence, its

resolution depended on California evidence law." (<u>Id.</u> at 37.) Respondent concludes, "Therefore, it does not present a federal question for this court to review." (<u>Id.</u>)

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." <u>Estelle</u>, 502 U.S. at 68; <u>see also</u> 28 U.S.C. § 2254(a). Habeas relief is not available for an alleged error in the state court's interpretation or application of state law. <u>Estelle</u>, 502 U.S. at 67-68; <u>Jammal v. Van de Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991); <u>see also</u> <u>Dugger v. Adams</u>, 489 U.S. 401, 409 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution."). A habeas petitioner "may not transform a state-law issue into a federal one merely by asserting a violation of due process." <u>Langford v. Day</u>, 110 F.3d 1380, 1389 (9th Cir. 1997). When a habeas claim is predicated on state law, the petitioner is not entitled to federal habeas relief. <u>Estelle</u>, 502 U.S. at 67-68 (holding that admissibility of evidence is generally a matter of state law and will rarely support federal habeas corpus relief).

Under narrow circumstances, the misapplication of state evidentiary rules may violate federal due process safeguards. <u>See</u> <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990). To warrant federal habeas relief, a state court's evidentiary ruling must have "so fatally infected the proceedings as to render them fundamentally unfair." <u>Jammal</u>, 926 F.2d at 919.

Duran submitted this issue to the California Supreme Court as part of his petition for writ of habeas corpus. (Lodgment No. 21,

People v. Duran, S161207 (petition for writ of habeas corpus).)
The petition was summarily denied.  (Supplemental Lodgment No. 1,
In re Duran, S161207, order.)  Here again, because the state court
reache[d] a decision on the merits but provide[d] no reasoning to
support its conclusion[,] . . . [the federal habeas court]
independently review[s] the record to determine whether the state
court clearly erred in its application of Supreme Court law.
Pirtle, 313 F.3d at 1167.

The criminal complaint charged Duran with carjacking; robbery;
the unlawful taking of a vehicle; and buying, receiving, and
concealing a stolen vehicle.  (Lodgment No. 1, Clerk's Tr. vol. 1,
1.)  The complaint also alleged that Duran personally used a
firearm in the commission of a felony and personally used a deadly
or dangerous weapon during the commission of a felony.  At the
preliminary hearing, both firearm allegations were dismissed for
insufficiency of the evidence.  (Lodgment No. 2, Clerk's Tr. vol.
2, 325, Apr. 28, 2004.)

At trial, the victim of the carjacking testified that he
believed Duran was carrying a gun.  (Lodgment No. 10, Rep.'s Appeal
Tr. vol. 6, 461-62, 484-86.)  The prosecutor played a recording of
the 911 call made shortly after the carjacking where the caller
stated that the perpetrator had a gun.  (Id. at 437; Lodgment No.
1, Clerk's Tr. vol. 1, 125.)

The California Constitution provides that "relevant evidence
shall not be excluded in any criminal proceeding."  Cal. Const.
art. I, § 28.  "'Relevant evidence' means evidence, including
evidence relevant to the credibility of a witness or hearsay
declarant, having any tendency in reason to prove or disprove any

disputed fact that is of consequence to the determination of the action."  Cal. Evid. Code § 210 (West 1995).

Duran was charged with robbery.  (Lodgment No. 1, Clerk's Tr. vol. 1, 71.)  "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Cal. Penal Code § 211 (West 2008).  By pleading not guilty, Duran placed the use of force or fear in dispute.  Therefore, the prosecutor was required to prove the "taking was accomplished either by force or fear."  (Lodgment No. 1, Clerk's Tr. vol. 1, 168-69.)

The victim's belief that Duran was armed during the robbery is relevant to proving the vehicle was taken by force or fear.  There is no evidence the prosecution elicited the testimony for any purpose other than proving the elements of the crimes charged.  The prosecutor did not discuss the elements of personal use of a firearm allegation during Duran's trial.  The instructions given to the jury did not include an instruction relating to a gun allegation.  (See e.g., Lodgment No. 1 Clerk's Tr. vol 1, 130-208.)

Duran contended that because the court dismissed the gun enhancement allegations at the preliminary hearing, the prosecution was barred from introducing any evidence at trial related to a gun.  That argument fails because evidence relating to the use of a gun was admissible to prove that the taking of the Jeep was by force or fear, an element of the crime of robbery.  Duran offers no case law to support his contention, and this Court has been unable to locate any.  Thus, there was no error, much less an error which "fatally

infected the proceedings [so] as to render them fundamentally unfair." <u>Jammal</u>, 926 F.2d at 919.

The district court should **DENY** Duran's claim because the admission of evidence Duran was armed was not contrary to, or an unreasonable application of, clearly established federal law.  <u>See</u> <u>Lockyer</u>, 538 U.S. at 71 (citing <u>Weeks</u>, 528 U.S. 225).

**D.   Evidentiary Hearing**

Duran requests an evidentiary hearing in his Traverse (Traverse 4, ECF No. 43) and in supplemental briefing after remand. (Pet'r's Briefing Pursuant Remand 14, ECF No. 77; Pet'r's Reply to Resp't's Br. 14, ECF No. 15; Pet'r's Briefing Resp. Supplemental Lodging 23, ECF No. 99; Pet'r's Reply to Doc. 113 [Resp't's Br.] 14, ECF No. 116.)  Specifically, Duran seeks a hearing to develop facts that he was confused at the January 14, 2005 arraignment and that his waiver of counsel was not knowing, intelligent and voluntary.  (Pet'r's Briefing Resp. Supplemental Lodging 23, ECF No. 99.)  Petitioner also seeks an evidentiary hearing to develop his claim that he received ineffective assistance of counsel during plea negotiations.  (Pet'r's Reply Resp't's Br. (ECF No. 103) 14-15, ECF No. 110.)

In <u>Cullen v. Pinholster</u>, 563 U.S. ___ ; 131 S. Ct. 1388, 1402 (2011), the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C. § 2254(d)(1) must be confined to the record that was before the state court.  <u>Pinholster</u>, 563 U.S. at ___; 131 S. Ct. at 1398.  Under <u>Pinholster</u>, federal courts may not consider new evidence developed at an evidentiary hearing in federal court on claims adjudicated on the merits in state court unless both the

1  standard set forth in § 2254(d) and the standard set forth in
2  § 2254(e)(2) are satisfied.  See id.

3      If a claim was not adjudicated on the merits by the state
4  court, the habeas claim is not subject to review under § 2254(d),
5  and as a result, review of the claim is not limited to the record
6  before the state court.  Id. at 1401; Stokley v. Ryan, 659 F.3d
7  802, 808 (9th Cir. 2011) ("If a petitioner presents a claim that
8  was not adjudicated on the merits by the state courts, federal
9  review is not necessarily limited to the state record.").  In that
10  case, however, a petitioner must meet the requirements of
11  § 2254(e)(2).  See Gentry v. Sinclair, 705 F.3d 884, 896-97 (9th
12  Cir. 2013).

13      Petitioner claims he is entitled to an evidentiary hearing
14  because the state court denied his habeas petition without reaching
15  the merits.  (Petr's Reply Resp't's Br. (ECF No. 103) 15, ECF No.
16  110; see also Petr's Reply to Doc. 113 [Resp't's Br.] 14, ECF No.
17  116.)  This is not the case.  Duran's petition for writ of habeas
18  corpus filed in the California Supreme Court was summarily denied,
19  without comment or citation.  (Supplemental Lodgment No. 1, In re
20  Duran, S161207, order.)  A summary denial is a decision on the
21  merits.  Crittenden v. Ayers, 624 F.3d 943, 960 (9th Cir. 2010)
22  ("A 'postcard' denial by the California Supreme Court is a denial
23  on the merits.").  Petitioner has not satisfied § 2254(d) as to any
24  of his claims, so he is not entitled to an evidentiary hearing on
25  any claim raised in the Amended Petition.

26      Furthermore, Petitioner's claim that he received ineffective
27  assistance of counsel during plea bargaining was not raised in the
28

I:\Everyone\_EFILE-PROSE\RBB\08cv0480-DuranR&R.wpd, 102914                                         08cv0430

1  Amended Petition and thus is not properly before this Court.  He is

2  not entitled to an evidentiary hearing as to that claim.[12]

3      Thus, in light of the findings in this Report and

4  Recommendation, Petitioner's request for an evidentiary hearing is

5  **DENIED**.

6                    **V.   CONCLUSION**

7      The Court submits this Report and Recommendation to United

8  States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1)

9  and Local Civil Rule HC.2 of the United States District Court for

10 the Southern District of California. For the reasons outlined

11 above, **IT IS HEREBY RECOMMENDED** that the district court issue an

12 Order (1) approving and adopting the findings and conclusions of

13 this Report and Recommendation and (2) directing that Judgment be

14 entered denying the Petition.  This Court **DENIES** Petitioner's

15 request for an evidentiary hearing.

16     **IT IS ORDERED** that no later than **December 5, 2014**, any party

17 to this action may file written objections with the Court and serve

18 a copy on all parties.  The document should be captioned

19 "Objections to Report and Recommendation."

20     **IT IS FURTHER ORDERED** that any reply to the objections shall

21 be filed with the Court and served on all parties no later than

22 **December 19, 2014**.  The parties are advised that failure to file

23 objections within the specified time may waive the right to raise

24 those objections on appeal of the Court's order.  See <u>Turner v.</u>

25

26

_____

27     [12] Because the Court is confined to the state court record, it has not
   considered documents, such as affidavits, submitted by Petitioner in
28 supplemental briefing. <u>Pinholster</u>, 563 U.S. at___, 131 S. Ct. at 1398.

1 | <u>Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951

2 | F.2d 1153, 1156 (9th Cir. 1991).

3

4 | DATED: October 29, 2014

5 | _____
Ruben B. Brooks
United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28